UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| IN RE: KC FXE AVIATION INVESTMENTS, LLC, Debtor. | CASE NO. 22-19815-SMG CHAPTER 11 |
|---|---|
| IN RE: TERMINAL VENTURES, LLC, Debtor. | CASE NO. 22-19816-PDR CHAPTER 11 |

**DEBTOR'S *EX-PARTE* MOTION FOR ENTRY
OF AN ORDER DIRECTING JOINT ADMINISTRATION**

KC FXE AVIATION INVESTMENTS, LLC ("KCFXE") and TERMINAL VENTURES, LLC ("TV" and collectively with FXE, the "Debtors"), by and through their proposed undersigned counsel, file this *Ex-Parte Motion for Entry of an Order for Joint Administration* ("Motion"), and in support of this Motion, state as follows:

**BRIEF STATEMENT OF RELIEF REQUESTED**

1. The Debtors seek, on an *ex-parte* basis, an order from this Court directing joint administration of the above-captioned Chapter 11 cases (the "Case").

2. The Debtors are affiliates within the meaning of 11 U.S.C. § 101(2)(B), as each are wholly owned by FXE FBO Holdings, LLC. Additionally, the Debtors are jointly and severally liable to Dade County Federal Credit Union, the holder of a leasehold mortgage against the Debtors' respective leasehold interests.

3. Joint administration will facilitate the administration of these cases in an orderly manner and will obviate what will otherwise be duplicative notices, motions, and orders. In

addition to promoting judicial efficiency, joint administration will save the debtors' estates unnecessary time and expense. The Court is authorized to grant the relief requested herein without notice and a hearing as provided in Local Rules 1015-1(B)(2)(a), 5005-1(G)(1)(a), and 9013-1(c)(14). The Debtors anticipate that creditors will likely not oppose the relief requested herein, as this Motion seeks procedural relief only and does not seek substantive consolidation.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (M).

5. The statutory predicate for the relief requested herein is Federal Rule of Bankruptcy Procedure 1015.

## BACKGROUND

**A.    Filing**

6. On December 26, 2022, the Debtors each filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. The Debtors are in possession of their assets and operating their businesses as debtors-in-possession pursuant to the authority of 11 U.S.C. §§ 1107 and 1108.

**B.    Organizational Background**

7. The Debtors are Florida limited liability companies. Each of the Debtors is wholly owned by FXE FBO Holdings, LLC, a Florida limited liability company ("FBO Holdings"). FBO Holdings is majority owned by Ignacio Martinez, who is a FAA-licensed private pilot with instrument and multi-engine ratings and has a background in real estate development.

**C.     Business Operations**

8.     KCFXE is a party to a lease agreement with the City of Fort Lauderdale ("City"), which was entered into by the parties on October 20, 2009 (the "FXE Lease"). The commencement date of the Lease was November 1, 2009 (the "Lease Commencement Date").

9.     In accordance with the FXE Lease, KCFXE leases Parcel 8AB, which consists of approximately 8.7 acres of land located at 5900 NW 24th Way, Fort Lauderdale, Florida 33309 (the "Parcel 8AB") and is situated at the Fort Lauderdale Executive Airport (the "FXE").

10.    Parcel 8AB is used as a fixed base operation or "FBO".

11.    While KCFXE holds the FXE Lease with the City, W Aviation, LLC ("W"), which is an affiliate of the Debtors and wholly owned by FBO Holdings, operates the FBO and, in doing so, provides jet fuel, hangar space, ramp space, and other services. In turn, W provides funds to the KCFXE sufficient to cover its operating expenses, including, without limitation, rent due under the FXE Lease.

**D.     The FXE Lease**

12.    In accordance with the FXE Lease, KCFXE agreed to redevelop Parcel 8AB in the following phases at a cost of $5,000,000.00: (a) Phase 1 involved the demolition and clearing of an old restaurant facility and was completed on schedule ("8AB Phase 1"); (b) Phase 2 involved the construction of 21,577 square feet of a new aircraft hangar and office facility, roadway access, parking, and other site improvements and was to have been completed within thirty-six (36) months of the Lease Commencement Date ("8AB Phase 2"); and (c) Phase 3 involved the construction of two aircraft hangars totaling approximately 39,300 square feet and a 10,000 square foot, two-story office facility and was to have been completed within ten (10) years of the Lease Commencement Date ("8AB Phase 3").

13.     The FXE Lease provided for monthly rent in the amount of $10,401.90, with annual increases, together with a percentage of aviation fuel sales.

