# Composite Exhibit "A"

# AMENDED AND RESTATED LEASE AGREEMENT
## (PARCEL 8AB)

THIS IS A LEASE AGREEMENT, entered into on __October 20__, 2009, between:

THE CITY OF FORT LAUDERDALE, a
municipal corporation of Florida, referred to as
"Lessor",

and

KC FXE AVIATION INVESTMENTS, LLC, a
Florida limited liability company, referred to as
"Lessee".

Whereas, pursuant to Resolution No. 75-230, adopted at its meeting of July 15, 1975 the City Commission of City authorized the proper City officials to enter into a Lease Agreement with The 94th of Fort Lauderdale, Inc. and Specialty Restaurants Corporation as Guarantor for the lease of Parcel 8AB at Fort Lauderdale Executive Airport (hereinafter "Airport"); and

Whereas, pursuant to Resolution No. _09-253_, adopted at its meeting of __October 20__, 2009 the City Commission of City authorized the proper City officials to enter into a Consent to Assignment of Lease Agreement from The 94th of Fort Lauderdale, Inc. and Specialty Restaurants Corporation as Guarantor to Lessee; and

Whereas, Lessor has jurisdiction over the development, operation and maintenance of the Airport; and

Whereas, Lessee desires to construct certain improvements at a minimum cost of approximately $5,000,000; and

Whereas, Lessee, by mutual agreement of the parties, does hereby terminate its existing lease with Lessor, dated August 27, 1975, and enters into this Amended and Restated Lease Agreement; and

Whereas, pursuant to Resolution No. _09-256_, adopted at its meeting of __October 20__, 2009 the City Commission of City authorized the proper City officials to enter into this Amended and Restated Lease Agreement for Parcel 8AB at Airport (hereinafter "Lease Agreement" or "Lease"), for a term of thirty (30) years;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Lease, and other good and valuable consideration, the receipt and adequacy of which are acknowledged, Lessor and Lessee agree as follows:

Parcel 8AB KC FXE 10/08/09

1.  PREMISES. Lessor leases to Lessee certain property at Fort Lauderdale Executive Airport, situated in Fort Lauderdale, Broward County, Florida, known as Parcel 8AB (the "Premises"), more particularly described in and shown on the sketch and description identified as Exhibit "A," a copy of which is attached to and made a part of this Lease Agreement. Lessee acknowledges and agrees that all buildings, structures, hangars, pavements and other leasehold Improvements now existing or to be constructed on the Premises shall become the property of Lessor at Lessor's option upon the expiration or earlier termination of this Lease.

2.  PURPOSE. The Premises shall be used for a Fixed Base Operation, as prescribed by Resolution No. 05-29, adopted by Lessor on February 15, 2005, and subsequent revisions of the Minimum Standards as the City may adopt from time to time and which shall be applicable to all aviation businesses operating at the Airport, and such other related and co-related facilities and usages reasonably attendant to such usage as permitted by applicable zoning requirements.

3.  DEFINITIONS. The following terms, when used in this Lease Agreement, shall be defined as follows:

(a)  *Affiliate* of a specified Person means a Person who (i) is directly or indirectly controlled by, or under common control with, the specified Person; or (ii) owns directly or indirectly thirty-five (35%) percent or more of equity securities of the specified Person; or (iii) is a general partner, officer, director, non-financial institution trustee or fiduciary of the specified Person or of any person described in (i) of (ii), preceding; or (iv) is a son, daughter, spouse, parent, sibling or in-law of the specified Person.

(b)  *Aircraft Fuel Farm Facility* means the aircraft fuel farm constructed on the Premises, as described in Paragraph 40.

(c)  *Airport* means Fort Lauderdale Executive Airport, located in Fort Lauderdale, Broward County, Florida, also known as FXE.

(d)  *Agreement, Lease Agreement, or Lease* means this Lease Agreement, including any supplements, modifications, amendments or exhibits thereto.

(e)  *Approved Plans* shall mean plans and specifications for Improvements to the Premises that have received the necessary approval from the Airport Manager, the Aviation Advisory Board, and the City Commission.

(f)  *Aviation Advisory Board* means the advisory board of the City created pursuant to Sections 7-31 et seq., of the Fort Lauderdale Code of Ordinances.

(g)  *City* or *Lessor* means the City of Fort Lauderdale, Florida, a municipal corporation organized and existing in the State of Florida.

(h)  *City Commission* means the governing body of City.

(i)  *CO Date* and the date(s) that any Improvements are deemed to be completely constructed, means the date(s) upon which a certificate of occupancy shall be issued by the appropriate City agency or department with respect to the buildings to be constructed on the Premises, or with respect to other Improvements, the date upon which the Improvements may first be put into service for the intended use, regardless of whether such is the actual first date of usage.

Page 2 of 44

Parcel 8AB KC FXE 10/08/09

(j)     *Commencement Date* means November 1, 2009.

(k)     *FAA* means the Federal Aviation Administration, or any successor agency.

(l)     *Improvements* and *Leasehold Improvements* mean any buildings, hangars, pavements, fixtures, permanently affixed equipment, facilities (both above ground and below ground), and all other structures now or hereafter constructed on the Premises, and all additions, alterations, modifications, renovations and replacements thereto.

(m)     *Lessee* means KC FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company, its successors or assigns as permitted by this Lease.

(n)     *Master Plan* means the Fort Lauderdale Executive Airport Master Plan and any Update to the Master Plan that is in effect on the Commencement Date and all amendments or replacements to said Master Plan or Update.

(o)     *Part 150 Study* means the Airport FAR Part 150 Program or Update thereto, that is in effect on the Commencement Date, and all amendments or replacements to said Study or Update.

(p)     *Person* means any individual, firm, trust, estate, partnership, joint venture, company, corporation, association, or any other legal entity or business enterprise.

(q)     *Premises* means the property more particularly described in Exhibit "A," subject to all easements, rights-of-way of record, restrictions and declarations, together with all buildings, hangars, structures, pavements, facilities and other Improvements now or hereafter constructed thereon, the equipment permanently affixed therein, such as electrical, plumbing, sprinkler, fire protection and fire alarm, heating, steam, sewage, drainage, refrigerating, communications, gas and other systems and their pipes, wires, mains, lines, tubes, conduits, equipment and fixtures, and all paving, drains, culverts, ditches and catch basins.

(r)     *Runways* (including approaches thereto) mean the portion of the Airport utilized for the purpose of the landing and taking off of aircraft.

(s)     *Taxiways* mean the portion of the Airport utilized for the purpose of movement of aircraft to, from and between Runways, the public ramps and apron area, the aircraft parking and storage space and other portions of the Airport (not including those taxiways in which the exclusive use thereof is granted to the Lessee or any person by Lease, permit or otherwise).

(t)     *Term of this Lease, Term,* or words of similar import means the term set forth in Paragraph 4 of this Lease.

4.     TERM.  The parties acknowledge and agree that the Term of this Lease Agreement shall commence on November 1, 2009 ("Commencement Date"), and shall terminate thirty (30) years thereafter, unless sooner terminated as provided in this Lease. The Term of this Agreement will expire twelve (12) months from its Commencement Date if Lessee fails to provide City with evidence that it has expended funds for the renovation or improvement of the Premises equal to the minimum investment of Two Hundred Thousand ($200,000.00) Dollars.  Thereafter, the Term of this Agreement will expire thirty-six (36) months from the Commencement Date if Lessee fails to provide City with evidence that Lessee has invested an additional One Million Eight Hundred Thousand ($1,800,000.00)

Parcel 8AB KC FXE 10/08/09

Dollars in Improvements which have been constructed on the Premises, and thereafter the Term of this Agreement shall expire one hundred (120) months from the Commencement Date if Lessee fails to provide City with evidence that Lessee has invested an additional Three Million ($3,000,000.00) Dollars in Improvements which have been constructed on the Premises.

5.    POSSESSION. The parties agree that delivery of possession of the Premises to the Lessee occurred at the time of the commencement of the Term of this Lease Agreement.

6.    MUTUAL REPRESENTATIONS AND WARRANTIES. The parties mutually represent, warrant and disclose to each other the following:

(a)    Municipality. The Lessor is a municipal corporation organized and existing pursuant to the laws of the State of Florida.

(b)    Deed. On March 11, 1947, there was executed and delivered to the Lessor by the United States of America a Deed conveying to the Lessor certain land situated near the territorial limits of the City of Fort Lauderdale, known as Prospect Field, which deed of conveyance was recorded in Deed Book 579, Page 130, of the Public Records of Broward County, Florida ("Deed"). The Premises above described constitute a portion of the property acquired by the Lessor under said Deed. This Lease Agreement is subject to all the terms, conditions, restrictions and provisions of said Deed.

(c)    Disclosure. The Lessee acknowledges that the Lessor has made full disclosure of all facts reflected by the aforesaid Deed. Lessor makes no representations or warranties whatsoever as to: (i) the condition of the Premises; or (ii) whether the Premises, or any part thereof, is in compliance with applicable federal, state, and local laws, ordinances, rules and regulations, including without limitation, City ordinances, rules and regulations; or (iii) the permitted or available uses of the Premises under applicable federal, state, or local laws, ordinances, rules and regulations, including without limitation, those of City. Lessor makes no representations or warranties whatsoever as to the legality, permissibility or availability of any use of the Premises that may be contemplated by the Lessee. **Lessor makes no representations or warranties concerning habitability or fitness of the Premises for a particular purpose**. The Lessee specifically acknowledges that it has made, or has had an opportunity to conduct, a thorough and complete inspection and due diligent investigation of the Premises and the suitability thereof for Lessee's purposes, and is fully advised of its extent and condition. The Premises and all components thereof, are hereby demised in **"AS IS CONDITION"** and **"WITH ALL FAULTS"** in the Premises' present state and condition. Lessee represents, acknowledges, and agrees that it has had sufficient opportunity to inspect the Premises and all components thereof, and hereby accepts the Premises, and all components thereof, in **"AS IS CONDITION"** and **"WITH ALL FAULTS."** Lessee **ASSUMES ALL RISK** of non-compliance of the Premises, or any part thereof, with any federal, state, or local laws, ordinances, rules and regulations, including without limitation, any City laws, ordinances, rules or regulations. Upon receipt of any notice of non-compliance with any such laws, ordinances, rules or regulations, Lessee agrees to make any and all repairs, alterations, and additions to the Premises and to take all corrective measures as may be necessary to bring the Premises into compliance with all laws, ordinances, rules and regulations. Lessee shall not be entitled to any adjustment of any rentals hereunder on account of the condition of the Premises; or any failure of any of the component parts to be in working order; or because of the necessity of Lessee to repair or take corrective actions with respect to any part thereof or because of the inability of obtaining or any delay in obtaining any required development approvals from any governmental agency having jurisdiction, including but not

Page 4 of 44

Parcel 8AB KC FXE 10/08/09

limited to City and its departments.  Furthermore, Lessee hereby releases Lessor of any and all claims and liabilities whatsoever on account of the condition of the Premises or any failure of any of the component parts to be in working order or because of the necessity of Lessee to repair or take corrective actions with respect to any part of the Premises, or the necessity for obtaining any development approvals from any governmental agency, including the City and its departments.  Notwithstanding anything herein to the contrary, the parties acknowledge and agree that: (1) this subparagraph (c) is not intended to address or apply to the discharge of any "Material" (as hereinafter defined in Paragraph 32) at the Premises, and (2) with respect to any such Material, the provisions of Paragraph 32 shall apply.  This subparagraph specifically excludes environmental concerns, which are governed by the provisions of Paragraph 32 of the Lease Agreement.

(d)  Authority.  All steps, acts and conditions required by the City Charter of the Lessor to be done as a condition precedent to the execution of this Lease Agreement have been done, and the Lessor has full authority to enter into this Lease Agreement.

(e)  Lessee's ability.  The Lessee represents and warrants to the Lessor that it is a Florida limited liability company authorized to transact business within the State of Florida. The Lessee further represents and warrants that it has or will obtain adequate financial resources and has the business skill and ability to perform all obligations imposed by this Lease Agreement upon the Lessee diligently, skillfully and successfully to operate the Premises for the purposes intended.

(f)  Subordination.  This Lease and all provisions hereof are subject and subordinate to the terms and conditions of the instruments and documents under which Lessor acquired the subject property from the United States of America, including the Deed, and shall be given only such effect as will not conflict or be inconsistent with the terms and conditions contained in the Lease of said lands from Lessor, and any existing or subsequent amendments thereto.  This Lease and all provisions hereof, are subject and subordinate to any ordinances, rules or regulations, which have been, or may hereafter be adopted by the Lessor pertaining to the Airport. This Lease and all provisions hereof is subject and subordinate to the provisions of any existing or future Agreement between Lessor and the United States of America relative to the operation or maintenance of the Airport, or the execution of which has been or may be required as a condition precedent to the expenditure of federal funds for development of the Airport, including without limitation the expenditure of federal funds for the development of the Airport under the provisions of the Federal Aviation Act of 1958, as amended from time to time. This Lease shall also be subject and subordinate to the provisions of all resolutions now existing and hereafter adopted by the Lessor in connection with any revenue bonds issued by the Lessor with respect to operations at the Airport, or any development of the Airport or any of its facilities, and to the provisions of all documents executed in connection with any such bonds, including without limitation, any pledge, transfer, hypothecation or assignment made at any time by Lessor to secure such bonds.

7.  GENERAL OBLIGATIONS OF THE PARTIES.  The following constitute obligations and covenants of the parties, their successors and assigns:

(a)  Compliance with regulations of government agencies.  The Lessee covenants and agrees that it will, at its own cost, make such Improvements on the Premises, and perform such acts, and do such things as shall be lawfully required by any government body or agency having jurisdiction over the Premises, in order to comply with sanitary requirements and other similar requirements designed to protect the public.

Parcel 8AB KC FXE 10/08/09

(b)     Indemnification against claims.  The Lessee shall indemnify and save the Lessor harmless from and against any and all claims, suits, actions, damages, causes of action, and costs arising during the term of this Lease Agreement (except causes of action which arise due to the negligent or intentional misconduct of Lessor, its agents or employees), for any bodily injury, loss of life or damage to property sustained in, about or upon the Premises, or the buildings and Improvements placed on them, or their appurtenances, and shall indemnify and save Lessor harmless from and against all costs, attorneys fees, expenses and liabilities incurred in and about any such claim, the investigation of them, or the defense of any action or proceeding brought on them, and from and against any orders, judgments or decrees which may be entered in them.  Lessee shall further defend any action, complaint or proceeding brought against Lessor as the result of any matters above enumerated, all at no cost or expense to Lessor.

Lessee shall be responsible for any and all damage to the Airport caused by the negligence of Lessee, its agents, employees, contractors, subcontractors, or invitees, including but not limited to, damage to terminal areas, ramp and Taxiway areas, engine run-up areas, Runways, hangar facilities and any and all areas where activities are performed or areas utilized by Lessee.

Lessee agrees to indemnify and hold Lessor harmless from any claim of lien by any contractor, sub-contractor, materialman or any other Person, firm or corporation whatsoever, and Lessee further agrees to hold the Lessor harmless and to indemnify the Lessor for all costs, including costs of defenses, attorneys' fees and other expenses, in connection with any claim of whatsoever kind, whenever the same may be presented, arising out of the construction of any Improvements or the making of any alterations whatsoever incidental to this Lease Agreement.

(c)     No liens created.  Each party covenants and agrees that it has no power to incur any indebtedness giving a right to a lien of any kind or character upon the right, title and interest of the other party in and to the Premises covered by this Lease Agreement, and that no third person shall ever be entitled to any lien, directly or indirectly derived through or under the other party, or its agents or servants, or on account of any act or omission of any other party, except for the lien, if any, reserved upon the Lessee's leasehold interest in the Premises by a leasehold mortgage pursuant to Paragraph 41, below.  All persons contracting with the Lessee, or furnishing materials or labor to the Lessee, or to its agents or servants, as well as all persons whomsoever, shall be bound by this provision of the Lease Agreement.  Should any such lien be filed, the Lessee shall discharge the same within thirty (30) days after Lessee is notified of same, by paying the same or by filing a bond, or otherwise, as permitted by law.  The Lessee shall not be deemed to be the agent of the Lessor so as to confer upon a laborer bestowing labor upon the Premises, or upon a materialman who furnishes material incorporated in the construction of Improvements upon the Premises, a mechanic's lien upon the Lessor's estate under the provisions of Chapter 713, Florida Statutes (2009), and any subsequent revisions or amendments of that law.

(d)     Operating costs.

(1)     The Lessee agrees promptly to pay when due all operating, maintenance and servicing charges and costs, including telephone, gas, electricity, water, water connection, sewer, sewer connections, stormwater management utility fees, and all other expenses incurred in the use and operation of the Premises.

Parcel 8AB KC FXE 10/08/09

(2)    The Lessee agrees to obtain at its expense all permits and licenses which may be required by any governmental unit. Upon the Lessor's request, at reasonable intervals, the Lessee shall promptly furnish to the Lessor evidence satisfactory to the Lessor showing Lessee's compliance with its obligations under this Paragraph.

(e)    <u>Insolvency of Lessee</u>.  Should the Lessee, at any time during the term of this Lease Agreement, suffer or permit to be filed against it a composition or arrangement proceeding under state law, or make any assignment for the benefit of its creditors, or should a receiver be appointed for the Lessee's property because of the Lessee's insolvency and the appointment is not vacated within thirty (30) days thereafter, or should the Lessee's leasehold interest be levied on and the lien not discharged within thirty (30) days after levy has been made, or should the Lessee fail to promptly make the necessary returns and reports required of it by state and federal law, or should the Lessee fail promptly to comply with all governmental regulations, both state and federal, and should such failure in any manner jeopardize the rights of the Lessor, then, and in such event, and upon the happening of any of these events, the Lessor shall have the right, at its election, to consider the same a default on the part of the Lessee of the terms and provisions of this Lease Agreement, and, in the event of such default not being cured by the Lessee within a period of thirty (30) days from the date of the giving by the Lessor of written notice to the Lessee of the existence of such default, the Lessor shall have the option of declaring this Lease Agreement terminated, and the interest of the Lessee ended, or the Lessor may exercise any other options as prescribed by law or which appear in this Lease Agreement. The pendency of arrangement proceedings to which the Lessee shall be a party shall not preclude the Lessor from exercising the options conferred upon it. In the event the Lessee, or receiver of the Lessee's property, shall seek an injunction against the Lessor's exercise of the options conferred, such action on the part of the Lessee, or receiver, shall automatically terminate this Lease Agreement as of the date of the making of such application. In the event a court shall enjoin the Lessor from exercising the options conferred in this Lease Agreement, such injunction shall automatically terminate this Lease Agreement.