14.     In the event of a default in payment of rent, KCFXE was afforded a thirty (30) day grace period. In the event of a default in the performance of any obligation, <u>other than rent</u>, KCFXE was afforded a thirty (30) day grace period; <u>provided</u>, <u>however</u>, if such default could not with due diligence be cured within thirty (30) days, any right of termination was extinguished in the event the KCFXE proceeded diligently, continuously and with reasonable dispatch to cure such default.

15.     The FXE Lease was subsequently amended as follows: (a) the First Amendment, dated June 19, 2012, provided that (i) the 8AB Phase 2 deadline was extended to five (5) years, and the Base Rent was increased from $124,822.83 to $145,818.66, annually; (b) the Second Amendment, dated August 16, 2016, provided that (i) the 8AB Phase 2 deadline was extended to 332 days following issuance of all necessary building permits, and (ii) the 8AB Phase 3 deadline was extended to December 31, 2022; (c) the Third Amendment, dated May 1, 2020, deferred the May and June 2020 lease payments, as a result of COVID-19, and amortized the amounts in equal installments for the remainder of 2020; and (d) the Fourth Amendment, dated August 16, 2022, modified the payments due based on aviation fuel sales.

**E.     TV Lease**

16.     On February 24, 2020, TV entered into a lease agreement with the City (the "<u>TV Lease</u>"). In accordance with the TV Lease, TV leases Parcel 8G ("<u>Parcel 8G</u>"), which adjoins Parcel 8AB.

17.     Parcel 8G consists of approximately 3 acres located at FXE and is to be used as a "terminal building" for Parcel 8AB.

18. In accordance with the TV Lease, TV agreed to the following: (a) demolish the interior of the existing building on Parcel 8G by May 31, 2020 ("8G Phase 1"); (b) complete interior remodeling of the first floor, exterior landscaping, painting, and restriping of the parking lot by December 31, 2020 at a cost of at least $625,000.00 ("8G Phase 2"); and (c) complete interior remodeling by July 31, 2021 at a cost of at least $505,000.00 ("8G Phase 3").

19. The TV Lease was subsequently amended as follows: (a) the First Amendment, dated May 1, 2020, provided for deferment of rent due for May and June 2020 and amortized such amounts over the remainder of 2020; and (b) the Second Amendment, dated April 20, 2021, provided that (i) the 8G Phase 2 deadline was extended to December 31, 2021, and (ii) the 8G Phase 3 deadline was extended to July 31, 2022.

**F.     Third Party Negotiations**

20. In June 2021, the Debtors began negotiations with a third party (the "Third Party") regarding the sale of their interests under the FXE Lease, the TV Lease, and the FBO, which were valued at approximately $35,000,000.00.

21. The Third Party had a different development plan for Parcel 8G, which provided, in part, for demolition of the building situated on Parcel 8G.

22. The City was aware of, and encouraged, the discussions occurring between the Debtors and Third Party. The City also endorsed the proposed transaction and development plan proposed by Third Party.

23. On March 14, 2022, representatives of the Debtors, Ignacio Martinez, and their counsel, met with representatives of the City, including its Mayor, the Airport Director, the Assistant City Attorney, and the Mayor's Chief of Staff. At the conclusion of the meeting, the Mayor suggested an amendment to the TV Lease that would (a) afford TV until the end of

September 2022 to conclude negotiations with Third Party, and (b) provide that TV would apply for building permits before the end of 2022, necessary to complete the 8G Phase 1 and 8G Phase 3 improvements, in the event the negotiations with Third Party fell through.

24. On or about March 24, 2022, TV, jointly with representatives of the City, presented the Third Party development plan to the City's Aviation Advisory Board (the "AAB"). These plans were inconsistent with those contemplated under the TV Lease.

25. Upon the City's staff recommendation of approval and presentation by TV, the AAB unanimously recommended approval of the modified plans to the City Commission and also the third amendment (the "Proposed Third Amendment") to the TV Lease to allow TV additional time to complete the 8G Phase 2 improvements. The foregoing was further evidenced by a draft of the Proposed Third Amendment to the TV Lease.

26. Approval of the Proposed Third Amendment was scheduled for approval at the meeting of the City Commission as part of the May 2022 agenda.

**G.    The Dispute**

27. Unbeknownst to the Debtors, it is believed the City had been dealing directly with the Third Party, and in a drastic turn of events, on April 14, 2022, TV was advised that the City would not be moving forward with the Proposed Third Amendment, which had been removed from the City Commission's agenda.