(f)    <u>Bankruptcy of Lessee</u>.  Should the Lessee, at any time during the term of this Lease Agreement, suffer or permit an involuntary or voluntary petition in bankruptcy to be filed against it, or institute a composition or an arrangement proceeding under Chapters 7, 11, or 13 of the Bankruptcy Code or as the same may be amended from time to time, the Lessee agrees to provide adequate protection and adequate assurance of future performance to the Lessor which will include, but not be limited to the following:

(1)    All monetary and non-monetary defaults existing prior to the institution of the filing of the bankruptcy petition shall be cured within ten (l0) days of written demand made upon the Lessee by the Lessor which will include all costs and reasonable attorneys' fees expended to the date of the curing of the default;

(2)    An additional two (2) months of advance rental will be required as additional security of future performance which must be paid to the Lessor within ten (l0) days of the filing of the petition in bankruptcy; and

(3)    All obligations of the Lessee must be performed in accordance with the terms of the Lease Agreement.

Parcel 8AB KC FXE 10/08/09

If an involuntary petition is filed, the foregoing provisions of subparagraphs (f)(1) and (f)(2) shall only apply if such petition is not discharged or dismissed within thirty (30) days from the date it is filed.

If at any time during the pendency of the bankruptcy proceeding the Lessee or its successor in interest fails to perform any of the monetary or non-monetary obligations required under the terms of this Lease Agreement, or fails to cure any pre-filing default, or make the additional security deposit required under the adequate protection and adequate assurance of future performance clause above, the LESSEE STIPULATES AND AGREES TO WAIVE ITS RIGHTS TO NOTICE AND HEARING AND TO ALLOW THE LESSOR TOTAL RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. 362 TO ENFORCE ITS RIGHTS UNDER THIS LEASE AND UNDER STATE LAW INCLUDING BUT NOT LIMITED TO ISSUANCE AND ENFORCEMENT OF A JUDGMENT OF EVICTION, WRIT OF ASSISTANCE AND WRIT OF POSSESSION.

(g)     Taxes.  For each year of the term of this Lease Agreement, the Lessee agrees to pay when due all federal, state, county and local taxes and special assessments of whatsoever kind levied and assessed against the Premises, if any, and all Improvements built on them.   On or before March 31 of each lease year of the term of this Lease Agreement, the Lessee agrees to deliver to the Lessor official tax receipts showing the payment by Lessee of all taxes and special assessments.  The Lessee further agrees to pay when due all ad valorem property taxes, sales and use taxes, special assessments and any and all other taxes or assessments imposed upon or being the liability of the Lessee arising, at any time, out of this Lease Agreement.  Lessee shall also pay the rental tax prescribed by the statutory law of Florida. Any property taxes will be prorated, if applicable, to a period of time less than one (1) year.

The Lessee shall have the right to review or protest, or cause to be reviewed or protested, by legal proceedings, any such taxes, assessments, or other charges imposed upon or against the Premises, buildings, or other structures or Improvements on them and in case any such taxes, assessments or other charges shall, as a result of such proceedings or otherwise, be reduced, canceled, set aside or to any extent discharged, the Lessee shall pay the amount that shall be finally assessed or imposed against the Premises, buildings or other structures or Improvements which are finally determined to be due and payable on any such disputed or contested items.  If necessary, or legally required, Lessee may exercise such review or protest right in the name of the Lessor, and Lessor agrees to cooperate with Lessee in its exercise of such right and will execute any documents needed by Lessee in connection with such right, provided that Lessee shall pay any costs incurred by Lessor as a result of such cooperation, and such document is not adverse to City. If requested in writing by Lessor, Lessee shall deposit any disputed sum, including any applicable penalty fee, with an escrow agent mutually selected by the parties, for the protest period. All expenses of such litigation, including court costs, shall be paid by Lessee free of any expense to Lessor. If, as a result of any legal proceeding pursuant to the provisions of this Paragraph, there is any reduction, cancellation, setting aside or discharge of any such tax or assessment or other charges of City, the applicable refund shall be payable to the Lessee and, if such refund is made to the Lessor, then the Lessor shall hold such refund as a trust fund and shall immediately pay over the same to the Lessee.  The term "legal proceeding," as used above, shall be construed as including appropriate appeals from any judgments, decrees or orders and certiorari proceedings and appeals from orders entered in them.

Parcel 8AB KC FXE 10/08/09

(h)    Repairs and Maintenance.

(1)    Upkeep.  The Lessee agrees at its expense to keep and maintain the Premises, including grounds, pavement, buildings, furnishings, fixtures and personal property in a good state of repair and first-class condition, whether such upkeep be ordinary or extraordinary, structural or otherwise. First class condition is defined as that condition prevailing in similar hangar and office complexes recently constructed. Should the Lessee fail to make any required corrections, the Lessor shall have the right to enter the Parcel, or Improvements thereto, correct the deficiency, and recover the cost of such activities from Lessee as rent due on the next rent payment date.

(2)    Repairs.  The Lessee agrees at its expense to make all repairs to the buildings or Improvements situated upon the Premises, including electrical, plumbing, sewer and sewer connections which solely serve the Premises, structural and all other repairs that may be required to be made, and the Lessee at its expense will keep all buildings, including interiors, exteriors, roofs, fixtures and equipment, in a good state of repair and in first class condition and at all times well-kept; provided, however, that any Improvements owned, controlled or operated by Lessor, such as roads, fences and utility lines, shall be maintained by Lessor.  Lessor, its officers, employees, agents, representatives and contractors shall have the right, to maintain existing and future utility, mechanical, electrical and other systems and to enter the Premises at all reasonable times to make such repairs, replacements or alterations as deemed appropriate by Lessor.  In the exercise of such rights of access, repair, alteration or new construction, Lessor shall not unreasonably interfere with the actual use and occupancy of the Premises by Lessee.

(3)    Repair of Damage.  If the Premises or Improvements thereto are partially destroyed or damaged by fire or other casualty, then Lessee shall repair and restore the Premises or Improvements thereto as soon as it is reasonably practicable.  Such repair or restoration shall commence not later than six (6) months after such damage, and be completed within six (6) months thereafter.  Such restoration shall be to substantially the same condition in which the Premises or Improvements thereto were before such damage.  In the event that Lessee has not demonstrated reasonable attempt to commence repairs within six (6) months from the date of said damage and thereafter diligently pursues completion of such repairs within six (6) months, this Lease may be immediately terminated by the Lessor.  Such termination shall be made effective by serving notice upon the Lessee, and effective on the date of receipt of such notice by the Lessee.

(4)    Surrender.  At the expiration or termination of this Lease, any or all buildings and other permanent improvements to the Parcel will, at the direction and sole discretion of Lessor, either remain intact on the Premises and become the property of the Lessor, or be removed by Lessee. The Lessee at its expense agrees to deliver the Premises to the Lessor upon the termination of this Lease Agreement in a good state of repair, and buildings so delivered shall be comparable to buildings of similar construction, age and condition, ordinary wear and tear or damage by fire or the elements excepted.  Should Lessor elect that Lessee remove any or all Improvements, the Lessee shall do so within forty-five (45) days after the termination of the Lease.  When removing Improvements, the Lessee shall restore the

Parcel 8AB KC FXE 10/08/09

Premises to its previously existing condition, including filling excavations, returning the surface to grade, and leaving the Premises safe and free from all debris and hazards. All improvements not removed as aforesaid shall, without compensation to or by Lessor, become Lessor's property free and clear of all liability and expenses. The Lessee shall at its expense take all actions required by federal, state, local and City laws, rules and regulations to remove or have removed from the Premises all hazardous substances or other Materials, however stored, and whether or not such hazardous substances or Materials have been discharged into the ground. All such hazardous substances and Materials shall be removed by the Lessee in a manner that complies with all applicable federal, state, local and City laws, rules and regulations and the provisions of Paragraph 32 shall be applicable

(i)     Quiet enjoyment. Lessor covenants, warrants and agrees that Lessee shall be entitled peacefully to enjoy, to occupy and to possess the Premises throughout the lease term without interference, hindrance or molestation.

(j)     Receipts. The Lessee shall, upon written demand by the Lessor, obtain and deliver to the Lessor receipts, satisfactions and discharges showing the payment of any obligation required of Lessee by the Lease Agreement.

(k)     Signs. All signs or any advertising erected, maintained or displayed at or on the Premises or upon any Improvements shall comply with the Sign Code of the City of Fort Lauderdale (Section 47-22, Uniform Land Development Regulations) and all other applicable local, state and federal laws, rules, regulations and ordinances pertaining to signage. No billboards or off-premise signage, temporary signs or advertising displays, such as banners, balloons, flashing sign boards, and/or any similar visual devices shall be permitted at the Premises. Upon the expiration or earlier termination of this Lease, Lessee shall remove, obliterate or paint out, as directed by City, all signs and advertising on the Premises and, in connection therewith, shall restore the portion of the Premises affected by such signs or advertising to the same condition as the same existed prior to the placing thereon of such signs or advertising. In the event Lessee fails to remove, obliterate or paint out each and every sign or advertising and to restore the Premises, the City may, after written notice to Lessee with an opportunity to cure, perform the necessary work and the Lessee shall pay the costs thereof to the City upon demand.

(l)     Obstruction lights. Lessee shall install, maintain and operate at its own expense, such obstruction lights on the Premises as the FAA may direct, or as Lessor may reasonably require, and shall energize such lights for such periods as may be directed or requested by Lessor or the Control Tower at Airport.

(m)     Litigation venue. The parties waive the privilege of venue and agree that all litigation between them in the state courts shall take place in Broward County, Florida, and that all litigation in the federal courts shall take place in the Southern District in and for the State of Florida.

(n)     Recording of Lease. Lessee shall, at its own expense, record this Lease Agreement or a Memorandum of Lease in the Public Records of Broward County, Florida. If the latter is desired, Lessee shall prepare the document and submit it to Lessor for execution, subject to approval as to its form by the City Attorney of Lessor. Lessee shall immediately forward a copy of the recorded Lease or the recorded Memorandum of Lease to the City.

Page 10 of 44

Parcel 8AB KC FXE 10/08/09

(o)     Observance of Rules and Regulations.  Lessee covenants and agrees to observe and obey, and to require its sublessees, officers, employees, guests, invitees, and those doing business with it, to observe and obey such non-discriminatory ordinances, rules, regulations and standards of the City of Fort Lauderdale and the Airport, including any amendments thereto.  The obligation of the Lessee to require this adherence by sublessees, guests, invitees and business visitors shall apply only while such persons are on or in occupancy of any portion of the Premises.

(p)     Conduct of Operations.  Lessee and all sublessees shall conduct their operations under this Lease in an orderly and commercially reasonable manner, based on the nature of the operations, so as not to annoy, disturb, endanger or be offensive to others at the Airport.

(q)     Adherence to Noise Regulations.  Lessee and all sublessees shall take all reasonable care to reduce to a minimum vibrations tending to damage any equipment, structure, building or portion of a building which is on the Premises or is a part thereof, or is located elsewhere on the Airport, and to keep the sound level of their operations as low as possible.  The parties agree that aircraft operating within federal noise requirements shall not be deemed in violation of this provision.

(r)     No Nuisances.  Lessee and all sublessees shall commit no nuisance, waste or injury on the Premises and shall not do or permit to be done anything, which may result in the creation or commission or maintenance of such nuisance, waste or injury on the Premises.

(s)     Utilities.  Lessee and all sublessees shall not do or permit anything to be done, which may interfere with the effectiveness or accessibility to the utility systems, installed or located on or about the Premises.

(t)     Flammables.  All flammable liquids kept or stored at the Premises must at all times be handled, stored and used in accordance with all applicable federal, state, City and local laws, ordinances, statutes, rules and regulations.

(u)     Derelict Aircraft.  Lessee and all sublessees shall not permit the temporary or permanent storage at the Premises of any Derelict Aircraft.  A Derelict Aircraft is (1) an aircraft that does not hold a current and valid airworthiness certificate issued by the FAA or other appropriate certificating authority, together with the necessary aircraft registration and maintenance records with a current endorsement by an appropriately rated certificate holder that the aircraft is in an airworthy condition; or (2) an aircraft that has been issued a condition notice by the FAA specifying that the aircraft has one or more conditions rendering it unairworthy; or (3) an aircraft which has had major components, accessories, flight controls, portions of the airframe or engines removed so as to render the aircraft unflyable. With respect to Derelict Aircraft, the Airport Manager of City may make a written request to the Lessee to demonstrate that an open work order for repair or restoration is being actively pursued by Lessee or the sublessee.  If the Lessee fails to provide the Airport Manager with satisfactory evidence that an open work order is being actively pursued within fourteen (14) days of the request from the Airport Manager, then such Derelict Aircraft shall be removed from the Premises by the Lessee within ninety (90) days following the date of the Airport Manager's request.  Any Derelict Aircraft that is not removed from the Premises as provided in this subparagraph shall constitute a breach of this Lease Agreement.

Parcel 8AB KC FXE 10/08/09

(v)     Derelict Vehicles. Lessee and all sublessees shall not permit the temporary or permanent storage at the Premises of any other derelict vehicle whatsoever. A derelict vehicle is a vehicle that does not display a current and valid state license tag. Any derelict vehicle that is not removed from the Premises within thirty (30) days after notice from the City will constitute a material breach of this Agreement.

(w)     Emergency Evacuation and Hurricane Plan. Within thirty (30) days of the date of this Agreement, Lessee shall prepare an emergency evacuation and hurricane plans consistent with any existing plans for the Airport. These plans shall constitute detailed procedures of actions to be taken by Lessee and its sublessees, in the event the need for evacuation or a hurricane alert warning arises.

(x)     Regulatory Approvals. Lessee agrees to cooperate with City in connection with City's efforts to obtain Regulatory Approvals, including but not limited to Airport FAR Part 150 Program and any updates thereto, Airport Master Plan Updates, and any approvals required pursuant to Chapter 380 and Chapter 333, Florida Statutes. From and after the date of execution of this Lease, Lessee covenants and agrees (i) to support the City's efforts to obtain the Regulatory Approvals; and (ii) to execute any document(s) or instrument(s) reasonably required by the City in order to assist City in obtaining the Regulatory Approvals, provided that Lessee shall not be required to bear any expense in connection therewith and that Lessee shall not be deemed an agent of the City.

(y)     Operational Reports. Lessee agrees to submit to Lessor upon reasonable request by Lessor any report or reports or information regarding Lessee's operations at the Airport, including, but not limited to, passenger counts, flight operations, number of aircraft serviced, and matters of a similar nature. The Lessor agrees to receive from Lessee, upon request by Lessee, any reports the Lessee deems appropriate for the purpose of keeping the Lessor informed of any operational problems and of any suggested improvements at the Airport.

8.     RENT.

Rent shall commence on the Commencement Date of the Lease Agreement (November 1, 2009). All rental payments shall be paid in advance in equal monthly installments of Ten Thousand Four Hundred One and 90/100 Dollars ($10,401.90), plus applicable taxes, on the first day of each month to which applicable according to the following schedule:

(a)   One Hundred Twenty Four Thousand Eight Hundred Twenty Two and 83/100 Dollars  ($124,822.83) is the basic annual rental for the first year of this Lease Agreement, referred to as the "Base Rent."

(b)     It is agreed between Lessor and Lessee that the Base Rent specified above shall be subject to an increase at annual intervals, such increase to be calculated in accordance with the following terms and conditions:

(1)     Lessor and Lessee agree that the Base Rent for the remainder of the term of this Lease Agreement shall be adjusted, at one (1) year intervals, the first adjustment to become effective as of November 1, 2010, which is the date of commencement of the second year of the Lease term, and with further adjustments to occur at each one (1) year interval thereafter (the "Adjustment Date"). Such adjustments shall be based upon the Cost of Living Index known as the Consumer Price Index (All Items, 1982-84 = 100), United States, All Urban Consumers, published by the Bureau of Labor

Page 12 of 44

Parcel 8AB KC FXE 10/08/09

Statistics of the United States Department of Labor.  For computation purpose, the Numerator and Denominator are defined as follows:

Numerator - The Consumer Price Index for the third (3rd) month preceding each Lease Adjustment Date.

Denominator - The Consumer Price Index for the third (3rd) month preceding the Commencement Date of the lease term.

The resulting fraction shall be applied to the minimum guaranteed annual rental (Base Rent) for the first lease year to arrive at the new annual rental.  Should the Bureau mentioned above discontinue the publication of an Index approximating the Index contemplated above, then such Index as may be published by another United States governmental agency which most nearly approximates the Index referred to above shall govern and be substituted as the Index to be used, subject to the application of an appropriate conversion factor to be furnished by the governmental agency publishing such Index.

(2)     Base Rent shall be further adjusted on the 10th and 20th anniversary of the Commencement Date of the Lease Agreement to reflect either ten percent (10%) of the appraised value of the land or the current new annual rental established at the time of the adjustment, whichever is greater.

(3)     At no time shall the adjusted rent be less than the Base Rent specified above.

(c)     In addition to the above sums, the Lessee shall cause to be paid to the Lessor the sums provided in Paragraph 13 pertaining to the delivery to the Premises of any octane-rated fuels, jet fuels and lubricating oils (referred to as "Fuel" and "Oil") by Lessee, its sublessees, agents or independent contractors.  The sums mentioned below shall not be considered as rent for the Premises, but shall be collected in the same manner as rent, including interest as provided in this Lease Agreement, accruing upon any late payments of such sums.

(d)     Late Payment.  The Lessor shall be entitled to collect interest at the rate of eighteen (18%) percent per annum from the date due until the date paid on any amounts that are past due beyond any applicable cure period.  Lessor's right to require payment of such interest and the obligation of the Lessee to pay the same shall be in addition to and not in lieu of the right of Lessor to enforce other provisions in this Lease, including termination of the Lease Agreement, and to pursue other remedies as provided by law.

(e)     Dishonored Checks.  In the event Lessee delivers a dishonored check or draft to Lessor in payment of any obligation arising under this Lease Agreement, the Lessee shall incur and pay any charges assessed to City as a result of the dishonored check or draft.  In the event Lessee delivers a dishonored check or draft, the Airport Manager may require that future payments be made by cashier's check or other acceptable means by making such demand in writing to Lessee.