28. On the very next day, April 15, 2022, the City notified TV of an alleged default and provided TV sixty (60) days to cure the default relating to the 8G Phase 2 improvements.

29. On April 19, 2022, TV notified the City that it would cure the alleged default and referenced the section of the TV Lease which required TV to diligently, continuously and with

reasonable dispatch to cure the default, since the alleged default was not related to a default in payment of rent.

30. Since the City's declaration of default, TV has proceeded, in good-faith, including, without limitation, (a) receiving signed and sealed construction plans, (b) engaging the services of a permit expediter, (c) hiring a general contractor to submit permit applications for 8G Phase 2, (d) commencing work on the 8G Phase 2 improvements, (e) obtaining the City's approval of TV's commercial permit, and (f) obtaining the commercial permit, which will enable TV to commence the remainder of work to complete the 8G Phase 2 improvements.

31. On June 24, 2022, TV attempted to make the June 2022 rent payment, which was returned by the City, since the City alleged that the TV Lease had been terminated, a position which is vehemently disputed by the Debtors. The City then commenced an eviction action against TV, and TV filed its answer, affirmative defenses, and counterclaim. The litigation is pending before the County Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. COWE-22-001830.

32. To date, TV has expended more than $2,000,000.00, and the improvements under the TV Lease, as amended, should be completed within a matter of months.

**H.** **Effects on KCFXE**

33. As a result of the foregoing, the City has refused to facilitate KCFXE's completion of the improvements under the FXE Lease. Moreover, KCFXE has proceeded diligently towards completion of the improvements under the FXE Lease.

34. The City offered to cooperate with KCFXE on Parcel AB, provided that TV surrender possession of Parcel 8G; however, as noted hereinafter, the Debtors' lender was granted a leasehold mortgage against Parcel 8G and Parcel 8AB. The City also pronounced to the

aviation community that it would be terminating the FXE Lease. To date, KCFXE has expended approximately $25,000,000.00 on Parcel 8AB.

**I.     Financing**

35.    On May 28, 2021, the Debtors, W and FBO Holdings (collectively, the "Borrowers") entered a loan transaction (the "Loan") with Dade County Federal Credit Union (the "Lender"). In accordance with the Loan, the Lender loaned $10,500,000.00, the proceeds of which were intended to be used, in part, for purposes of funding the improvements under the FXE Lease and the TV Lease.

36.    In connection with the Loan, the Borrowers executed and delivered the following: (a) a promissory note in the amount of $10,500,000.00 (the "Note"); (b) a Leasehold Mortgage Deed and Security Agreement (the "Mortgage"), pursuant to which the Debtor and TV granted a leasehold mortgage against the FXE Lease and TV Lease; and (c) a Conditional Assignment of Rents, Profit, Income and Leases (the "Assignment" and, collectively with the Note and Mortgage, the "Loan Documents"). Additionally, Ignacio Martinez delivered a personal guaranty in favor of the Lender, thus guaranteeing payment of the Note.

37.    The Borrowers are current under the Loan Documents and no default has ever been declared by the Lender.

**I.     Bankruptcy**

38.    The Debtors commenced these cases to preserve the FXE Lease, the TV Lease, their value, and the value of the FBO, as well as to complete the improvements under the FXE Lease and TV Lease. The Debtors believe there is substantial equity in the assets and FBO and, therefore, the Debtors wish to preserve the equity for the benefit of creditors and equity.

**RELIEF REQUESTED**

39. Bankruptcy Rule 1015(b) provides in relevant part as follows: "[i]f a joint petition or two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b).

40. The Debtors are "affiliates" as such term is defined in Section 101(2) of the Bankruptcy Code. Bankruptcy Rule 1015 promulgates the fair and efficient administration of multiple cases of affiliated debtors, like here, while protecting the rights of individual creditors. *See In re PL Liquidation Corp.*, 305 B.R. 629, 633 (Bankr. D. Del. 2004); *In re N.S. Garrott & Sons*, 63 B.R. 189, 191 (Bankr. E.D. Ark. 1986); *In re H&S Trans. Co.*, 55 B.R. 786, 791 (Bankr. M.D. Tenn. 1982). While the Debtors are separate and distinct, the issues that will be addressed in these bankruptcy cases will be related and overlapping. Accordingly, the Court is authorized to grant the relief requested.