(f)     Place of Payment.  All payments required to be made by Lessee under this Lease Agreement shall be made payable to the "City of Fort Lauderdale," and shall be delivered or mailed to the address below, or to an address as may be substituted therefore by the Lessor:

Page 13 of 44

Parcel 8AB KC FXE 10/08/09

City of Fort Lauderdale
Attn:  Department of the Treasury
100 North Andrews Avenue
Fort Lauderdale, Florida 33301

9.   SECURITY DEPOSIT.

(a)   The Lessee shall post a security deposit with the City equal to three (3) monthly installments of rental ("Security Deposit").  The Security Deposit shall serve as security for the payment of all monies due to Lessor and shall also secure the performance of all obligations of Lessee to the Lessor.  The Security Deposit shall be in the form of an Irrevocable Letter of Credit ("Letter of Credit") in form and substance satisfactory to Lessor. In the event of any failure by Lessee to pay when due any rentals or charges or upon any other failure to perform its obligations or other default under this Agreement, then in addition to any other rights and remedies available to Lessor at law or in equity, Lessor shall be entitled to draw down the full amount of the Security Deposit and apply the same to all amounts owed.  Upon notice of any such draw, Lessee shall immediately replace the Security Deposit with a new Letter of Credit in the full amount of the Security Deposit required hereunder.  The Lessor, upon fourteen (14) calendar days notice to Lessee, may require an increase in the Security Deposit to reflect any increases in the monies payable hereunder.  The Security Deposit shall be kept in full force and effect throughout the term of this Lease and for a period of six (6) months thereafter.  Not less than one hundred twenty (120) calendar days prior to any expiration date of a Letter of Credit, Lessee shall submit evidence in a form satisfactory to Lessor that said security instrument has been renewed. A failure to renew a Letter of Credit, or to increase the amount of the Security Deposit if required pursuant to this Paragraph, shall be a default of this Agreement entitling Lessor to all available remedies.  The Security shall not be returned to Lessee until all obligations under this Lease are performed and satisfied.

(b)   Each Letter of Credit provided hereunder or under any other Paragraph or provision of this Lease shall be provided by a financial institution of recognized standing authorized to do business in the State of Florida.  Throughout the term of the Letter of Credit, the financial institution that has issued the Letter of Credit must maintain a relationship with a financial institution having an office in Broward, Miami-Dade or Palm Beach County, Florida, at which the Letter of Credit may be presented for drawing down, and the financial institution issuing the Letter of Credit must have been in business with a record of successful continuous operation for at least five (5) years.  Each Letter of Credit shall be in a form and substance satisfactory to Lessor.  Lessee's obligation to post a Security Deposit shall apply to all heirs, successors, and assigns.

10.   INTEREST.  All delinquent payments to the Lessor shall bear interest at the rate equivalent to the periodic composite of current annual interest rates on five (5) year United States Government agency issues in effect as of the date of delinquency, but not less than ten percent (10%) per annum.  Such interest shall be calculated from the due date, exclusive of any grace period, to the date of payment, on a daily basis, and will be due and payable when billed.

11.   LIEN UPON REVENUES, ETC.  In the event of the Lessee's breach of any material provisions of this Lease, the Lessor shall, subject to the provisions of Paragraph 41 of this Lease, have a lien upon all revenues, income, rents, earnings and profits from the Premises as additional security to the Lessor for the Lessee's faithful performance of each of the terms and provisions, and to secure payment of all sums owing to Lessor.  Such

Parcel 8AB KC FXE 10/08/09

liens shall be superior in dignity to the rights of the Lessee and any of its creditors or assignees or any trustee or receiver appointed for the Lessee's property, or any other person claiming under the Lessee. Upon the Lessor's termination of Lessee's rights under this Lease by reason of the Lessee's default, all such revenues, income, rents, earnings and profits derived or accruing from the Premises from the date of such termination by the Lessor shall constitute the property of the Lessor, and the same is declared to be a trust fund for the exclusive benefit of the Lessor and shall not constitute any asset of the Lessee or any trustee or receiver appointed for the Lessee's property. The provisions of this Paragraph shall be effective without the Lessor's re-entry upon the Premises or repossession of them, and without any judicial determination that the Lessee's interest under the Lease has been terminated. Despite any provision in this Paragraph that is or may appear to be to the contrary, Lessor acknowledges that the lien of a leasehold mortgagee upon Lessee's revenues, income, rents, earnings and profits as described above shall be recognized as superior to Lessor's lien.

12.  ABATEMENT OF RENT. If at any time Lessee shall become entitled to an abatement of rental by the provisions of this Lease Agreement, the abatement of such rental shall be made on an equitable basis giving effect to the amount and character of the space of which the Lessee is being deprived as compared with the entire Premises. If Lessor shall, for safety or other reasons, prohibit the use of the public landing area at the Airport or of any substantial part of them for a period covering more than fifteen (15) consecutive days and the Lessee shall be prevented from conducting those operations at the Airport contemplated by this Lease Agreement, then, upon the occurrence of such event, Lessee shall be entitled to an abatement of rental during such period of prohibition and prevention. Lessee releases and discharges Lessor of and from all claims and rights which Lessee may have arising out of or consequent upon such closing and the subsequent interrupted use of such public landing area during the period of such prohibition.

13.  AVIATION FUELS.

(a)  The right of dispensing and selling aviation fuels and lubricating oils within the Premises, provided such aviation fuels and lubricating oils shall be the product of a supplier or suppliers holding all necessary permits, licenses, certifications, or approvals required by the appropriate government agencies to conduct such operations and to deliver aviation fuels and lubricating oils to the Airport. Lessor shall in no way be prevented from granting exclusive rights for the sale and dispensing of aviation fuels and lubricating oils on premises other than those covered by this Lease under such terms and conditions as it may deem advisable. In connection with the sale or dispensing of such products upon the Premises or otherwise, Lessor assumes no responsibility for acts of any supplier regarding delivery, quality of product, or maintenance of supplier-owned or Lessee-owned equipment. Aviation fuels and lubricating oils shall be stored and dispensed by Lessee in accordance with all City, county, local, state, and federal laws, regulations, rules and other requirements pertaining to the sale and storage of such fuels and oils, including but not limited to the Minimum Standards, as amended by the City from time to time.

(b)  The parties agree that the following sums are those to which the provisions above apply, and shall be paid to Lessor on a monthly basis:

Five and one-half percent (5-1/2%) of the per gallon cost price to Lessee of the first five hundred thousand (500,000) gallons of fuel delivered to Premises, and three and one-half percent (3-1/2%) of the cost price of each gallon exceeding five

Page 15 of 44

Parcel 8AB KC FXE 10/08/09

hundred thousand (500,000) gallons, of all aviation fuels delivered to Premises.

(c)     Remittances to Lessor shall be paid monthly not later than the 15th day of each month without any additional grace period and accompanied by a monthly report prepared by Lessee, which report shall detail the gallon amounts of any and all fuel delivered to the Premises. Such monthly reports shall pertain only to the Lessee's operations conducted at the Airport and exclude any other operations of the Lessee conducted at other locations.

(d)     The Lessee shall further retain upon the Premises all delivery bills, invoices, and related records pertaining to the delivery to the Premises of aviation fuels and lubricating oils and shall produce and make available such books and records upon request by the Lessor for the purposes of auditing payments to the Lessor as provided in this Lease Agreement. Such books, records and other documents shall be made available for inspection to representatives of Lessor within fifteen (15) days of written notice to Lessee. Lessor shall have the right, upon reasonable notice to Lessee, to audit the Lessee's books and records relating to Lessee's operations in order to determine the correctness and accuracy of the fuel fees paid to Lessor during a Lease year.  In the event that any such audit reflects that the total fuel fees actually paid to Lessor during a particular Lease year shall be less than the fuel fees due and owing for such Lease year, then the Lessee shall immediately pay the difference to the Lessor upon written demand therefore by Lessor. If, as a result of any audit, it is established that the fuel fees paid to Lessor during a Lease year shall be three (3%) percent or more less than the fuel fees owed to the Lessor for such Lease year, the entire expense of said audit shall be borne by the Lessee. Lessor shall provide Lessee with a copy of the audit results obtained by Lessor upon written request by Lessee.

(e)     The term delivery to the Premises as used in this subparagraph shall mean delivery of aviation fuel to the Premises, whether to Lessee, its employees, agents, sublessees and independent contractors, but shall not apply when Lessee obtains aviation fuel from Fixed Base Operators at the Airport.

14.     ACCESS TO PREMISES.  Lessor represents and warrants that Lessee shall have the right of ingress and egress to and from public thoroughfares and over Airport paved roads, such that at all times during the term of this Lease Agreement, Lessee, its successors and assigns and their respective guests and invitees shall have vehicular ingress and egress to and from the Premises from public thoroughfares. Notwithstanding the above, the City may, from time to time, substitute other suitable means of ingress and egress so long as an alternate adequate means of access is available.  The City may at any time temporarily or permanently close, or consent to, or request the closing of any such roadway, Taxiway and any other such area at the Airport presently or hereafter used as such, so long as reasonably sufficient alternate means of ingress and egress is made available to the Premises.

15.     INSPECTION OF PREMISES.  The Lessor, its officers, employees, agents, representatives and contractors, and other governmental agencies having jurisdiction shall have the right to enter the Premises and the buildings and Improvements constructed on them at all reasonable hours for the purpose of inspecting the same, for observing the performance of the Lessee of its obligations under the Lease, or for any other purposes not inconsistent with the terms of this Lease Agreement, but consistent with reasonable security measures of the Lessee.  Lessor agrees that such right will not be exercised arbitrarily or in a manner that would unnecessarily disturb occupants of the Premises, except in cases involving public safety or police emergency.  This right of entry shall

Parcel 8AB KC FXE 10/08/09

impose no duty on the City to take any such action and shall impart no liability on the City should it not take such action.

16.   EASEMENTS AND UTILITIES.

(a)   The Lessee shall grant permission or convey to the Lessor any right of use of any portion of the Premises that may be required for the installation of utilities or right-of-way for road or any other municipal or public purposes.  It is understood that should any permission be required, it shall be in writing and the use permitted must be compatible with any existing or proposed Improvements of the Lessee.  It is further agreed that if it becomes necessary to relocate or remove any Improvement for the sole benefit of Lessor, then the cost of such removal or relocation shall be at the Lessor's expense.  Easements to be conveyed or retained by Lessor shall include, but are not limited to, all utility easements on the Premises as may now or in the further be determined to be necessary to serve the needs of the Airport and all easements referred to in Exhibit "A".  In the event there is a loss of beneficial use or impairment of beneficial use resulting from the granting of permission for use to Lessor, proper adjustment of the rent required shall be made at the time of the grant or conveyance given by Lessee.  No special assessment for such grants or Improvements made on the Premises for the sole benefit of Lessor shall be made against Lessee. Lessor covenants and agrees that it will promptly execute and deliver any and all instruments that may be required of the Lessor in connection with the granting of easements for installation of water, gas, electricity, telephone or other appropriate utility to the various utility companies affecting any part of the Premises, without expense to the Lessee, so long as this Lease Agreement or any sublease under this Lease Agreement is in effect.

(b)   Lessee shall pay for all electric, water, garbage and other utilities charges for the Premises.  Any metering devices installed by the Lessee for such utilities shall be installed at Lessee's cost and shall become property of the City upon installation. Extension of utility mains or services to meet the needs of the Lessee on the Premises shall be completed at Lessee's expense and shall become the property of City upon installation.

17.   PROHIBITED SERVICES AND USES.   The Premises shall be used for no purposes other than as specifically allowed by this Lease.  The Premises shall not be used in any manner that is incompatible with or which violates any provision of any FAA rules, regulations or advisory circulars, state laws or regulations, or City ordinances, applicable county ordinances, administrative code provisions or regulations, as each is amended from time to time, and including without limitation FAA Advisory Circular No. 150/5300-13, Chapter 333, Florida Statutes, and Chapter 7 of the City of Fort Lauderdale Code of Ordinances.  In addition, Lessee shall be expressly prohibited from providing the following services and conducting the following uses:

(a)   Terminal facilities for passenger operations, other than those covered by Federal Aviation Regulations (FAR) Parts 91, 125, 135.

(b)   Restaurant, coffee shop, lounge or cafeteria (except as expressly permitted herein).

(c)   Sale or dispensing of alcoholic beverages (except as expressly permitted herein).

(d)   Sale of non-aviation products and any use not related to aviation, other than the sale of company specialty items such as shirts, hats and other specialty items.

Parcel 8AB KC FXE 10/08/09

(e)     Air shows.

(f)     Carrying, storing, receiving or distributing hazardous materials.

(g)     Adult entertainment.

(h)     Any use, which conflicts with the Foreign Trade Zone (FTZ) activities and regulations.

(j)     Any other use prohibited by law.

18.     ZONING.  The Lessee accepts the zoning of the Premises, which Lessor represents and warrants is General Aviation Airport (G-A-A) as of the commencement of the term of this Lease Agreement, which zoning is compatible and consistent with the usages and purposes contemplated in this Agreement.  Lessee further accepts the existing zoning ordinances of the Uniform Land development Regulations of the City of Fort Lauderdale insofar as they are applicable to the Premises.

19.     RESTRAINTS UPON LESSEE.  Lessee understands and agrees that it is expressly subject to all applicable zoning restrictions and all rules, regulations and City ordinances pertaining to the Airport.

20.     COMPLIANCE WITH LAWS.  Lessee shall comply with all federal, state, local and City laws, ordinances, resolutions, statutes, and governmental rules, regulations and orders, including the Minimum Standards provided in Paragraph 33 below, as the same are amended from time to time.  A violation of any such laws, ordinances, resolutions, statutes, rules, regulations or orders shall constitute a material breach of this Lease, and in such event City shall be entitled to exercise all rights and remedies hereunder and at law and in equity.

21.     ACCELERATION; GRACE PERIOD; DEFAULT.

(a)     Time of the essence.  The Lessee agrees promptly to perform, comply with and abide by this Lease Agreement, and agrees that time of payment and of performance are of the very nature and essence of this agreement.

(b)     Default in rent; grace period.  Except as otherwise specifically provided in this Lease Agreement, the Lessee shall have a grace period of thirty (30) days within which to pay any and all sums of rent due, which sums shall be due and payable without notice or demand, which Lessee waives.  If any sums of money required to be paid by the Lessee to the Lessor shall, subject to Paragraph 41 of this Lease Agreement, remain unpaid after such latter period, then the Lessor shall have the following options and privileges:

(1)     Partial acceleration.  The Lessor may declare one year's rental as presently due and payable.  Such declaration shall not be construed as a splitting of a cause of action, nor shall it alter or affect the obligations of the Lessee to pay rent under the terms of this Lease Agreement for the period unaffected by the declaration.

(2)     Other remedies.  In addition to partial acceleration as outlined above, the Lessor may exercise any or all other options available to it, including any legal or equitable remedies which it may have, which options may be

Parcel 8AB KC FXE 10/08/09

exercised concurrently or separately with the exercise of the above option, including those remedies specified in subparagraph 21(c), below.

(c)     <u>Default in other provisions</u>. If Lessee shall default in the performance of any other term of this Lease Agreement (except the payment of rent), then the Lessor, or its agent, shall send to the Lessee a written notice of default, specifying the nature of the default, and Lessee shall, within thirty (30) days after the date of the notice, cure and remedy the default, and this Lease Agreement shall then continue as before.

       (1)     If the Lessee shall fail to timely cure and remedy such default, the Lessor shall have the right to declare, by written notice to the Lessee, that the Lease Agreement is in default, and to use all remedies available to the Lessor under this Lease Agreement.

       (2)     If default shall be made in any covenant, agreement, condition or undertaking contained in this Lease Agreement to be kept, observed and performed by Lessee, other than the payment of any rent, which default cannot with due diligence be cured within a period of thirty (30) days, and if written notice of the default shall have been given to Lessee, and if Lessee, prior to the expiration of thirty (30) days from and after the giving of such notice commences to eliminate the cause of such default and proceeds diligently, continuously and with reasonable dispatch to take all steps and do all work required to cure such default and does so cure such default, then Lessor shall not have the right to declare the Lease term ended by reason of such default; provided, however, that the curing of any default in such manner shall not be construed to limit or restrict the right of Lessor to declare the Lease term ended and enforce all of its rights and remedies under this Lease Agreement for any other default not so cured.

(d)     That upon any default and the failure to cure the same within the cure period provided herein, and at any time thereafter during the occurrence of such default, the Lessor may at its option immediately terminate the rights of Lessee hereunder by giving written notice thereof, which termination shall be effective upon the date specified in such notice or the Lessor may exercise any and all other remedies available hereunder, at law or in equity.

(e)     <u>Habitual Default</u>. Notwithstanding any other provision of this Lease, in the event that Lessee has frequently, regularly and repetitively defaulted in the performance of or breached any of the terms, covenants and conditions required in this Lease to be kept or performed by the Lessee, and regardless of whether the Lessee has cured each individual condition of breach or default, the Lessee may be determined by the Airport Manager to be a "habitual violator." At the time such determination is made, the Airport Manager shall issue to the Lessee written notice advising of such determination and citing circumstances therefore. Such notice shall also advise Lessee that there shall be no further notice or grace periods to correct any subsequent breaches or defaults and that any subsequent breaches or defaults of whatever nature, taken with all previous breaches and defaults, shall be considered cumulative and collectively, shall constitute a condition of noncurable default and grounds for immediate termination of this Agreement. In the event of any such subsequent breach or default, the Lessor may terminate this Agreement upon giving of written notice of termination to Lessee, such termination to be effective upon delivery of the notice to the Lessee.

(f)     No acceptance by the City of rent, fees, charges or other payments in whole or in part for any periods after a default of any of the terms, covenants and conditions hereof to be performed, kept or observed by the Lessee shall be deemed a waiver of any

Parcel 8AB KC FXE 10/08/09

right on the part of the City to terminate this Lease, or to exercise any other available remedies.

(g)    Upon expiration or earlier termination of this Agreement, Lessee shall remain liable for all obligations and liabilities that have accrued after the date of this Lease and prior to the date of expiration or termination.

22.    <u>TERMINATION BY LESSEE</u>.  Lessee shall have the right to terminate this Agreement in its entirety by giving written notice to Lessor of such termination upon or after the happening of one or more of the following events:

(a)    If any court of competent jurisdiction shall issue an injunction, order or decree preventing or restraining the use by Lessee of all or a substantial part of the Premises, or preventing or restraining the use of the Airport for usual airport purposes in its entirety, or the use of any part which is used by the Lessee and which is necessary for Lessee's operations on the Airport, which remains in force and unvacated or unstayed for a period of at least ninety (90) consecutive days and results in the material interference with Lessee's normal business operations; or

(b)    If the Lessor shall default in fulfilling any of the terms, covenants or conditions to be fulfilled by it and shall fail to remedy such default within thirty (30) days following receipt by Lessor of written demand from Lessee to do so, or if by reason of the nature of such default the same cannot be remedied within thirty (30) days, then Lessee shall have the right to terminate this Agreement if Lessor shall have failed to commence to remedy such default within the thirty (30) days following such written demand, or having so commenced, shall fail to diligently continue; or

(c)    If all or a material portion of the Airport or the Airport facilities are destroyed, or if any agency or instrumentality of the United States Government or the State of Florida shall occupy the entire Airport or a substantial part of it, or if military mobilization or public emergency causes a curtailment of normal civilian traffic at the Airport, and any of those events shall result in the material interference with Lessee's normal business operations for any consecutive ninety (90) day period.

23.    <u>OWNERSHIP AT TERMINATION</u>.