41. The Debtors submit that joint administration of their Chapter 11 cases will obviate the need for duplicative notices, motions, applications, hearings and orders and will, therefore, save save considerable time and expense for the Debtors and their estates.

42. Pursuant to the requirements of Local Rule 1015-1(B)(1), the Debtors state that joint administration will not give rise to any conflict of interest among the estates of the Debtors. The rights of the respective creditors of the Debtors will not be adversely affected by the proposed joint administration because the Debtors will continue to remain separate and distinct legal entities and will continue to maintain separate books and records. Moreover, each creditor may still file its proof of claim against a particular estate. In fact, the rights of all creditors will be enhanced by the reduction in costs resulting from joint administration. The Court also will be relieved of the burden of scheduling duplicative hearings, entering duplicative orders, and

maintaining redundant files. Finally, supervision of the administrative aspects of these Chapter 11 cases by the Office of the United States Trustee will be simplified.

43. The interests of the Debtors, their estates, and all parties-in-interest would best be served by joint administration of the Debtors' Chapter 11 cases.

**WHEREFORE,** the Debtors respectfully request that this Court enter an *ex-parte* order granting the Motion, the proposed form of which is attached hereto as Exhibit "A", approving the joint administration of the Cases, and granting such further and other relief as may be just and appropriate.

**RESPECTFULLY SUBMITTED** this 26th day of December 2022.

*I HEREBY CERTIFY* that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**SEESE, P.A.**
*Proposed Counsel for Debtors*
101 NE 3rd Avenue
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone: (954) 745-5897

By:     *s/Michael D. Seese*
         Michael D. Seese, Esq.
         Fla. Bar No. 997323
         mseese@seeselaw.com

**EXHIBIT "A"**

*Proposed Order*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

| IN RE: | CASE NO. 22-19815-SMG |
|---|---|
| KC FXE AVIATION INVESTMENTS, LLC, | CHAPTER 11 |
| Debtor. | |
| IN RE: | CASE NO. 22-19816-PDR |
| TERMINAL VENTURES, LLC, | CHAPTER 11 |
| Debtor. | |

**ORDER GRANTING**
**DEBTOR'S *EX-PARTE* MOTION FOR ENTRY**
**OF AN ORDER DIRECTING JOINT ADMINISTRATION**

**THIS MATTER** came before the Court without hearing on the *Debtors' Ex-Parte Motion For Entry of an Order Directing Joint Administration* (the "Motion") filed pursuant to Fed.R.Bankr.P. 1015 and Local Rule 1015-1(B)(2)(a), and the Court finding that good and sufficient cause exist in support of the relief requested on an *ex-parte* basis, and the Court being otherwise fully advised in the premises, it is

**ORDERED** as follows:

1. The Motion is GRANTED.

2. The above-styled Chapter 11 cases shall be jointly administered. The case of *KC FXE Aviation Investments,* LLC, Case No. 22-19815-SMG is designated as "lead case."

3. The Clerk of the Court shall maintain a single file and docket for these jointly administered cases under the "lead case" number. However, proofs of claim filed shall indicate only the case name and number of the case in which the claims are asserted. Separate claims files, ballot files, and claims registers shall be maintained for each of the jointly administered cases.

4. A docket entry shall be made on the docket in each of the above-captioned cases (other than the "lead case") substantially as follows:

> "An order has been entered in this case directing the joint administration of the Chapter 11 cases of *KC FXE Aviation Investments, LLC* and *Terminal Ventures, LLC*. The docket in Case No. 22-19815-SMG should be consulted for all matters affecting this case."

5. Pleadings in these cases are authorized and shall be required to bear the following caption, which caption is approved in all respects:

UNITED STATES BANKRUPTCY COURT<br>
SOUTHERN DISTRICT OF FLORIDA<br>
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Chapter 11 Cases |
| KC FXE AVIATION INVESTMENTS, LLC, *et al.*, | Case No. 22-19815-SMG (Jointly Administered) |
| Debtors. _____/ | |

6. Nothing contained in the Motion or this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of the above-captioned Chapter 11 cases.

7. The Court retains jurisdiction to interpret and enforce this Order.

3

# # #

Copies furnished to:

Michael D. Seese, Esq.
Seese, P.A.
101 N.E. 3rd Avenue
Suite 1500
Ft. Lauderdale, Florida 33301
Tel. No. (954) 745-5897
mseese@seeselaw.com

Attorney SEESE is directed to serve conforming copies of this Order upon all required parties.