(a)    With the exception of condemnation as provided in Paragraph 43, all buildings, structures, Improvements and fixtures of every kind erected or placed on the Premises shall remain the property of the Lessee until the end of the term or earlier termination of this Lease Agreement for any other reason, at which time such buildings, structures, Improvements and fixtures of every kind shall be and become the property of the Lessor, at the Lessor's option, and shall be left in good condition and repair, ordinary wear and damage by the elements excepted. A fixture is defined as an article which was a chattel, but which, by being physically annexed or affixed to the realty by the Lessee and incapable of being removed without structural or functional damage to the realty, becomes a part and parcel of it.

(b)    Non-fixture personalty owned by the Lessee at the expiration of the term or earlier termination of this Lease Agreement, for any reason, shall continue to be owned by Lessee, and at the time of such expiration or earlier termination, Lessee at its option may remove all such personalty, provided the Lessee is not then in default of any covenant or condition of this Lease Agreement; otherwise, all such property shall remain on the Premises until the damages suffered by Lessor from any such default have been

Page 20 of 44

Parcel 8AB KC FXE 10/08/09

ascertained and compensated. Any damage to the Premises caused by the removal by Lessee of any such personalty shall be repaired by Lessee immediately at its expense.

(c)     Any property installed or attached to the Premises by any of Lessee's subtenants shall be and remain such subtenant's property and may be removed by the subtenant upon the termination of sublease, provided that such subtenant repairs, restores and saves the Lessor harmless from all damage to the Premises including buildings, other structures and Improvements, caused by such removal. While this Lease Agreement is in effect, Lessee shall be entitled to depreciation on the buildings, other structures and Improvements and fixtures, which are now or shall subsequently be erected upon the Premises.

24.     CONTINUED PERFORMANCE AFTER DEFAULT. Continued performance by either party pursuant to the terms of this Lease Agreement after a default of any of the terms, covenants and conditions, shall not be deemed a waiver of any right to terminate this Lease Agreement for any subsequent default, and no waiver of any such default shall be construed to be or operate as a waiver of any subsequent default.

25.     RE-ENTRY AND REPOSSESSION.

(a)     If the Lessee shall fail to keep and perform any of the covenants, conditions and agreements provided in this Lease to be performed by Lessee, and such default shall not be remedied within the grace period provided elsewhere in this Lease, the Lessor shall have the right to treat such default as intentional, inexcusable and material, and the Lessor, by notice in writing transmitted to the Lessee, as provided in Paragraph 47, entitled "NOTICES", may at its option declare the Lessee's interest under this Lease ended and without further force and effect. Thereupon the Lessor is authorized to re-enter and repossess the Premises and the buildings, Improvements and personal property on them, either with or without legal process, and the Lessee does in such event waive any demand for possession of the Premises, and agrees to surrender and deliver up the Premises peaceably to Lessor. In the event of such action, the Lessee shall have no claim whatsoever against the Lessor by reason of Improvements made upon the Premises, rents paid, or from any other cause whatsoever.

(b)     The provisions of this Paragraph shall not be construed so as to divest the Lessor, in the event of such default, of any legal right or remedy which it may have by statutory or common law, enforceable at law or in equity. It is intended that the provisions of this Paragraph shall afford to the Lessor a cumulative remedy, in addition to such other remedy or remedies as the law affords a Lessor when the terms of a lease have been breached by a Lessee.

26.     REMOVAL OF LESSEE'S PROPERTY BY LESSOR. If, under the terms of this Lease Agreement, Lessee is entitled to remove its property from the Premises, but shall fail to do so on or before the termination or expiration of the term or on or before the termination or expiration of this Lease Agreement for any other cause specified in this Lease Agreement, then Lessor may remove such property and retain the same in its possession, and may sell the same at public auction, the proceeds of which shall be applied first to the expenses of such removal and storage and sale, and the balance paid to the Lessee upon the demand of Lessee, providing that the proceeds of such sale exceed the expenses of such removal, storage and sale.

27.     NONWAIVER. Failure of the Lessor to insist upon the strict performance of any of the covenants, conditions and agreements of this Lease in any one or more

Parcel 8AB KC FXE 10/08/09

instances, shall not be construed as a waiver or relinquishment in the future of any such covenants, conditions and agreements. The Lessee covenants that no surrender or abandonment of the Premises or of the remainder of the term shall be valid unless accepted by the Lessor in writing. The Lessor shall be under no duty to relet the Premises in the event of an abandonment or surrender or attempted surrender or attempted abandonment of the Premises by the Lessee. Upon the Lessee's abandonment or surrender or attempted abandonment or attempted surrender of the Premises, the Lessor shall have the right to retake possession of the Premises or any part of them, and such retaking of possession shall not constitute an acceptance of the Lessee's abandonment or surrender.

28.    HOLD HARMLESS. Lessee shall at all times indemnify and hold Lessor, its agents, officers and employees harmless against any and all claims, losses, liabilities and expenditures of any kind, including attorneys' fees, court costs and expenses, arising out of Lessee's use of the Airport or occupancy of the Premises or caused by the acts, omissions or negligence of Lessee, its employees, agents, servants, or officers, arising out of or in any way connected with the Premises or the subject matter of this Lease, including without limitation, any and all claims, demands or causes of action of any nature whatsoever resulting from injuries or damages sustained by any Person or property. The provisions of this Paragraph shall survive the expiration or earlier termination of this Lease. Nothing in this Lease Agreement shall be construed as a waiver of the protections, immunities and limitations afforded City by Section 768.28, Florida Statutes.

29.    INDEMNITY AGAINST COSTS AND CHARGES. In the event of a breach of any of the provisions of this Lease and to the extent permitted by law, the party not in breach shall be entitled to recover from the breaching party all costs, expenses, reasonable attorneys' fees and damages which may be incurred or sustained by reason of such breach. Any sums due the Lessor under this Paragraph shall constitute a lien against the interest of the Lessee in the Premises and all its property situated on them to the same extent and on the same condition as delinquent rent would constitute a lien on the Premises and property.

30.        INSURANCE. In order to insure the indemnification obligations of this Lease, the parties further agree to the following provisions pertaining to insurance:

(a)    Fire and extended coverage. The Lessee, at its expense, shall provide full fire and extended coverage on any Improvements constructed on the Premises by the Lessee or the Lessor, for the benefit of the Lessor and the Lessee, in an amount satisfactory to the Lessor up to one hundred (100%) percent, but not less than ninety (90%) percent of the replacement value of the property and Improvements. The interest of Lessor shall be included under the policy as a loss payee. All rights of subrogation shall be waived against Lessor under the fire and extended coverage policy. For Improvements under construction, the Premises shall be covered under Builder's Risk Insurance and upon completion, as evidenced by issuance of the applicable Certificate(s) of Occupancy, such Improvements shall be added to the fire and extended coverage policy.

(b)    Workers' Compensation. The Lessee shall carry, maintain and pay for all necessary Workers' Compensation insurance in its own name, as required by the "Workers' Compensation Law" of the State of Florida, and all other applicable federal laws.

(c)    Liability Insurance. Lessee shall, at its expense, provide, pay for, and continuously maintain, comprehensive and all inclusive public liability and property damage insurance for the benefit of the Lessor and the Lessee, with policy limits of not less than Two Million Dollars ($2,000,000.00) for any one person and any one accident, which coverage shall include property damage and personal injuries, including death, and shall

Parcel 8AB KC FXE 10/08/09

name the City of Fort Lauderdale, Florida as an additional named insured. If Lessor requires other fixed base operator tenants at Airport to increase their policy limits for the insurance described in this subparagraph, then Lessee agrees to increase its insurance limits accordingly.

(d)    Automobile Insurance. Lessee shall, at its expense, provide, pay for, and continuously maintain Business Automobile Liability Insurance with minimum limits of One Million Dollars ($1,000,000.00) per occurrence, combined single limit for Bodily Injury and Property Damage Liability. Coverage must be without restrictive endorsements, and shall include owned vehicles, hired and non-owned vehicles and Employer's Non-ownership.

(e)    Policies. Whenever under the provisions of this Lease Agreement insurance is required of the Lessee, the Lessee shall promptly provide Certificates of Insurance to the attention of the Risk Manager of Lessor.

(f)    Collection of Insurance. In the event of destruction of or damage to any of the Premises or the buildings, other structures and Improvements covered by insurance, the funds payable pursuant to such insurance policies shall be payable to, and deposited in, a commercial national bank as trustee, located in Fort Lauderdale, Florida, selected by the Lessor, as a trust fund, and the funds shall be used for the purpose of reconstruction or repair, as the case may be, of any of the buildings, other structures or Improvements so damaged or destroyed. Such reconstruction and repair work shall be done in strict conformity with the ordinances and charter of the Lessor. Should the cost of reconstruction or repair exceed the amount of funds available from the proceeds of such insurance policy, then in such event, such funds shall be used as far as the same will permit in paying the cost of the reconstruction or repair. In the event that the cost of such reconstruction or repair work shall be less than the proceeds derived from such insurance policies, the surplus shall be payable to Lessee.

(g)    Precautions. In order to reduce the hazards and risks of interruption of business occasioned by windstorm and other acts of God, the Lessee agrees that it will at its expense take all reasonable precautions to protect the Premises from damage or destruction.

(h)    Primary coverage. All insurance referred to in this Lease Agreement shall apply as primary coverage and shall not be affected by any insurance that Lessor may carry in its own name.

31.    STANDARD PROTECTION CLAUSES.

(a)    It shall be a condition of this Lease, that the Lessor reserves the right unto itself, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the Premises, together with the right to cause in the airspace such noise as may be inherent in the operation of aircraft, now known or hereafter used, for the navigation of or flight in the airspace, and for use of the airspace for landing on, taking off from or operating on the Airport.

(b)    The Lessee expressly agrees for itself, its successors and assigns, to restrict the height of structures, objects of natural growth and other obstructions on the Premises, to such a height so as to comply with Federal Aviation Regulations, Part 77.

(c)    The Lessee expressly agrees for itself, its successors and assigns, to prevent any use of the Premises that would interfere with or adversely affect the operation or maintenance of the Airport, or otherwise constitute an Airport hazard.

Parcel 8AB KC FXE 10/08/09

32.   SPECIFIC COMPLIANCE WITH ENVIRONMENTAL LAWS.

(a)   The Lessee shall comply in all particulars with all pertinent rules, regulations, laws and ordinances duly and legally promulgated by any governmental authority, specifically including without limitation those addressing the following for protection of the environment:

(1)   Proper use, storage, treatment and disposal of Materials, including contracting with a licensed hazardous waste transporter or treatment and disposal facility to assure proper transport and disposal of hazardous waste and other regulated Materials.

(2)   Proper, use, disposal and treatment of stormwater runoff, including the construction and installation of adequate pre-treatment devices or mechanisms on the Premises, if applicable.

(3)   Adequate inspection, licensing, insurance and registration of existing and future storage tanks, storage systems and ancillary facilities to meet all City, local, state and federal standards, including the installation and operation of adequate monitoring devices and leak detection systems.

(4)   Adequate facilities on the Premises for management and, as necessary, pretreatment of industrial waste, industrial wastewater, and regulated materials and the proper disposal thereof.

(5)   Compliance with reporting requirements of Title III of the Superfund Amendment, Chapter 27 of the Broward County Code of Ordinances, Chapters 13 and 28 of the Fort Lauderdale Code of Ordinances and any other environmental regulations, as applicable and as such laws may be enacted and amended from time to time.

(b)   The release of any Materials on the Premises, or as a result of Lessee's operations at the Airport, that is in an amount constituting a violation of any federal, state, City of local law, rule or regulation or in violation of any order or directive of any federal, state, or local court or governmental authority, by Lessee, or any of its sublessees or the officers, employees, subcontractors, invitees, or agents of Lessee or its sublessees, whether committed prior to or subsequent to the date of execution of this Agreement, shall be, at the Lessee's expense, and upon demand of City or any of its agencies or any local, state, or federal regulatory agency, immediately contained or removed to meet the requirements of applicable environmental laws, rules and regulations.  If Lessee does not take action immediately to have such Materials contained, removed and abated, the City or any of its agencies may upon reasonable notice to Lessee (which notice shall be written unless an emergency condition exists) undertake the removal of the Materials; however, any such action by the City or any of its agencies shall not relieve the Lessee of its obligations under this or any other provision of this Agreement or as imposed by law.  No action taken by either the Lessee or the City to contain or remove Materials, or to abate a discharge, whether such action is taken voluntarily or not, shall be construed as an admission of liability as to the source of or the person who caused the pollution or its discharge.

(c)   Lessee shall provide the City with notice of releases of Materials occurring at the Premises or on account of Lessee's operations at the Airport.  Lessee shall maintain a log of all such notices to the City, and shall also maintain all records required by federal,

Page 24 of 44

Parcel 8AB KC FXE 10/08/09

state, City and local laws, rules and regulations and also such records as are reasonably necessary to adequately assess environmental compliance in accordance with applicable laws, rules and regulations.

(d)      As required by law, Lessee shall provide the federal, state, City and local regulatory agencies with notice of spills, releases, leaks or discharges of Materials on the Premises or on the Airport property which exceeds an amount required to be reported to any local, City, state or federal regulatory agency under applicable environmental laws, rules and regulations.  Lessee shall further provide the City with written notice of not less than one (1) business day following commencement of the same, of the curative measures, remediation efforts and monitoring activities to be effected on the Premises.  Lessee shall have a current contingency plan in effect relating to such releases which provide minimum standards and procedures for storage of regulated materials and other Materials, prevention and containment of spills and releases, and transfer and disposal of regulated materials and other Materials.  The contingency plan shall describe design features, response actions, and procedures to be followed in case of releases or other accidents involving hazardous materials, bio-hazardous materials, petroleum products or other Materials.

(e)      The City, upon reasonable written notice to Lessee, shall have the right to inspect all documents relating to the environmental condition of the Premises, including without limitation, the release of Materials at the Premises, or any curative, remediation, or monitoring efforts, and any documents required to be maintained under applicable environmental laws, rules, regulations or any development order issued to the City and pertaining to the Airport pursuant to Chapter 380, Florida Statutes, including but not limited to, manifests evidencing proper transportation and disposal of Materials, environmental site assessments, and sampling and test results.

(f)      Lessee agrees to permit inspection of the Premises by appropriate federal, state, county, City, and local agency personnel in accordance with applicable environmental laws, rules and regulations and as required by any development order issued to the City pertaining to the Airport, pursuant to Chapter 380, Florida Statutes.

(g)      If the City arranges for the removal of any Materials on the Premises that were caused by Lessee, or any of its sublessees or the officers, employees, contractors, subcontractors, invitees, or agents of Lessee or its sublessees, the costs of such removal incurred by the City shall be paid by Lessee to the City within ten (10) calendar days of City's written demand, with interest at the rate of eighteen (18%) percent per annum thereafter accruing.

(h)      Notwithstanding anything else to the contrary in this Paragraph, Lessee shall not be liable for the discharge of any Materials caused by anyone other than the Lessee, or any of its sublessees or the officers, employees, contractors, subcontractors, invitees, or agents of Lessee or any of its sublessees.  Nothing herein shall relieve Lessee of its general duty to cooperate with the City in ascertaining the source and containing, removing, and abating any Materials at the Premises. The City and its employees, contractors, and agents, at times in accordance with applicable laws, rules and regulations, shall have the right to enter the Premises for the purposes of the foregoing activities or conducting such environmental assessments (testing and sampling), inspections, audits as warranted.

(i)      Lessee hereby agrees that upon any assignment of this Lease, and at anytime during the last year of the Term of this Lease, the City shall have the right to require Lessee to conduct a Termination of Lease Assessment and Facility Exit Inspection of the Premises, at Lessee's expense.  If documentation warrants, the City shall have the

Parcel 8AB KC FXE 10/08/09

right to require the Lessee to conduct a further assessment of the Premises at the Lessee's expense, which may include, but shall not be limited to, soil and water samples.

(j)     Should any Termination of Lease Assessment or Facility Exit Inspection of the Premises indicate that further actions must be conducted in order to comply with applicable laws, ordinances, rules or regulations, or any directive of any federal, state or local court or governmental authority, then the City shall have the right to have such further actions conducted at the Lessee's expense. Nothing herein shall be construed to limit City's right of entry onto the Premises pursuant to other provisions of this Paragraph or of this Agreement, or pursuant to its regulatory powers.  Lessee shall have the right to split any soil or water samples obtained by City.

(k)     Lessee shall reimburse to the City the cost of such assessments and inspections within ten (10) calendar days following written demand therefore, with interest at the rate of eighteen (18%) percent per annum thereafter accruing.

(l)     In the event City shall arrange for the removal of Materials on the Premises that are not the responsibility of the Lessee to correct, and if any such clean-up activities by City shall prevent Lessee from using the Premises for the purposes intended, the rent shall be abated in accordance with Paragraph 12, hereof, from the date that the use of the Premises for its intended purposes is precluded and until the Premises again become available for the Lessee's use.  City shall use reasonable efforts to not disrupt Lessee's business; however, in no event shall Lessee be entitled to any amount on account of lost profits, lost rentals, or other claims of damage, resulting of City's clean-up activities.

(m)     The provisions of this Paragraph shall survive the expiration or earlier termination of this Agreement.

(n)     The Premises shall not be used for any improper or immoral purposes or in any manner that constitutes a nuisance, either public or private.

(o)     Lessee shall provide City, if requested by the Airport Manager, with a list of all hazardous, bio-hazardous, or other Materials stored, used, generated or disposed of on the Premises during Lessee's occupation of the Premises under this Lease and under any prior leases throughout the term of the Lease.

(p)     Lessee acknowledges and agrees that the City makes no representations or warranties whatsoever as to whether any pollutant, or hydrocarbon contamination, hazardous materials, or other contaminants or regulated materials (referred to herein collectively as "Materials") exist on or in the Premises or Improvements in violation of any federal, state, City of local law, rules, regulation or in violation of any order or directive of any federal, state or local court or entity with jurisdiction of such matter.  It shall be the responsibility of Lessee to make sufficient inspection of the Premises and the Improvements to satisfy itself as to the presence or absence of any such Materials.

(q)     Lessee shall ensure that any rare, protected, threatened, and/or endangered species as listed by the Federal, State, or local regulatory agencies are protected from harm or removed by obtaining all applicable permits through the proper agencies and shall follow all proper procedures for their removal.

33.     MINIMUM STANDARDS. In addition to the covenants and agreements contained in this Agreement, this Lease is further subject to the provisions of those certain Minimum Standards pertaining to airport tenants as adopted by City of Fort Lauderdale Resolution No. 78-42, as such Minimum Standards are amended from time to time.

Parcel 8AB KC FXE 10/08/09

34. STORMWATER MANAGEMENT PROGRAM. Lessee acknowledges that the City of Fort Lauderdale has adopted a stormwater management program (Article IV of Chapter 28 of the Code of Ordinances of the City of Fort Lauderdale) that imposes a stormwater management utility fee upon every lot and parcel within the City of Fort Lauderdale for services and facilities provided by the stormwater management program. Lessee specifically agrees that any such fee imposed on the Premises shall be paid timely and in whole solely by Lessee.

35.    POLICE POWERS. City cannot, and hereby specifically does not, waive or relinquish any of its regulatory approval or enforcement rights and obligations as it may relate to regulations governing the Premises, any Improvements thereon, or any operations at the Premises. Nothing in this Lease shall be deemed to create an affirmative duty of City to abrogate its sovereign right to exercise its police powers and governmental powers by approving or disapproving or taking any other action in accordance with its zoning and land use codes, administrative codes, ordinances, rules and regulations, federal laws and regulations, state laws and regulations, and grant agreements. In addition, nothing herein shall be considered "zoning by contract."

36. AIRPORT SECURITY PROGRAM.

(a)    Lessee agrees to observe all security requirements and other requirements of the Federal Aviation Regulations and any and all requirements of the Department of Homeland Security and the Transportation Security Administration applicable to Lessee. The Lessee agrees to comply with the Airport Security Program and the Air Operations Area (AOA) Vehicle Access Program, as may be amended from time to time, as approved by the Federal Aviation Administration, and to comply with such other rules and regulations as may be reasonably required by the City, and to take such steps as may be necessary or directed by the City to insure that sublessees, employees, invitees and guests observe these requirements. If required by the Airport Manager, Lessee shall conduct background checks of its employees in accordance with applicable federal regulations. Lessee further agrees to be responsible for the care and maintenance of the Airport Security barriers and devices as a permanent improvement to the Premises. All costs and expenses associated with the cost of the security fence, barriers, access control and monitoring systems, including but not limited to, gates, signs or locks (keying and re-keying), which are installed now or in the future at the Premises shall be borne by the Lessee. If, as a result of the acts or omissions of Lessee, its sublessees, employees, invitees or guests, the City incurs any fines or penalties imposed by the Federal Aviation Administration or any expense in enforcing the regulations of the Federal Aviation Administration, Department of Homeland Security and the Transportation Security Administration or the rules and regulations of the City, and any expense in enforcing the Airport Security Program, then Lessee agrees to pay and reimburse to City all such costs and expenses, including all costs of administrative proceedings, court costs and attorney's fees, and all other costs and expenses incurred by City in enforcing this provision. Lessee agrees that it has the responsibility to prevent unauthorized access to the aircraft Movement Area through its Premises and will take all necessary actions to prevent such unauthorized access through its leasehold. Lessee further agrees to rectify any security deficiency or other deficiency as may be determined as such by the City or the Federal Aviation Administration. In the event Lessee fails to remedy any such deficiency, the City may do so at the cost and expense of Lessee. The City reserves the right to take whatever action is necessary to rectify any security deficiency or other deficiency. The provisions hereof shall survive the expiration or earlier termination of this Lease.

Page 27 of 44

Parcel 8AB KC FXE 10/08/09

(b)     Lessee shall comply with all Federal, State, and Local regulations pertaining to safety and security on the Airport.  Lessee shall be held liable for any vehicles and or pedestrians that gain unauthorized access to the Movement Area through the Premises.  It shall be the responsibility of Lessee to properly secure its property to prevent unauthorized access to the Air Operations Area (AOA) and the Movement Area.  Lessee shall provide wiring, conduits, and space in telecommunications closets as necessary within the Premises for the operation of any security devices that the Airport deems necessary. Lessee shall also be responsible for providing power from an electrical panel with circuit breaker protection, for any security device, including but not limited to, access controls, gates, and cameras.  Energy to operate any security system will be provided by Lessee without cost to the Airport.

37.    MATTERS RESERVED BY THE LESSOR.

(a)     Lessor reserves the right to take any action it considers necessary to protect the aerial approaches of the Airport against obstruction, together with the right to prevent Lessee from erecting or permitting to be erected any building or other structure on the Airport, which, in the opinion of the Lessor would limit the usefulness of the Airport or constitute a hazard to aircraft utilizing the Airport.

(b)     Lessor reserves the authority to ensure that facilities of the Airport are made available to the public on fair and reasonable terms without unjust discrimination.  This Lease shall be subordinate to the authority of the Lessor to establish sufficient control over the operations of Lessee at the Airport to guarantee that patrons will be treated fairly.

(c)     Lessor reserves the right to further develop and improve the Airport, including but not limited to, all landing areas and Taxiways of the Airport, as Lessor sees fit, regardless of the desires or views of Lessee, and without interference or hindrance, subject to Paragraph 14 of this Lease Agreement.

(d)     Except to the extent required for the performance of the obligations of Lessee, nothing contained in this Agreement shall grant to Lessee any rights whatsoever in the airspace above the Premises other than those rights which are subject to Federal Aviation Administration orders, regulations or advisory circulars currently or subsequently effective.  Lessor reserves the right to take any action whatsoever that it considers necessary to protect the aerial approaches of the Airport against obstruction, including but not limited to, the demolition or removal of structures upon the Premises, together with the right to prevent Lessee from erecting or permitting to be erected any building or other structure at the Airport which, in the opinion of the Lessor, would limit the usefulness of or interfere with the operations at the Airport, or constitute a hazard to aircraft.

38. BUILDING REQUIREMENT AND CONCEPTUAL SITE PLAN REVIEW.

(a) The Lessee is required to construct or maintain Improvements on the Premises as summarized in Exhibit "C", attached hereto and incorporated herein by this reference. Lessee may construct additional improvements or modifications at a later date, adhering to the requirements of those codes and regulations then in effect on the Airport.  However, in all cases, construction must be completed within the terms set forth in Paragraph 4 of this Agreement and Exhibit C.

(b)     The conceptual site plan for any and all Improvements to be developed by Lessee on the Premises shall first be reviewed and approved by Lessor's Aviation Advisory Board. Prior to any construction upon the Premises, including any alterations, changes or additions, the Lessee's complete building plans shall be reviewed and approved by

Page 28 of 44

Parcel 8AB KC FXE 10/08/09

Lessor's Airport Manager. All such approvals shall not be unreasonably withheld; provided, however, that any such conceptual site plan approval shall be specifically subject to Lessee showing that adequate on-site stormwater drainage is provided. No approval provided for herein shall be construed as relieving Lessee of any requirement contained in any applicable City, County, State or Federal law or regulation. Lessee shall be responsible at its sole cost and expense, to apply for and secure all necessary local, County, State, and Federal permits for the construction of Improvements on the Premises. This shall include, but not be limited to, applications for re-zoning and vacation of rights-of-way.

(c)     All construction of Improvements shall be performed in such a manner as to provide that the Improvements shall:

(1)     Be structurally sound and safe for human occupancy, and free from any hazards and be constructed in compliance with all applicable codes.

(2)     Provide sufficient clearance for Taxiways, Runways and aprons, and shall not intrude into any aeronautical surfaces or exceed any height limitations and shall not interfere with operations or arriving and departing aircraft at the Airport and shall not conflict with any items of the FAA-approved Airport Layout Plan for the Airport.

(3)     Comply with the provisions of the Deed under which Lessor acquired title to the airport from the United States of America, and the provisions of any grant agreements between the Lessor and the United States Government or the State of Florida that are applicable to the Premises.

(4)     Comply with the terms and provisions of this Lease.

(5)     Lessor reserves the right to require that all development within the Airport is consistent with the overall Airport system architecture and the Airport Master Plan, as well as being consistent with reasonable standards of safety and quality.

(d)     It is understood and agreed that in the course of any construction undertaken by Lessee during the term of this Lease, Lessee shall be responsible for all costs associated with any removal, replacement, relocation and protection of all utilities, whether such utilities are located at the Premises or on adjacent property, including but not limited to water, sewer, telephone, electric, airfield lighting system, and Federal Aviation Administration navigational aid system.

(e)     All Improvements and equipment constructed or installed by Lessee, its agents or contractors, including the plans and specifications relating to the same, shall comply with all applicable state, federal City and local ordinances, statutes, building codes, fire codes, regulations and rules. The approval by Fort Lauderdale Executive Airport staff or officers of any plans, specifications or designs shall not constitute a representation or warranty as to such compliance, and the responsibility therefore shall at all times remain with Lessee.

(f)     All Improvements and equipment constructed, installed, operated or maintained on the Leased Premises shall at all times comply with applicable federal, state or local ordinances, statutes, rules or regulations pertaining to environmental protection and regulation.

Parcel 8AB KC FXE 10/08/09

(g)     Any work impacting any portion of the Airport other than the Premises shall be performed within schedules approved by the Airport Manager.

(h)     Lessee shall coordinate all Improvements to and construction on the Premises with the FAA, including the filing of the required forms and the provision of any documentation the FAA may request or require.

(i)     All Improvements hereafter made to the Premises shall comply with the provisions of the Americans with Disabilities Act of 1990, as the same may be amended from time to time.

(j) Lessee acknowledges the Premises, including the land, belong to the City. Therefore, Lessee shall not dispose of any fill, dirt, and sand at any time, except that such relocation of fill, dirt and sand shall be done in accordance with a plan approved by the Airport Manager.

39.     CONSTRUCTION CONTRACTS BONDS, CONTRACT PROVISIONS.

(a) Lessee agrees that prior to commencing any work or construction on the Premises, the Lessee shall require the contractor building the Improvements to maintain at all times a valid construction bond and a valid labor and material bond, which shall be in an amount not less than the amount covering the full amount of the work performed.  Each bond must guarantee to the City the completion of the work being performed by the contractor as well as full payment of all suppliers, materialmen, laborers or subcontractors employed in completing the improvement.

(b)     Lessee agrees to include the following provisions in any contracts it enters into with contractors in connection with the construction and completion of any Improvements to the Premises:

>(1)     In consideration of the sum of twenty-five ($25.00) Dollars and other good and valuable consideration, the Contractor shall indemnify and hold the City of Fort Lauderdale, its agents, officers and employees harmless from and against or on account of any injuries or damages, received or sustained by any person, persons or entity arising out of or in any way connected with the operations or work to be performed on the subject property, including during any warranty period, by or in consequence of any negligence (excluding sole negligence of City), by use of any improper materials, by any intentional act, by any misconduct or recklessness, or by or on account of any other act or omission of said Contractor or its subcontractors, sub-subcontractors, materialmen, or agents of any tier or tier respective employees.

>(2)     Contractor agrees to indemnify and hold the City of Fort Lauderdale harmless, including during any warranty period, against any claims or liability arising out of or in any way connected with the violation of any state, federal, City or local laws, ordinances, statutes, rules or regulations by Contractor, its subcontractors, agents, servants or employees.  Contractor agrees to indemnify and hold the City of Fort Lauderdale harmless from all such claims and fees, and from any and all suits and actions of every nature and description that may be brought against the City on account of any claims, fees, royalties or costs for any invention or patent, and from any and all suits and actions that may be brought against City including during any warranty

Parcel 8AB KC FXE 10/08/09

period for the infringement of any and all patents or patent rights claimed by any person, firm or corporation.

(3)     Contractor further agrees to indemnify and hold the City of Fort Lauderdale, its agents, officers and employees harmless, from and against or on account of any injuries or damages, received or sustained by any person, persons, or entity arising out of or in any way connected with patent construction defects.

(4)     These indemnifications shall survive the term of this Contract.  In the event that any action or proceeding is brought against the City by reason of any such claim or demand, Contractor, upon written notice from City shall resist and defend such action or proceeding by legal counsel satisfactory to City.

(c)     Lessee agrees to include the following insurance provisions in any contracts it enters into with contractors in connection with the construction and completion of any Improvements to the Premises, and Lessee further agrees to provide City, prior to commencement of any Improvements, certificates of insurance evidencing the contractor's compliance with this Paragraph:

(1)     Without limiting any of the other obligations or liabilities of Contractor, Contractor shall provide, pay for, and maintain in force until all of its work to be performed under this Contract has been completed and accepted (or for such duration as is otherwise specified hereinafter), the insurance coverages set forth herein.  All policies shall be endorsed to provide City with at least thirty (30) days prior written notice of any modification, cancellation, restriction or termination to the policy.

a.     Workers' Compensation Insurance in compliance with the Workers' Compensation Law of the State of Florida and all applicable federal law.

b.     Employers' Liability with policy limits of One Hundred Thousand Dollars ($100,000) per accident.

c.     Comprehensive General Liability with minimum limits of One Million Dollars ($1,000,000.00) per occurrence, combined single limit for Bodily Injury Liability and Property Damage Liability.  The City of Fort Lauderdale shall be named as an additional insured.

d.     Business Automobile Liability with minimum limits of One Million Dollars ($1,000,000.00) per occurrence, combined single limit for Bodily Injury Liability and Property Damage Liability, and which covers owned, leased, hired and other non-owned vehicles.

40.     FUEL FARMS.  Lessee, when expressly permitted by Lessor to engage in fueling, fuel and lubricant storage, aircraft maintenance and repair, aircraft painting and stripping, and any other activity that involves the use and or storage of fuels, oils, solvents, paint, chemicals and other hazardous materials, and shall strictly comply with all Federal, State, and local rules and regulations pertaining thereto.  Lessee, when engaging in fueling

Page 31 of 44

Parcel 8AB KC FXE 10/08/09

operations, must have a written fueling operations plan that addresses proper fueling procedures, training, and safety. The fueling operations plan must also contain a Spill Prevention/Countermeasures and Control Plan that address how the operator will clean up different size fuel spills. The fueling operations plan must be approved by the City Fire Marshall and be on file with the Airport Manager. All fueling facilities and mobile fueling vehicles shall be maintained to the highest safety standards in compliance with all codes and safety standards. These facilities and vehicles shall be subject to routine inspections by the City Fire Marshall. Properly trained personnel of Lessee, using equipment and facilities owned by the Lessee must complete all fueling operations. The Airport does not recognize a CO-OP (an organization formed by several aircraft owners for the purpose of self fueling) as an individual aircraft owner for self-fueling purposes.

41.   <u>RIGHTS OF LESSEE TO MORTGAGE LESSEE'S INTEREST UNDER THIS LEASE AND RIGHTS OF LEASEHOLD MORTGAGEE.</u>

(a) The Lessee shall have the right to mortgage Lessee's interest under this Lease Agreement to RLO Aviation Investments, LLC, a Florida Limited Liability Company, who is specifically approved by Lessor as a Mortgagee of Lessee's interest with all benefits and obligations conferred upon a Mortgagee hereunder, and Lessee shall otherwise have the right to mortgage Lessee's interest under this Lease Agreement to a Federal or State Savings and Loan Association, Bank or Trust Company, Insurance Company, Pension Fund or Trust or similar lending institution authorized to make leasehold mortgage loans in the State of Florida, without obtaining the prior consent of the Lessor, subject, however, to the other terms and conditions of this Lease Agreement.

(b)   If the Lessee shall mortgage its leasehold interest and if the holder of the mortgage or pledge shall forward to the Lessor a duplicate original of the mortgage in form proper for recordation, or a copy of the mortgage certified as a true copy by the Office of Official Records of Broward County, Florida together with a written notice setting forth the name and address of the leasehold mortgagee, then, until the time that the leasehold mortgage shall be satisfied of record, the following provisions of this Paragraph shall apply.

(c)   When giving notice to the Lessee with respect to any default under the provisions of this Lease Agreement, the Lessor will also serve a copy of such notice upon the leasehold mortgagee which copy shall be sent by Lessor by certified mail, return receipt requested, to such mortgagee. No such notice to the Lessee shall be deemed to have been given unless a copy of such notice has been mailed to such leasehold mortgagee, which notice must specify the nature of each such default.

(d)   The leasehold mortgagee, upon mailing by Lessor of the notice referred to in subparagraph (c) of this Paragraph, shall have, in addition to any period of grace extended to the Lessee under the terms and conditions of this Lease Agreement, a period of sixty (60) days within which to cure the default or cause the same to be cured or to commence to cure such default with diligence and continuity; provided, however, that as to any default of the Lessee for failure to pay rent, the leasehold mortgagee shall be given written notice of such default by certified mail by Lessor, and the leasehold mortgagee shall have fifteen (15) additional days from the date the notice of default was mailed within which to cure such default.

(e)   Upon the happening of any default and receipt of notice of default from the Lessor, the Lessee will notify the leasehold mortgagee promptly of such occurrence and shall state in the notice what action has been or will be taken by the Lessee to cure the default.

Parcel 8AB KC FXE 10/08/09

(f)    In case the Lessee shall default under any of the provisions of this Lease Agreement, the leasehold mortgagee shall have the right to cure such default whether the same consists of the failure to pay rent or the failure to perform any other matter or thing which the Lessee is required to do or perform, and the Lessor shall accept such performance on the part of the leasehold mortgagee as though the same had been done or performed by the Lessee.

(g)    In the case of any default by the Lessee, other than in the payment of money under this Lease Agreement, the Lessor, so long as no default in respect of the payment of minimum rental and additional rental shall exist, will take no action to effect a termination of the term of this Lease Agreement by the service of a notice provided for in Paragraph 47 below by reason of any such default, without first giving to the leasehold mortgagee a reasonable time, not to exceed forty-five (45) days from the mailing of notice by Lessor, within which either (i) to obtain possession of the Premises (including possession by a receiver) and cure such default in the case of a default which is susceptible of being cured when the leasehold mortgagee has obtained possession; or (ii) to institute foreclosure proceedings and complete such foreclosure or otherwise acquire the Lessee's interest under this Lease Agreement with diligence and continuity and thereafter to commence and diligently proceed to cure such default; provided, however, that the leasehold mortgagee shall not be required to continue such possession or continue such foreclosure proceedings if the default which would have been the reason for serving such a notice shall be cured, and provided further, that nothing in this Paragraph shall preclude the Lessor from exercising any rights or remedies under this Lease Agreement with respect to any other default by the Lessee during any period of such forbearance.

(h)    In the event of the termination of this Lease Agreement or of any succeeding lease made pursuant to the provisions of this Paragraph prior to its stated expiration date, the Lessor will enter into a new lease of the Premises with the leasehold mortgagee or, at the request of such leasehold mortgagee, to a corporation or other entity approved to conduct business in the State of Florida, formed by or on behalf of such leasehold mortgagee or by or on behalf of the holder of the note secured by the leasehold mortgage held by such leasehold mortgagee, for the remainder of the term, effective on the date of such termination, at the rent and additional rent and upon the covenants, agreements, terms, provisions and limitations contained in this Lease Agreement, provided that such leasehold mortgagee makes written request and executes, acknowledges and delivers to the Lessor such new lease within thirty (30) days from the date of such termination and such written request and such new lease are accompanied by payment to the Lessor of all amounts then due to the Lessor, including reasonable attorneys' fees, court costs and disbursements incurred by the Lessor in connection with any such default and termination as well as in connection with the execution and delivery of such new lease, less the net income collected by the Lessor subsequent to the date of termination of this Lease Agreement and prior to the execution and delivery of the new lease, any excess of such net income over the aforesaid sums and expenses to be applied in payment of the rent thereafter becoming due under such new lease. Any new lease referred to in this Paragraph shall not require any execution, acknowledgment or delivery by the Lessor in order to become effective as against the Lessor and the Lessor shall be deemed to have executed, acknowledged and delivered any such new lease immediately upon receipt by the Lessor of such new lease accompanied by (i) payment to the Lessor of all amounts then due to the Lessor of which the leasehold mortgagee shall theretofore have received written notice; and (ii) an agreement by the leasehold mortgagee to pay all other amounts then due to the Lessor of which the leasehold mortgagee shall not theretofore have received written notice.  In addition, immediately upon receipt by the Lessor of such new lease, as provided in this subparagraph, the Lessor shall be deemed to have executed, acknowledged and delivered to the leasehold mortgagee an assignment of all subleases

Page 33 of 44

covering the Premises which theretofore may have been assigned and transferred to the Lessor and all subleases under which subtenants shall be required to attorn to the Lessor pursuant to the terms and conditions of such subleases or this Lease Agreement. Such assignment by the Lessor shall be deemed to be without recourse as against the Lessor. Within ten (10) days after a written request therefore by the leasehold mortgagee, such assignment or assignments shall be reduced to writing in recordable form and executed, acknowledged and delivered by the Lessor to the leasehold mortgagee.

(i)    The leasehold mortgagee may become the legal owner and holder of this Lease Agreement by foreclosure of its mortgage or as a result of the assignment of this Lease Agreement in lieu of foreclosure, whereupon such leasehold mortgagee shall immediately become and remain liable under this Lease Agreement as provided in subparagraph (j) below, except that such leasehold mortgagee may assign this Lease Agreement without the Lessor's consent to any assignee at any time whether prior or subsequent to the construction or completion of buildings, or other structures and Improvements erected or to be erected upon the Premises, provided that prior notice is given to Lessor in accordance with this Lease.

(j)    In the event that a leasehold mortgagee shall become the owner or holder of the Lessee's interest by foreclosure of its mortgage or by assignment of this Lease Agreement in lieu of foreclosure or otherwise, the term "Lessee," as used in this Lease Agreement, means only the owner or holder of the Lessee's interest for the time being so that, in the event of a sale, assignment or other disposition of the Lessee's interest in this Lease Agreement by the mortgagee, the mortgagee shall be entirely freed and relieved of all covenants and obligations of the Lessee under this Lease Agreement and it shall be deemed and construed, without further agreement between the Lessor and the mortgagee or between the Lessor, the mortgagee and the mortgagee's purchaser or assignee at any such sale or upon assignment of Lessee's interest, that the purchaser or assignee of Lessee's interest has assumed and agreed to carry out any and all covenants and obligations of Lessee.

(k)    Within ten (10) days after written request by Lessee or by Lessee's leasehold mortgagee, or in the event that upon any sale, assignment or mortgaging of Lessee's interest in this Lease Agreement by Lessee or Lessee's leasehold mortgagee, an offset statement shall be required from the Lessor, the Lessor agrees to deliver in recordable form a certificate to any proposed leasehold mortgagee, purchaser, assignee or to Lessee, certifying (if such be the case) (i) the amount of rental and additional rental due under the Lease Agreement, if any, and the date to which rentals have been paid; (ii) that this Lease Agreement is in full force and effect; (iii) that the Lessor has no knowledge of any default under this Lease Agreement, or if any default exists, specifying the nature of the default; and (iv) that there are no defenses or offsets which may be asserted by the Lessor against the Lessee in respect of obligations pursuant to this Lease Agreement.

(l)    Reference in this Lease Agreement to acquisition of the Lessee's interests in this Lease Agreement by the leasehold mortgagee shall be deemed to refer, where circumstances require, to acquisition of the Lessee's interest in this Lease Agreement by any purchaser at a sale on foreclosure of the leasehold mortgage and provisions applicable to the leasehold mortgagee in such instance or instances shall also be applicable to any such purchaser.

(m)    So long as the Lessee's interest in this Lease Agreement shall be mortgaged to a leasehold mortgagee, the parties agree for the benefit of such leasehold mortgagee that the Lessor shall not sell, grant or convey to the Lessee all or any portion of the Lessor's fee simple title to the Premises without the prior written consent of such

Page 34 of 44

Parcel 8AB KC FXE 10/08/09

mortgagee. In the event of any such sale, grant or conveyance by the Lessor to the Lessee, the Lessor and the Lessee agree that no such sale, grant or conveyance shall create a merger of this Lease Agreement into a fee simple title to the Premises. This subparagraph (m) shall not be construed to prevent a sale, grant or conveyance of the Lessor's fee simple title by the Lessor to any person, firm or corporation other than the Lessee, its successors, legal representatives and assigns.

(n)     Reference in this Lease Agreement to a leasehold mortgagee shall be deemed to refer where circumstances require, to any assignee (subject to the provisions of subparagraph (i), above) of a leasehold mortgagee; provided that such assignee shall forward to the Lessor a duplicate original of the assignment of the leasehold mortgage in form proper for record or a copy of such assignment, certified as a true copy by the Office of Official Records of Broward County, together with a written notice setting forth the name and address of the assignee.

(o)     Any leasehold mortgage shall be specifically subject and subordinate to the Lessor's rights under this Lease Agreement. The sentence immediately preceding shall not be deemed or construed (by implication or otherwise) to impose or establish upon the Lessee's interest in this Lease Agreement or upon the lien of any leasehold mortgage the superiority of any lien or encumbrance, including, without limitation, the lien of any fee mortgage, judgment or tax created directly or indirectly by, through or against the Lessor or the Lessor's interest in this Lease Agreement. Despite any provision which is or may appear to be to the contrary in this Lease Agreement, under no circumstances whatsoever shall the fee simple title interest of the Lessor in the Premises, or any portion of them, be subordinated, except for a mortgage on Lessee's leasehold interest.

42.     OTHER REMEDIES.  In addition to the options granted above, the Lessor may exercise any or all other options available to it, which options may be exercised concurrently or separately with the exercise of the above options.

43.     CONDEMNATION.

(a)     In the event of a taking of all of the Premises or so much of them so as to render the Premises unfit for purposes intended by the Lessee for any public or quasi-public purpose, under any statute or by right of eminent domain, the Lessee's liability to pay rental and additional rental or otherwise to perform the terms and conditions of this Lease Agreement shall cease, but the Lessee shall be entitled to any claim against the condemnor that the Lessee may be entitled to because of (i) loss of buildings, other structures and Improvements erected upon the Premises by the Lessee; and (ii) the loss of the then unexpired portion of the fixed term of this Lease Agreement. Lessor shall be entitled to the balance of the condemnation award, if any.

(b)     In the event of a partial taking by condemnation or eminent domain as described in subparagraph (a) above, so that the part not so taken shall be sufficient for the continued operation of the Premises for the purposes intended by the Lessee, then this Lease Agreement shall continue in full force and effect, and the rental shall be reduced in accordance with subparagraph (c) below, and the Lessee shall be entitled to any claim against the condemnor that the Lessee may be entitled to because of the loss of buildings, other structures or Improvements erected upon the Premises by the Lessee. The Lessee shall use the proceeds received by the Lessee pursuant to this subparagraph (b) for purposes of restoring those portions of any buildings, other structures and Improvements upon the remainder of the Premises to as near their former condition as circumstances will permit.

Parcel 8AB KC FXE 10/08/09

(c)     In the event of a partial taking by condemnation or eminent domain, as provided in subparagraph (b) above, the rental payable shall be reduced by that proportion which the square footage of the land so taken bears to the original square footage of the entire Premises.

44.   ASSIGNMENT AND SUBLEASING.

(a)     Except as provided herein, the Lessee shall not assign, sublease, sublet, transfer, convey or pledge this Lease Agreement or any of its obligations, in whole or in part, in any manner whatsoever, to any other natural or corporate Person, or any entity whatsoever, without the express consent of the Lessor, authorized by appropriate municipal action taken at a regular public meeting of the City Commission of the City of Fort Lauderdale; provided, however, that such consent will not be required for any subtenancy in which less than fifty-one percent (51%) of usable floor area of any one building will be subleased by any one subtenant, nor to any sublease of any aircraft hangar space.  Any such consent to an assignment, sublease, transfer, conveyance or pledge by the Lessor shall be subject to all of the terms and provisions of this Lease Agreement, and shall not release the Lessee from its obligations under this Lease Agreement, unless otherwise stated.  The obtaining of any consent shall not affect the rentals payable to Lessor.  Lessor agrees that consent will not be unreasonably withheld. However, Lessor may withhold consent in the event that a default has occurred hereunder, which default remains uncured.

(b)     Should Lessee take any action to assign or sublease this Lease without the prior written consent of the City, then any such assignment or other action shall be null and void and of no force and effect.  In addition to all other legally available remedies, the City shall, upon written notice to Lessee and an opportunity to cure, be entitled to immediately terminate this Agreement.

45.   SUCCESSORS IN INTEREST.  The covenants and agreements contained in this Lease Agreement shall be binding on and inure to the benefit of the respective successors and assigns of the parties. Wherever used, the singular shall include the plural, and the use of any gender shall be applicable to all genders.

46.   AMENDMENTS.

(a)     No modification, amendment, or alteration in the terms and conditions contained herein shall be effective unless contained in a written document prepared and approved with the same formality herewith.

(b)     Should the United States government, or its agencies require changes to this Agreement, including without limitation, any nondiscrimination provisions, as a condition precedent to the granting of funds for the improvement of the Airport, or otherwise, the Lessee agrees to consent to such amendments, modifications, revisions, supplements or deletions of any terms, conditions, or requirements of this Agreement (collectively, an "amendment") as may reasonably be required.  Notwithstanding the foregoing, in the event any such amendment would in Lessee's good faith judgment unreasonably interfere with the business operations of Lessee or its sublessees, then Lessee may refuse to consent to such amendment, provided that Lessee must give immediate notice to the City of any such refusal to consent and such notice must state with specificity the reasons for any such refusal.  City shall have the right to immediately terminate this Agreement upon the failure of Lessee to consent to any such amendment.

47.   NOTICES.  All notices required by law and by this Lease Agreement to be given by one party to the other shall be in writing, and the same shall be served as follows:

Page 36 of 44

Parcel 8AB KC FXE 10/08/09

(a)     By certified mail, return receipt requested, to the following addresses:

LESSOR:          City of Fort Lauderdale
                 c/o City Clerk
                 City Hall
                 100 North Andrews Avenue
                 Fort Lauderdale, Florida 33301


with a copy to:
                 Airport Manager
                 Fort Lauderdale Executive Airport
                 6000 NW 21 Ave
                 Fort Lauderdale, Florida 33309

LESSEE:          KC FXE AVIATION INVESTMENTS, LLC.
                 5901 NW 24th Way
                 Fort Lauderdale, FL 33309


or to such other addresses as the parties may by writing to the other designate. Notice shall be deemed to be delivered as of the date it is received or refused.

(b)     The notice to any leasehold mortgagee, and any other person, as provided in Paragraph 41, above, will only be provided if such mortgagee or person has complied with the provisions of that Paragraph.

48.     NON-EXCLUSIVE RIGHTS. Notwithstanding anything herein contained that may be, or appear to be, to the contrary, it is expressly understood and agreed that the rights granted under this Lease Agreement are non-exclusive and the Lessor reserves the right to grant similar privileges to other Lessees on other parts of the Airport.

49.     SUBROGATION. The Lessor shall have the option, after fifteen (15) days prior written notice to Lessee and without waiving or impairing any of Lessor's rights, to pay any sum or perform any act required of the Lessee, and the amount of any such payment and the value of any such performance, together with interest on them, shall be secured by this Lease, and shall be promptly due and payable to the Lessor.

50.     NON-DISCRIMINATION.

(a)     The Lessee for itself, its heirs, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land, that in the event facilities are constructed, maintained, or otherwise operated on the Premises for a purpose for which a United States Department of Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, the Lessee shall maintain and operate such facilities and services in compliance with all other requirements imposed pursuant to Title 49, Code of Federal Regulations, Part 21, Nondiscrimination in Federally Assisted Programs of the Department of Transportation, as it may be amended from time to time.

(b)     The Lessee for himself, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land, that (1) no person on the grounds of race, color, or national

Page 37 of 44

Parcel 8AB KC FXE 10/08/09

origin shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities; (2) that in the construction of any Improvements on, over, or under the Premises and the furnishing of services thereon, no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination; and (3) that the Lessee shall use the Premises in compliance with all other requirements of Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally assisted programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said regulations may be amended.

(c)     In the event of a breach of any of the above nondiscrimination covenants, Lessor shall have the right to terminate the lease and re-enter and as if said lease had never been made or issued.  The provision shall not be effective until the procedures of Title 49, Code of Federal Regulations, Part 21, are followed and completed, including exercise or expiration of appeal rights.

(d)     The Lessor is granted the right to take such action, anything to the contrary in this Lease Agreement notwithstanding, as the United States may direct to enforce this nondiscrimination covenant.

51.    NON-LIABILITY OF INDIVIDUALS.  No commissioner, officer, agent or employee of the City shall be charged personally or held contractually liable under any term or provision of this Agreement or of any supplement, amendment, or modification to this Agreement or because of any breach thereof, or because of its or their execution or attempted execution.

52.    ALL PRIOR AGREEMENTS SUPERSEDED.  This document incorporates and includes all prior negotiations, correspondence, conversations, agreements or understandings applicable to the matters contained herein and the parties agree that there are no commitments, agreements or understandings concerning the subject matter of this Agreement that are not contained in this document.  Accordingly, it is agreed that no deviation from the terms hereof shall be predicated upon any prior representations or agreement whether oral or written.

It is further agreed that no modification, amendment, or alteration in the terms or conditions contained herein shall be effective unless contained in a written document executed with the same formality and of equal dignity herewith.

53.    FINAL REPOSITORY.  The parties mutually represent and warrant to each other that this Lease Agreement, consisting of Paragraphs 1 through 60, inclusive, and Exhibit "A, B, and C" constitute the final Lease Agreement of the parties on its subject matter and may not be changed, modified, discharged or extended except by written instrument duly executed by the parties.  The parties agree that no previous representations or warranties shall be binding upon either party nor has the execution of this Lease been induced on the part of any party except as expressed in writing in this Agreement.

Parcel 8AB KC FXE 10/08/09

54.    SEVERABILITY.   If any section, subsection, sentence, clause, provision, or part of this Agreement shall be held invalid for any reason, the remainder of this Agreement and the provisions thereof shall continue to be effective.

55.    THIRD PARTY BENEFICIARIES.   Neither Lessee nor Lessor intends to directly or substantially benefit a third party by this Agreement.   Therefore, the parties agree that there are no third party beneficiaries to this Agreement and that no third party shall be entitled to assert a claim against either of them based upon this Agreement.

56.    JOINT PREPARATION.   This Agreement shall not, solely as a matter of judicial construction, be construed more severely against one of the parties than the other. The parties hereto acknowledge that they have thoroughly read this Agreement, including all exhibits thereto, and have sought and received whatever competent advice and counsel that was necessary for them to form a full and complete understanding of all rights and obligations herein.

57.    RADON GAS.   Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities may present health risks to persons who are exposed to it over time.   Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.   Additional information regarding radon and radon testing may be obtained from your county public health unit.

58.    AUTHORITY OF INDIVIDUALS.   The individuals executing this agreement on behalf of Lessee personally warrant that they have the full authority to execute this Agreement on behalf of Lessee for whom they are acting herein.

59.    INTERPRETATION.   The language of this Agreement has been agreed to by both parties to express their mutual intent and no rule of strict construction shall be applied against either party hereto.   The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.   All personal pronouns used in this Agreement shall include the other gender, and the singular shall include the plural, and vice versa, unless the context otherwise requires.   Terms such as "herein," "hereof," "hereunder," and "hereinafter" refer to this Agreement as a whole and not to any particular sentence, paragraph, or section where they appear, unless the context otherwise requires.

60.    INCORPORATION OF RECITALS.   The parties acknowledge and agree the recitals first set forth in this Agreement are true and correct and the same are incorporated herein as if fully set forth at length and form the basis for the terms and conditions as stated above.

Page 39 of 44

Parcel 8AB KC FXE 10/08/09

IN WITNESS OF THE FOREGOING, the parties have set their hands and seals the day and year first written above.

<u>LESSOR</u>

WITNESSES:

CITY OF FORT LAUDERDALE

By _____
JOHN P. "JACK" SEILER, Mayor

_____
Print Name

By _____
GEORGE GRETSAS, City Manager

_____
Print Name

(CORPORATE SEAL)

ATTEST:

_____
JONDA K. JOSEPH, City Clerk

Approved as to form:

_____
VICTORIA F. MINARD
Assistant City Attorney

L:\VFM\Drafts\P 8A-B draft A&R 09-04.doc

Page 40 of 44

Parcel 8AB KC FXE 10/08/09

ATTEST:

_____

JONDA K. JOSEPH, City Clerk

Approved as to form:

_____

VICTORIA F. MINARD

Assistant City Attorney

LESSEE

WITNESSES:    KC FXE
AVIATION INVESTMENTS, LLC,
a Florida limited liability
company.



By _____

Kenneth Fick  Managing Member

_____

Nicole DeAngelo

[Witness print name]

_____

Michele Pickett

[Witness print name]

STATE OF FLORIDA:

COUNTY OF BROWARD:

The foregoing instrument was acknowledged before me this _9_ day of
_October_, 2009 by KENNETH FICK as Managing Member of KC
FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company, on
behalf of the Company. ☑ Who is personally known to me or ☐ has produced
_____ as identification.

(SEAL) _Linda C. McClung_ Signature
Notary Public, State of Florida taking Acknowledgment

LINDA C. MCCLUNG
MY COMMISSION # DD818412
EXPIRES: October 12, 2012
1-800-3-NOTARY FL Notary Discount Assoc. Co.

_Linda C. McClung_

Printed Name of Notary Typed,

My Commission Expires: _October 12, 2012_

_DD818412_ Commi

ssion Number

# EXHIBIT A
# LEGAL DESCRIPTION AND MAILING ADDRESS



LEGAL DESCRIPTION:

FORT LAUDERDALE EXECUTIVE AIRPORT
PARCEL 8AB   5900 NW 24 Way

A PARCEL OF LAND BEING A PORTION OF TRACT 1, "F-X-E PLAT", ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 119, PAGE 4 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, LYING IN THE FORT LAUDERDALE EXECUTIVE AIRPORT IN THE CITY OF FORT LAUDERDALE, BROWARD COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE NORTHEAST CORNER OF SAID NORTHWEST ONE-QUARTER (N.W. 1/4) OF THE SOUTHWEST ONE-QUARTER (S.W. 1/4) OF SAID SECTION 8;

THENCE S.02°03'24"E. ALONG THE EAST LINE OF THE NORTHWEST ONE-QUARTER (N.W. 1/4) OF THE SOUTHWEST ONE-QUARTER (S.W. 1/4) OF SAID SECTION 8, A DISTANCE OF 55.00 FEET TO THE MOST NORTHERLY NORTHWEST CORNER OF SAID TRACT 1, "F-X-E PLAT";

THENCE CONTINUE S.02°03'24"E. ALONG SAID EAST LINE OF THE NORTHWEST ONE-QUARTER N.W. (1/4) OF THE SOUTHWEST ONE-QUARTER (S.W. 1/4) OF SECTION 8 AND ALSO ALONG A WEST BOUNDARY LINE OF SAID TRACT 1, "F-X-E PLAT", A DISTANCE OF 538.56 FEET;

THENCE N.83°25'49"E., A DISTANCE OF 953.21 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUE N.83°25'49"E., A DISTANCE OF 383.30 FEET;

THENCE S.06°34'11"E., A DISTANCE OF 40.00 FEET TO A POINT HEREINAFTER TO BE KNOWN AS POINT "A";

THENCE N.83°25'49"E., A DISTANCE OF 345.00 FEET;

THENCE S.06°34'11"E., A DISTANCE OF 498.31 FEET TO A POINT ON A LINE 750.00 FEET NORTH OF AND PARALLEL WITH THE CENTERLINE OF RUNWAY 8-26 OF SAID EXECUTIVE AIRPORT;

THENCE S.83°25'49"W ALONG SAID PARALLEL LINE, A DISTANCE OF 728.30 FEET;

THENCE N.06°34'11"W., A DISTANCE OF 538.31 FEET TO THE POINT OF BEGINNING;

CONTAINING 8.683 ACRES (378,251 SQUARE FEET) MORE OR LESS.

RESERVING, HOWEVER, THE SOUTHERLY 5.00 FEET AND THE WESTERLY 30.00 FEET OF THE EASTERLY 280.00 FEET OF THE ABOVE DESCRIBED PARCEL AS A UTILITIES EASEMENT, AND;

RESTRICTING BUILDING HEIGHTS TO AVOID OBSTRUCTIONS TO AIRSPACE AS REQUIRED BY CFR 14, SUBCHAPTER "E" (AIRSPACE), PART 77; AND,

FURTHER RESTRICTING THE LOCATIONS OF BUILDINGS AND OTHER FIXED ABOVEGROUND OBJECTS TO THAT AREA LYING NORTH OF A LINE THAT IS PARALLEL WITH AND 750.00 FEET NORTHERLY (AS MEASURED AT RIGHT ANGLES) FROM THE WESTERLY PROJECTION OF THE CENTERLINE OF RUNWAY 8-26 OF SAID EXECUTIVE AIRPORT, AND;

GRANTING NON-EXCLUSIVE EASEMENT FOR INGRESS/EGRESS BETWEEN THE ABOVE DESCRIBED PARCEL AND NORTHWEST 62nd STREET ACROSS A 40.00 FEET WIDE STRIP OF LAND LOCATED AT THE CITY OF FORT LAUDERDALE'S DISCRETION WITHIN A STRIP OF LAND 150.00 FEET IN WIDTH, BEING 75.00 FEET ON BOTH SIDES OF A CENTERLINE LOCATED AND DESCRIBED AS FOLLOWS:

COMMENCE AT THE ABOVE DESCRIBED POINT 'A'; THENCE N.83°25'49"E., A DISTANCE OF 75.00 FEET TO THE POINT OF BEGINNING; THENCE N.06°34'11"W., A DISTANCE OF 40.00 FEET TO A POINT OF CURVATURE OF A TANGENT CURVE CONCAVE TO THE EAST; THENCE NORTHERLY AND NORTHEASTERLY ALONG THE ARC OF SAID CURVE, TO THE RIGHT, HAVING A CENTRAL ANGLE OF 34°18'51" AND RADIUS OF 323.91 FEET FOR AN ARC DISTANCE OF 193.99 FEET TO A POINT OF REVERSE CURVATURE OF A TANGENT CURVE CONCAVE TO THE WEST; THENCE NORTHEASTERLY AND NORTHERLY ALONG THE ARC OF SAID CURVE, TO THE LEFT, HAVING A CENTRAL ANGLE OF 29°32'38" AND RADIUS OF 379.24 FEET FOR AN ARC DISTANCE OF 195.55 FEET TO A POINT OF TANGENCY; THENCE N.01°47'58"W., ALONG A LINE TANGENT TO THE LAST DESCRIBED CURVE A DISTANCE OF 45.11 FEET TO A POINT ON THE NORTH BOUNDARY LINE OF SAID TRACT 1, "F-X-E-PLAT"; THE SIDELINES OF SAID EASEMENT TO BE SHORTENED OR LENGHETENED TO MEET AT ANGLE POINTS.



## EXHIBIT B

## IMPROVEMENTS CONSTRUCTED PRIOR TO COMMENCEMENT DATE

One (1) Building / Hangar at 9,280 square feet, improved*

One (1) Building / Hangar at 8,640 square feet, improved*

One (1) Building / Hangar at 11,600 square feet, improved*

One (1) Building / Restaurant at 15,701 square feet, improved*

One (1) Building / Restaurant Open Bar @ 754 square feet, improved*

One (1) Building / Restaurant Storage @ 488 square feet, improved*

One (1) Building / Restaurant Storage @ 170 square feet*

*As more fully described on the Building Detail Report attached.



EXHIBIT 'B'

EXECUTIVE AIRPORT

09/10/2007
DB01X

**CITY OF FORT LAUDERDALE**
**Building Detail Report**

As of:  07/31/2007
Page: 32

| | | |
|---|---|---|
| Entity: | FXE | FORT LAUDERDALE EXECUTIVE AIRPORT |
| Site: | 10 | SPECIALTY RESTAURANTS CORP./AOG - PARCEL 8AB |
| Building: | 01 | HANGAR |
| | | 5915 NW 24TH WAY |
| | | FORT LAUDERDALE, FL 33309 |
| Department: | 2007 | APPRAISAL 2007 |

| | | | | |
|---|---|---|---|---|
| Year Built: | 1975 | Year Acquired: | 1975 |
| Nbr. of Stories: | 1 | Square Footage: | 9,280 |
| Basement: | NO | Adds/Renovations: | NO |
| Occupancy: | GAH | AIRCRAFT HANGAR | |
| Frame Type: | PES | PRE-ENGINEERED STEEL | |
| ISO Class: | 3 | NON COMBUSTIBLE | |
| GPS Latitude: | | | |
| GPS Longitude: | | | |
| Flood Zone: | | | |
| Fire Protection: | | NONE | |



**GENERAL BUILDING CHARACTERISTICS**

| | |
|---|---|
| Exterior Walls: | METAL SIDING ON GIRTS, |
| Roofing: | METAL, |
| Foundation: | CONCRETE SLAB ON GROUND, CONCRETE FOOTING FOUNDATION |
| Floor Finish: | SEALER, |
| Ceiling Finish: | ACOUSTICAL, NONE |
| Partitions: | DRYWALL/STUDS, |

Services:                                      Features:
ELECTRICAL
PLUMBING
HEATING - FORCED WARM AIR - OFFICE
AIR CONDITIONING - FORCED AIR - OFFICE

Notes:

**VALUATION CONCLUSIONS**

| | |
|---|---|
| Replacement Cost New: | 406,500 |
| Exclusion Amount: | 12,210 |
| Replacement Cost Less Exclusions: | 394,290 |

Produced by **MAXIMUS**

Exhibit B Page 2

09/10/2007
DB01X

**CITY OF FORT LAUDERDALE**
**Building Detail Report**

As of:   07/31/2007
Page  33

| Entity: | FXE | FORT LAUDERDALE EXECUTIVE AIRPORT |
|---|---|---|
| Site: | 10 | SPECIALTY RESTAURANTS CORP./AOG - PARCEL 8AB |
| Building: | 02 | HANGAR |
| | | 5925 NW 24TH WAY |
| | | FORT LAUDERDALE, FL 33309 |

| | | | |
|---|---|---|---|
| Department: | 2007 | APPRAISAL 2007 | |
| Year Built: | 1975 | Year Acquired: | 1975 |
| Nbr. of Stories: | 1 | Square Footage: | 8,640 |
| Basement: | NO | Adds/Renovations: | NO |
| Occupancy: | GAH | AIRCRAFT HANGAR | |
| Frame Type: | PES | PRE-ENGINEERED STEEL | |
| ISO Class: | 3 | NON COMBUSTIBLE | |
| GPS Latitude: | | | |
| GPS Longitude: | | | |
| Flood Zone: | | | |
| Fire Protection: | | NONE | |



### GENERAL BUILDING CHARACTERISTICS

| | |
|---|---|
| Exterior Walls: | METAL SIDING ON GIRTS, |
| Roofing: | METAL, |
| Foundation: | CONCRETE SLAB ON GROUND. CONCRETE FOOTING FOUNDATION |
| Floor Finish: | SEALER, |
| Ceiling Finish: | ACOUSTICAL, NONE |
| Partitions: | DRYWALL/STUDS, |

Services:                                                     Features:
ELECTRICAL
PLUMBING
HEATING - FORCED WARM AIR - OFFICE
AIR CONDITIONING - FORCED AIR - OFFICE

Notes:

### VALUATION CONCLUSIONS

| | |
|---|---|
| Replacement Cost New: | 378,400 |
| Exclusion Amount: | 11,330 |
| Replacement Cost Less Exclusions: | 367,070 |

Produced by **MAXIMUS**

Exhibit B Page 3

09/10/2007
DB01X

**CITY OF FORT LAUDERDALE**
**Building Detail Report**

As of:   07/31/2007
Page:  34

| | | | |
|---|---|---|---|
| Entity: | FXE | FORT LAUDERDALE EXECUTIVE AIRPORT | |
| Site: | 10 | SPECIALTY RESTAURANTS CORP./AOG - PARCEL 8AB | |
| Building: | 03 | HANGAR | |
| | | 5901 NW 24TH WAY | |
| | | FORT LAUDERDALE, FL 33309 | |
| Department: | 2007 | APPRAISAL 2007 | |
| Year Built: | 1975 | Year Acquired: | 1975 |
| Nbr. of Stories: | 1 | Square Footage: | 11,600 |
| Basement: | NO | Adds/Renovations: | NO |
| Occupancy: | GAH | AIRCRAFT HANGAR | |
| Frame Type: | PES | PRE-ENGINEERED STEEL | |
| ISO Class: | 3 | NON COMBUSTIBLE | |
| GPS Latitude: | | | |
| GPS Longitude: | | | |
| Flood Zone: | | | |
| Fire Protection: | | NONE | |



### GENERAL BUILDING CHARACTERISTICS

| | |
|---|---|
| Exterior Walls: | METAL SIDING ON GIRTS, |
| Roofing: | METAL, |
| Foundation: | CONCRETE SLAB ON GROUND, CONCRETE FOOTING FOUNDATION |
| Floor Finish: | SEALER, |
| Ceiling Finish: | ACOUSTICAL, NONE |
| Partitions: | DRYWALL/STUDS, |

Services:                                                   Features:

ELECTRICAL
PLUMBING
HEATING - FORCED WARM AIR - OFFICE
AIR CONDITIONING - FORCED AIR - OFFICE

Notes:

### VALUATION CONCLUSIONS

| | |
|---|---|
| Replacement Cost New: | 508,000 |
| Exclusion Amount: | 15,290 |
| Replacement Cost Less Exclusions: | 492,710 |

Produced by **MAXIMUS**

**Exhibit B Page 4**

09/10/2007
DB01X

**CITY OF FORT LAUDERDALE**
**Building Detail Report**

As of:  07/31/2007
Page: 35

| | | |
|---|---|---|
| Entity: | FXE | FORT LAUDERDALE EXECUTIVE AIRPORT |
| Site: | 10 | SPECIALTY RESTAURANTS CORP./AOG - PARCEL 8AB |
| Building: | 04 | RESTAURANT |
| | | NW 24TH WAY |
| | | FORT LAUDERDALE, FL 33309 |



| | | | | |
|---|---|---|---|---|
| Department: | 2007 | APPRAISAL 2007 | | |
| Year Built: | 1990 | Year Acquired: | 1990 | |
| Nbr. of Stories: | 2 | Square Footage: | 15,701 | |
| Basement: | NO | Adds/Renovations: | NO | |
| Occupancy: | SCFH | RESTAURANT | | |
| Frame Type: | WD | WOOD | | |
| ISO Class: | 1 | FRAME/COMBUSTIBLE | | |
| GPS Latitude: | | | | |
| GPS Longitude: | | | | |
| Flood Zone: | | | | |
| Fire Protection: | | SPRINKLER SYSTEM | | |

## GENERAL BUILDING CHARACTERISTICS

| | |
|---|---|
| Exterior Walls: | STUCCO ON STUDS, |
| Roofing: | ASPHALT SHINGLES, |
| Foundation: | CONCRETE SLAB ON GROUND, CONCRETE FOOTING FOUNDATION |
| Floor Finish: | CARPETING, |
| Ceiling Finish: | PLASTER, |
| Partitions: | PLASTER/STUDS, |

Services:                                              Features:
ELECTRICAL
PLUMBING
HEATING - FORCED WARM AIR
AIR CONDITIONING - CENTRAL

Notes:

## VALUATION CONCLUSIONS

| | |
|---|---|
| Replacement Cost New: | 3,085,300 |
| Exclusion Amount: | 182,930 |
| Replacement Cost Less Exclusions: | 2,902,370 |

Produced by **MAXIMUS**

Exhibit B Page 5

09/10/2007  
DB01X

**CITY OF FORT LAUDERDALE**  
**Building Detail Report**

As of: 07/31/2007  
Page: 36

| | | |
|---|---|---|
| **Entity:** | FXE | FORT LAUDERDALE EXECUTIVE AIRPORT |
| **Site:** | 10 | SPECIALTY RESTAURANTS CORP./AOG - PARCEL 8AB |
| **Building:** | 05 | RESTAURANT-OPEN BAR |
| | | NW 24TH WAY |
| | | FORT LAUDERDALE, FL 33309 |



| | | | |
|---|---|---|---|
| **Department:** | 2007 | APPRAISAL 2007 | |
| **Year Built:** | 1990 | Year Acquired: | 1990 |
| **Nbr. of Stories:** | 1 | Square Footage: | 754 |
| **Basement:** | NO | Adds/Renovations: | NO |
| **Occupancy:** | GPPS | OPEN BAR | |
| **Frame Type:** | WD | WOOD | |
| **ISO Class:** | 1 | FRAME/COMBUSTIBLE | |
| **GPS Latitude:** | | | |
| **GPS Longitude:** | | | |
| **Flood Zone:** | | | |
| **Fire Protection:** | | NONE | |

## GENERAL BUILDING CHARACTERISTICS

| | |
|---|---|
| **Exterior Walls:** | STUCCO ON STUDS, NONE |
| **Roofing:** | ASPHALT SHINGLES, |
| **Foundation:** | CONCRETE SLAB ON GROUND, CONCRETE FOOTING FOUNDATION |
| **Floor Finish:** | BRICK, |
| **Ceiling Finish:** | NONE, |
| **Partitions:** | NONE, |

**Services:**                     **Features:**  
ELECTRICAL  
PLUMBING

Notes:

## VALUATION CONCLUSIONS

| | |
|---|---|
| **Replacement Cost New:** | 107,000 |
| **Exclusion Amount:** | 4,750 |
| **Replacement Cost Less Exclusions:** | 102,250 |

**Produced by MAXIMUS**

Exhibit B Page 6

| 09/10/2007 | | CITY OF FORT LAUDERDALE | As of: 07/31/2007 |
| DB01X | | Building Detail Report | Page: 37 |

| | | | | |
|---|---|---|---|---|
| Entity: | FXE | FORT LAUDERDALE EXECUTIVE AIRPORT | | |
| Site: | 10 | SPECIALTY RESTAURANTS CORP./AOG - PARCEL 8AB | | |
| Building: | 06 | RESTAURANT - STORAGE BUILDING 1 | | |
| | | NW 24TH WAY | | |
| | | FORT LAUDERDALE, FL 33309 | | |
| Department: | 2007 | APPRAISAL 2007 | | |
| Year Built: | 1990 | Year Acquired: | 1990 | |
| Nbr. of Stories: | 1 | Square Footage: | 488 | |
| Basement: | NO | Adds/Renovations: | NO | |
| Occupancy: | SBL | STORAGE | | |
| Frame Type: | JM | JOISTED MASONRY | | |
| ISO Class: | 2 | JOISTED MASONRY | | |
| GPS Latitude: | | | | |
| GPS Longitude: | | | | |
| Flood Zone: | | | | |
| Fire Protection: | | NONE | | |



### GENERAL BUILDING CHARACTERISTICS

| | |
|---|---|
| Exterior Walls: | STUCCO ON MASONRY, CONCRETE BLOCK |
| Roofing: | BUILT-UP TAR, |
| Foundation: | CONCRETE SLAB ON GROUND, CONCRETE FOOTING FOUNDATION |
| Floor Finish: | SEALER, |
| Ceiling Finish: | NONE, |
| Partitions: | NONE, |

Services:                                    Features:

ELECTRICAL
PLUMBING

Notes:

### VALUATION CONCLUSIONS

| | |
|---|---|
| Replacement Cost New: | 11,600 |
| Exclusion Amount: | 620 |
| Replacement Cost Less Exclusions: | 10,980 |

Produced by MAXIMUS

Exhibit B Page 7

| 09/10/2007 | | CITY OF FORT LAUDERDALE | As of: 07/31/2007 |
|---|---|---|---|
| DB01X | | Building Detail Report | Page: 38 |

| | | | |
|---|---|---|---|
| Entity: | FXE | FORT LAUDERDALE EXECUTIVE AIRPORT | |
| Site: | 10 | SPECIALTY RESTAURANTS CORP./AOG - PARCEL 8AB | |
| Building: | 07 | RESTAURANT - STORAGE BUILDING 2 | |
| | | NW 24TH WAY | |
| | | FORT LAUDERDALE, FL 33309 | |
| Department: | 2007 | APPRAISAL 2007 | |



| | | | |
|---|---|---|---|
| Year Built: | 1990 | Year Acquired: | 1990 |
| Nbr. of Stories: | 1 | Square Footage: | 170 |
| Basement: | NO | Adds/Renovations: | NO |
| Occupancy: | SWF | STORAGE | |
| Frame Type: | WD | WOOD | |
| ISO Class: | 1 | FRAME/COMBUSTIBLE | |
| GPS Latitude: | | | |
| GPS Longitude: | | | |
| Flood Zone: | | | |
| Fire Protection: | | NONE | |

## GENERAL BUILDING CHARACTERISTICS

| | |
|---|---|
| Exterior Walls: | STUCCO ON STUDS, |
| Roofing: | ASPHALT SHINGLES, |
| Foundation: | CONCRETE SLAB ON GROUND, |
| Floor Finish: | SEALER, |
| Ceiling Finish: | NONE, |
| Partitions: | NONE, |

Services:                                           Features:

NOT APPLICABLE

Notes:

## VALUATION CONCLUSIONS

| | |
|---|---|
| Replacement Cost New: | 2,200 |
| Exclusion Amount: | 90 |
| Replacement Cost Less Exclusions: | 2,110 |

Produced by **MAXIMUS**

Exhibit B Page 8

## EXHIBIT C

## IMPROVEMENTS TO BE CONSTRUCTED
## OR MAINTAINED AT THE PREMISES

Phase I will consist of the demolition of the four (4) restaurant facilities.

Phase II of the proposed project will consist of construction of a new aircraft hangar and offices totaling approximately 21,577 square feet roadway access improvements, automobile parking, and site improvements.   Phase II will be completed within 36 months of the commencement date and requires a minimum investment of $1,800,000.

Phase III of the project will consist of construction of two hangars totaling approximately 39,300 feet and a 10,000 two-story office building.   This Phase will total a minimum of $3,000,000 and will be completed within ten years of the commencement date of the lease.



Exhibit C Page 2

# FIRST AMENDMENT TO AMENDED AND RESTATED LEASE AGREEMENT
## (PARCEL 8AB)

THIS IS A FIRST AMENDMENT TO LEASE AGREEMENT, entered into on _____June 19_____, 2012, between:

THE CITY OF FORT LAUDERDALE, a municipal corporation of Florida, referred to as "Lessor",

and

KC FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company, referred to as "Lessee".

WHEREAS, pursuant to Resolution No. _12-115_, adopted at its meeting of _____June 19_____, 2012, the City Commission of City authorized the proper City officials to enter into this First Amendment to Amended and Restated Lease Agreement for Parcel 8AB at Fort Lauderdale Executive Airport ("First Amendment"); and

WHEREAS, Lessee leases certain property from Lessor known as Parcel 8AB at Fort Lauderdale Executive Airport, under an Amended and Restated Lease Agreement dated October 20, 2009 ("Lease Agreement"); and

WHEREAS, as provided in Lease Agreement, Lessee is required to redevelop Parcel 8AB in three phases totaling $5,000,000.00; and

WHEAREAS, Phase I involved the demolition and clearing of the old restaurant located on the property within 12 months of the commencement date of the Lease Agreement, which phase was completed on schedule; and

WHEREAS, Phase II consists of construction of 21,577 square feet new aircraft hangar and office, roadway access, automobile parking, and site improvements, Phase II is to be completed within 36 months of the commencement date (November 2012) and requires a minimum investment of $1,800,000.00; and

WHEREAS, Phase III will consist of construction of two hangars totaling approximately 39,300 square feet and a 10,000 square foot, two-story office building, this Phase will total a minimum of $3,000,000.00 and will be completed within ten years of the commencement date of the lease; and

WHEREAS, in light of the economic situation suffered by the aviation industry, KC FXE will not be able to complete Phase II by the established timeframe; and

WHEREAS, Lessee is requesting an additional 24 months to complete the construction, extending the date of completion to November 1, 2014; and

Page 1 of 6

WHEREAS, on consideration for the additional time, KC FXE has offered to increase the current rent by five percent, effective on the date of the amendment, increasing the rent to $145,818.66;

WHEREAS, the Lessor declares that amending the Lease Agreement is in the best interest of the City.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Lease, and other good and valuable consideration, the receipt and adequacy of which are acknowledged, Lessor and Lessee agree as follows:

1.    The above recitals are true and correct and are incorporated herein.

2.    Paragraph 4, TERM, of the Lease Agreement is amended to delete the stricken text and to add the underlined text as follows:

4.    TERM.  The parties acknowledge and agree that the Term of this Lease Agreement shall commence on November 1, 2009 ("Commencement Date"), and shall terminate thirty (30) years thereafter, unless sooner terminated as provided in this Lease.   The Term of this Agreement will expire twelve (12) months from its Commencement Date if Lessee fails to provide City with evidence that it has expended funds for the renovation or improvement of the Premises equal to the minimum investment of Two Hundred Thousand ($200,000.00) Dollars.  Thereafter, the Term of this Agreement will expire ~~thirty-six (36)~~ sixty (60) months from the Commencement Date if Lessee fails to provide City with evidence that Lessee has constructed a minimum of 21,577 square feet new aircraft hangar, office, roadway access, automobile parking, and site improvements on the Premises totaling approximately One Million Eight Hundred Thousand ($1,800,000.00) Dollars, and thereafter the Term of this Agreement shall expire one hundred (120) months from the Commencement Date if Lessee fails to provide City with evidence that Lessee has constructed a minimum of two hangars totaling approximately 39,300 square feet and a 10,000 square foot, two-story office building on the Premises totaling approximately Three Million ($3,000,000.00) Dollars.

3.    Paragraph 8, RENT, of the Lease Agreement is amended to delete the stricken text and to add the underlined text as follows:

8.    RENT.

Rent shall commence on the Commencement Date of the Lease Agreement (November 1, 2009). All rental payments shall be paid in advance in equal monthly installments of Ten Thousand Four Hundred One and 90/100 Dollars ($10,401.90), plus applicable taxes, on the first day of each month to which applicable according to the following schedule:

(a)    One Hundred Twenty Four Thousand Eight Hundred Twenty Two and 83/100 Dollars ($124,822.83) is the basic annual rental for the first year of this Lease Agreement, referred to as the "Base Rent."

(b)    It is agreed between Lessor and Lessee that the Base Rent specified

Above shall be subject to an increase at annual intervals, such increase to be calculated in accordance with the following terms and conditions:

(1)     Lessor and Lessee agree that the Base Rent for the remainder of the term of this Lease Agreement shall be adjusted, at one (1) year intervals, the first adjustment to become effective as of November 1, 2010, which is the date of commencement of the second year of the Lease term, and with further adjustments to occur at each one (1) year interval thereafter (the "Adjustment Date").   Such adjustments shall be based upon the Cost of Living Index known as the Consumer Price Index (All Items, 1982-84 = 100), United States, All Urban Consumers, published by the Bureau of Labor Statistics of the United States Department of Labor. For computation purpose, the Numerator and Denominator are defined as follows:

Numerator - The Consumer Price Index for the third (3rd) month preceding each Lease Adjustment Date.

Denominator - The Consumer Price Index for the third (3rd) month preceding the Commencement Date of the lease term.

The resulting fraction shall be applied to the minimum guaranteed annual rental (Base Rent) for the first lease year to arrive at the new annual rental.   Should the Bureau mentioned above discontinue the publication of an Index approximating the Index contemplated above, then such Index as may be published by another United States governmental agency which most nearly approximates the Index referred to above shall govern and be substituted as the Index to be used, subject to the application of an appropriate conversion factor to be furnished by the governmental agency publishing such Index.

(2)     Base Rent shall be further adjusted on the 10th and 20th anniversary of the Commencement Date of the Lease Agreement to reflect either ten percent (10%) of the appraised value of the land or the current new annual rental established at the time of the adjustment, whichever is greater.

(3)     <u>It is agreed between Lessor and Lessee that the Base Rent specified above shall be adjusted commencing on the first day of the first month following the date of the First Amendment to Lease Agreement to One Hundred Forty Five Thousand Eight Hundred Eighteen Dollars and Sixty Six Cents ($145,818.66).</u>

<u>(4)</u>     At no time shall the adjusted rent be less than the Base Rent specified above.

(c)     In addition to the above sums, the Lessee shall cause to be paid to the Lessor the sums provided in Paragraph 13 pertaining to the delivery to the Premises of any octane-rated fuels, jet fuels and lubricating oils (referred to as "Fuel" and "Oil") by Lessee, its sublessees, agents or independent contractors.  The sums mentioned below shall not be considered as rent for the Premises, but shall be collected in the same manner as rent, including interest as provided in this Lease Agreement, accruing upon any late payments of such sums.

(d)     Late Payment.  The Lessor shall be entitled to collect interest at the rate of eighteen (18%) percent per annum from the date due until the date paid on any amounts that are past due beyond any applicable cure period.  Lessor's right to require payment of such interest and the obligation of the Lessee to pay the same shall be in addition to and not in lieu of the right of Lessor to enforce other provisions in this Lease, including termination of the Lease Agreement, and to pursue other remedies as provided by law.

(e)     Dishonored Checks.  In the event Lessee delivers a dishonored check or draft to Lessor in payment of any obligation arising under this Lease Agreement, the Lessee shall incur and pay any charges assessed to City as a result of the dishonored check or draft.  In the event Lessee delivers a dishonored check or draft, the Airport Manager may require that future payments be made by cashier's check or other acceptable means by making such demand in writing to Lessee.

(f)     Place of Payment.  All payments required to be made by Lessee under this Lease Agreement shall be made payable to the "City of Fort Lauderdale," and shall be delivered or mailed to the address below, or to an address as may be substituted therefore by the Lessor:

> City of Fort Lauderdale
> Attn:  Department of the Treasury
> 100 North Andrews Avenue
> Fort Lauderdale, Florida 33301

5.     In all other respects the Amended and Restated Lease Agreement is unchanged and remains in full force and effect in accordance with the terms thereof.

[This Space Intentionally Left Blank]
[Signature Pages Follow]

Page 4 of 6

IN WITNESS OF THE FOREGOING, the parties have set their hands and seals the day and year first written above.

LESSOR

WITNESSES:

Print Name

Print Name

(CORPORATE SEAL)

CITY OF FORT LAUDERDALE, a municipal corporation of the state of Florida

By_____
JOHN P. "JACK" SEILER, Mayor

By_____
LEE R. FELDMAN, City Manager

ATTEST:

JONDA K. JOSEPH, City Clerk

Approved as to form:

DIANSJHAN WILLIAMS-PERSAD
Assistant City Attorney

L:\AIRPORT\P 8A-B First Amendement 5-23-12.doc

LESSEE

WITNESSES:

_Carmen Suarez_
[Witness print name]

_Brice Mitchell_
[Witness print name]

KC FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company.

By _____
KENNETH FICK, Managing Member

STATE OF FLORIDA:
COUNTY OF BROWARD:

The foregoing instrument was acknowledged before me this 13 day of June., 2012 by KENNETH FICK as Managing Member of KC FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company, on behalf of the company. ☐ Who is personally known to me or ☐ has produced _____ as identification.

(SEAL)

MICHELE PICKETT
Notary Public - State of Florida
My Comm. Expires May 1, 2015
Commission # EE 89416

_Michele Pickett_
Signature Notary Public, State of Florida
taking Acknowledgment

_Michele Pickett_
Printed Name of Notary Typed,

My Commission Expires: May 1, 2015

EE 89416
Commission Number

# SECOND AMENDMENT TO AMENDED AND RESTATED LEASE AGREEMENT
## (PARCEL 8AB)

THIS IS A SECOND AMENDMENT TO LEASE AGREEMENT, entered into on August _16_, 2016, between:

THE CITY OF FORT LAUDERDALE, a municipal corporation of Florida, referred to as "Lessor" or "City".

and

KC FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company, referred to as "Lessee".

WHEREAS, Lessee leases certain property from Lessor known as Parcel 8AB at Fort Lauderdale Executive Airport, under an Amended and Restated Lease Agreement dated October 20, 2009 ("Lease Agreement"); and

WHEREAS, as provided in the Lease Agreement, Lessee is required to redevelop Parcel 8AB in three phases totaling $5,000,000.00; and

WHEREAS, Phase I involved the demolition and clearing of the old restaurant located on the property within 12 months of the commencement date of the Lease Agreement, which phase was completed on schedule; and

WHEREAS, Phase II contemplated construction of a minimum 21,577 square feet of aircraft hangar and office space, access roadway, automobile parking, and site improvements;

WHEREAS, Phase II was scheduled to be completed by November 1, 2014 and required a minimum investment of $1,800,000; and

WHEREAS, Phase III contemplated construction, by November 1, 2019, of a minimum of two hangars totaling approximately 39,300 square feet and a 10,000 square foot, two-story office building totaling approximately $3,000,000.

WHEREAS, as worked progressed on finalizing the site plan, Lessee realized that the proposed configuration limited the amount of ramp space that would adequately facilitate aircraft movement and parking and therefore at the October 18, 2013 Aviation Advisory Board meeting, Airport staff presented a recommendation and the Board approved a revised site plan for development of Parcel 8AB; and

WHEREAS, Lessee has been working with the City's Building Department and the Broward County Stormwater Management Department for the necessary construction permits; and

WHEREAS, unexpected challenges have been encountered during this process, which has delayed commencement of the construction project; and

WHEREAS, Lessee is requesting an extension of the construction improvement deadlines to complete the Phase II and Phase III improvements; and

WHEREAS, the scope of the Phase II improvements has changed to include construction of a minimum of two (2) aircraft hangars and office space totaling 44,680 square feet, access roadway, automobile parking and site improvements ("Phase II Improvements"); and

WHEREAS, the scope of the Phase III Improvements has changed to require construction of an aircraft hangar with a minimum square footage of 22,340, office space and a FBO terminal building with a minimum square footage of 7,500 ("Phase III Improvements"); and

WHEREAS, staff has presented this proposed Second Amendment to the Lease to the Aviation Advisory Board on June 23, 2016, which board recommended approval of this Second Amendment to the Lease Agreement; and

WHEREAS, as a condition to Lessor's consent to extend the deadlines, Lessor requires an increase in the Base Rent and remittance of two (2) Construction Assurance Deposits; and

WHEREAS, the Lessor declares that amending the Lease Agreement to extend the deadline is in the best interest of the City provided Lessee complies with the terms and conditions of the Lease Agreement, as amended and the additional terms and conditions as set forth herein; and

WHEREAS, pursuant to Resolution No. *16-186*, adopted at its meeting of _August 16_____, 2016 the City Commission of City authorized the City Manager to enter into this Second Amendment to Amended and Restated Lease Agreement for Parcel 8AB at Fort Lauderdale Executive Airport ("Second Amendment").

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Lease, and other good and valuable consideration, the receipt and adequacy of which are acknowledged, Lessor and Lessee agree as follows:

1. The above recitals are true and correct and are incorporated herein.

2. Paragraph 4, TERM, of the Lease Agreement, as amended, is deleted and replaced with the following:

(a) TERM.   The parties acknowledge and agree that the Term of this Lease Agreement commenced on November 1, 2009 ("Commencement Date"), and shall terminate thirty (30) years thereafter, unless sooner terminated as provided in this Lease.   The Term of this Agreement will expire twelve (12) months from its Commencement Date if Lessee fails to provide City with evidence that it has expended funds for the renovation or improvement of the Premises equal to the minimum investment of Two Hundred Thousand ($200,000.00) Dollars.   Thereafter, this Agreement will automatically terminate if Lessee fails to provide City with evidence that Lessee has constructed the Phase II Improvements which support a minimum investment of One Million Eight Hundred Thousand and No/100 Dollars ($1,800,000.00) within Three Hundred Thirty Two (332) days after issuance of all building permits by all regulatory authorities.   In addition, this Agreement shall automatically terminate if Lessee has not constructed the Phase III Improvements which support a minimum investment of Three Million and No/100 Dollars ($3,000,000.00) on or before December 31, 2022.

3. Base Rent in Paragraph 8(a) is revised as follows:

Effective upon approval of this Second Amendment by the City Commission of Lessor, Base Rent shall increase by five (5%) percent from One Hundred Sixty One Thousand Twelve and 96/100 Dollars ($161,012.96) to One Hundred Sixty Nine Thousand Sixty Three and 56/100 Dollars ($169,063.56) ("Base Rent"). Effective October 1, 2019, the then current Base Rent, as adjusted, shall automatically increase by Five Percent (5%). All other terms and conditions of paragraph 8, including CPI adjustments to rent, remain unchanged.

4.  Construction Assurance Deposit.   In consideration of the Lessor agreeing to extend the Phase II and Phase III deadlines, Lessee agrees to make and pay to Lessor a Construction Assurance Deposit of Two Percent (2%) of the minimum construction cost ($1,800,000.00) of the Phase II Improvements and Two Percent (2%) of the minimum construction cost ($3,000,000.00) of the Phase III Improvements. If the Phase II and Phase III Improvements are not completed by the deadlines established herein, then the deposits are forfeited to Lessor and this Lease shall automatically terminate. Within thirty (30) days after the City Commission of Lessor approves this Second Amendment, Lessee shall remit the Construction Assurance Deposit for the Phase II Improvements. On or before October 1, 2019, the Lessee shall remit the Construction Assurance Deposit for the Phase III Improvements. Failure to timely remit the deposits shall be deemed an event of default under this Agreement.

5. Building Permits.   Lessor shall use its best efforts secure all building permits for Phase II Improvements on or before October 15, 2016. The City Manager, in his sole discretion, shall have the option to grant two (2) sixty (60) day extensions to allow Lessee to secure building permits for the Phase II Improvements upon written request (prior to October 16, 2016) from Lessee which shall include an explanation of why an extension should be granted which explanation may include but is not limited to delays caused by regulatory authorities which are outside the control of Lessee.

6.  Effect of Amendment.   Except as stated herein, the Amended and Restated Lease

Agreement, as amended, is unchanged and remains in full force and effect in accordance with the terms thereof.

7.    <u>Effective Date</u>.    This Second Amendment shall be effective retroactively to November 1, 2014.


IN WITNESS OF THE FOREGOING, the parties have set their hands and seals the day and year first written above.

<u>LESSOR</u>

WITNESSES:

**CITY OF FORT LAUDERDALE**, a municipal corporation of the state of Florida

By _____
    John R. "Jack" Seiler, Mayor

_____
Jeanette A. Johnson
Print Name

By _____
    Lee R. Feldman, City Manager

_____
Carla Foster
Print Name


(CORPORATE SEAL)

ATTEST:

_____
Jeffrey A. Modarelli, City Clerk



Approved as to form:
Cynthia A. Everett, City Attorney


_____
Lynn Solomon
Assistant City Attorney

## LESSEE

WITNESSES:

_Katelyn Schmidberger_
[Witness print name]

_Angela Warshefsk:_
[Witness print name]

KC FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company.

By_____
Mark B. Goldstein, Manager

STATE OF FLORIDA:
COUNTY OF BROWARD:

The foregoing instrument was acknowledged before me this 9thday of August , 2016 by Mark B. Goldstein, as Manager of KC FXE AVIATION INVESTMENTS, LLC, a Florida limited liability company, on behalf of the company. ☒ Who is personally known to me or ☐ has produced _____ as identification.

(SEAL)

_____
Signature Notary Public, State of Florida
taking Acknowledgment

KATELYN SCHMIDBERGER
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF083058
Expires 1/13/2018

_Katelyn Schmidberger_
Printed Name of Notary Typed,

My Commission Expires: _1/13/2018_

_FF083058_
Commission Number