# Exhibit "D"

Case Number: COWE-22-001830 Division: 82

Filing # 152718744 E-Filed 07/05/2022 04:40:03 PM

IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CITY OF FORT LAUDERDALE, a
municipal corporation of the State of Florida,

    Plaintiff,

v.                                      CASE NO.

TERMINAL VENTURES, LLC, a Florida
limited liability company,

    Defendant.

_____/

## COMPLAINT

    Plaintiff, CITY OF FORT LAUDERDALE, a municipal corporation of the State of Florida (the "CITY"), by and through its undersigned counsel, sues Defendant, TERMINAL VENTURES, LLC, a Florida limited liability company, and alleges:

1.    This is an action to evict a tenant from commercial property located in Broward County, Florida, and is therefore within the jurisdiction of this Court. The CITY is entitled to the summary procedure provided in section 51.011, Florida Statutes.

2.    The CITY owns the following described property in Broward County:

Parcel 8G (a/k/a) a portion of Tract 1 of F-X-E PLAT (located at 2400 W. Cypress Creek Road (a/k/a NW 62nd Street), Fort Lauderdale, Florida, as more particularly described on Exhibit A to the Lease Agreement attached hereto as Exhibit "1" and incorporated herein by reference. ("Premises").

3.    Defendant, TERMINAL VENTURES, LLC is a Florida limited liability company doing business in Broward County.

4.     On or about February 24, 2020, the CITY, entered into a written Lease Agreement with Defendant, TERMINAL VENTURES, LLC for the subject Premises, a copy of which is attached hereto as Exhibit "1," and incorporated herein by reference.

5.     On or about May 1, 2020, the CITY entered into a First Amendment to Lease Agreement ("First Amendment") with Defendant to defer monthly rental payments for the months of May 2020 and June 2020, a copy of which is attached hereto as Exhibit "2," and incorporated herein by reference.

6.     On or about April 20, 2021, the CITY entered into a Second Amendment to Lease Agreement ("Second Amendment") with Defendant, a copy of which is attached hereto as Exhibit "3" and incorporated herein by reference.  The Second Amendment provided Defendant an extension of time to complete improvements required for the Phase 2 Improvements to the Premises from December 31, 2020, to December 31, 2021.

7.     Pursuant to Amended Exhibit "B" of the Second Amendment, Defendant failed to provide the CITY with evidence satisfactory to the CITY that Defendant performed all of the Phase 2 Improvements which consist of first floor interior remodeling and exterior improvements consisting of landscaping, painting, and restriping of the parking lot by December 31, 2021.

8.     Pursuant to the provisions of Section 20(c)(2) of the Second Amendment, Defendant failed to provide the CITY with evidence that is satisfactory to the CITY by January 31, 2022, that Defendant has expended a minimum of Six Hundred and Twenty-Five Thousand Dollars ($625,000.00) for the Phase 2 Improvements.

9.     On April 15, 2022, the CITY notified Defendant, by certified mail, return receipt requested and by email, of Defendant's default under Paragraph 20(c)(2) of the Lease providing Defendant sixty (60) days to cure the default, otherwise the Lease Agreement would be terminated

2

effective June 14, 2022.  A copy of the Notice of Default and Termination is attached hereto as Exhibit "4".

10.    Defendant's failure to comply with the provisions of the Second Amendment and subsequent failure to cure the default within sixty (60) days constitutes a breach of the Lease Agreement, the First Amendment, and the Second Amendment which triggered the termination of the Lease Agreement effective June 14, 2022.

11.    Although the Lease Agreement has been terminated, Defendant continues in possession of the Premises without the permission of the CITY, has refused to vacate the Premises, and is holding over in violation of Chapter 83, Florida Statutes, and the Lease Agreement, as amended.

WHEREFORE, Plaintiff, CITY OF FORT LAUDERDALE, a municipal corporation of the State of Florida, demands possession of the above-described premises against Defendant, TERMINAL VENTURES, LLC a Florida limited liability company, together with its costs of this action, and such other and further relief as the Court deems just and proper.

3

Respectfully submitted,

/s/ Edward A. Dion

EDWARD A. DION
Florida Bar No. 267732
RONNIE ADILI
Florida Bar No. 140473
Nabors, Giblin & Nickerson, P.A.
8201 Peters Road, Suite 1000
Plantation, Florida 33324
(954) 315-0268
edion@ngnlaw.com
radili@ngnlaw.com
legal-admin@ngnlaw.com

**COUNSEL FOR PLAINTIFF,
CITY OF FORT LAUDERDALE**

4

# Exhibit "1"

## LEASE AGREEMENT
### (PARCEL  8G )

THIS IS LEASE AGREEMENT (hereinafter "Lease Agreement"), made and entered into this **24th** day of **February**, 2020, by and between:

**CITY OF FORT LAUDERDALE**, a municipal corporation of the State of Florida, 100 North Andrews Avenue, Fort Lauderdale, FL 33301 (hereinafter, "LESSOR" or "CITY"),

and

**TERMINAL VENTURES, LLC**, a Florida limited liability company whose principal address is 2700 N. Military Trail, Suite 130, Boca Raton, FL 33431 (hereinafter, "LESSEE")

WHEREAS, pursuant to Resolution No. **20-10** adopted at its meeting of **January 21, 2020**, the City Commission of the City of Fort Lauderdale authorized the proper City officials to enter into a Lease Agreement with TERMINAL VENTURES, LLC for the lease of Parcel 8G at the Fort Lauderdale Executive Airport (hereinafter "Airport"); and

WHEREAS, LESSOR has jurisdiction over the development, operation, and maintenance of the Airport; and

WHEREAS, LESSEE would like to make improvements to Parcel 8G and these improvements include the demolition of the interior of the building, interior remodeling of the first floor, interior remodeling of the second floor, landscaping, painting, and restriping the parking lot.; and

LESSOR finds that this Lease is in the best interest of the City of Fort Lauderdale and serves a valid municipal purpose.

NOW THEREFORE, in consideration of the mutual promises, covenants and agreements, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.      PREMISES. Lessor leases to Lessee certain property at Fort Lauderdale Executive Airport, situated in Fort Lauderdale, Broward County, Florida, known as Parcel _____8G___ (the "Premises"), more particularly described in and shown on the sketch and description identified as Exhibit "A," a copy of which is attached to and made a part

Page 1 of 61

Exhibit "1"

of this Lease. Lessee acknowledges and agrees that all buildings, structures, hangars, pavements and other leasehold Improvements now existing or to be constructed on the Premises shall become the property of Lessor at Lessor's option upon the expiration or earlier termination of this Lease.

2.    PURPOSE. The Premises shall be used as a terminal building for an adjacent "A-G" Fixed Base Operation as defined by Resolution No. 78-42 of the City of Fort Lauderdale, adopted on the 7th day of February, 1978, and subsequent revisions of the Minimum Standards as the City may adopt from time to time and which shall be applicable to all aviation businesses operating at the Airport, and such other related and co-related facilities and usages reasonably attendant to such usage as permitted by applicable zoning requirements.

3.    DEFINITIONS. The following terms, when used in this Lease, shall be defined as follows:

(a)    *Affiliate* of a specified Person means a Person who (i) is directly or indirectly controlled by, or under common control with, the specified Person; or (ii) owns directly or indirectly thirty-five (35%) percent or more of equity securities of the specified Person; or (iii) is a general partner, officer, director, non-financial institution trustee or fiduciary of the specified Person or of any person described in (i) of (ii) preceding; or (iv) is a son, daughter, spouse parent, sibling or in-law of the specified Person.

(b)    *Aircraft Fuel Farm Facility* means the aircraft fuel farm on the Premises as described in Paragraph 40.

(c)    *Airport* means Fort Lauderdale Executive Airport, located in Fort Lauderdale, Broward County, Florida, also known as "FXE."

(d)    *Agreement, Lease Agreement, or Lease* means this Lease, including any supplements, modifications, amendments or exhibit(s) thereto.

(e)    *Approved Plans* shall mean plans and specifications for Improvements to the Premises that have received the necessary approval from the Airport Manager, the Aviation Advisory Board, and the City Commission.

(f)    *Aviation Advisory Board* means the advisory board of the City created pursuant to Sections 7-9, of the Fort Lauderdale Code of Ordinances.

(g)    *City or Lessor* means the City of Fort Lauderdale, Florida, a municipal corporation organized and existing in the State of Florida.

(h)    *City Commission* means the governing body of City.

(i)  *CO Date* and the date(s) that any Improvements are deemed to be completely constructed, means the date(s) upon which a certificate of occupancy shall be issued by the appropriate City agency or department with respect to the buildings to be constructed on the Premises, or with respect to other Improvements, the date upon which the Improvements may first be put into service for the intended use, regardless of whether such is the actual first date of usage.

(j)  Commencement Date means March 1, 2020.

(k)  *FAA* means the Federal Aviation Administration, or any successor agency.

(l)  *Improvements* and *Leasehold Improvements* mean any buildings, hangars, pavements, fixtures, permanently affixed equipment, facilities (both above ground and below ground), fences, and all other structures now or hereafter constructed on the Premises, and all additions, alterations, modifications, renovations and replacements thereto.

(m)  *Lessee* means **TERMINAL VENTURES, LLC**, a Florida limited liability company, its successors or assigns as permitted by this Lease.

(n)  *Master Plan* means the Fort Lauderdale Executive Airport Master Plan and any Update to the Master Plan that is in effect on the Commencement Date and all amendments or replacements to said Master Plan or Update.

(o)  *Part 150 Study* means the Airport FAR Part 150 Program or Update thereto, that is in effect on the Commencement Date, and all amendments or replacements to said Study or Update.

(p)  *Person* means any individual, firm, trust, estate, partnership, joint venture, company, corporation, association, or any other legal entity or business enterprise.

(q)  *Premises* means the property more particularly described in **Exhibit "A,"** subject to all easements, rights-of-way of record, restrictions and declarations, together with all buildings, hangars, structures, pavements, facilities and other Improvements now or hereafter con structed thereon, the equipment permanently affixed therein, such as electrical, plumbing, sprinkler, fire protection and fire alarm, heating, steam, sewage, drainage, refrigerating, communications, gas and other systems and their pipes, wires, mains, lines, tubes, conduits, equipment and fixtures, and all paving, drains, culverts, ditches and catch basins.

(r)  *Runways* (including approaches thereto) mean the portion of the Airport utilized for the purpose of the landing and taking off of the aircraft.

(s)    *Taxiways* mean the portion of the Airport utilized for the purpose of movement of aircraft to, from and between Runways, the public ramps and apron area, the aircraft parking and storage space and other portions of the Airport (not including those taxiways in which the exclusive use thereof is granted to the Lessee or any person by Lease, permit or otherwise).

(t)    *Term of this Lease, Term,* or words of similar import means the term set forth in Paragraph 4 of this Lease.

4.    TERM.  The parties acknowledge and agree that the Term of this Lease Agreement shall commence on March 1, 2020 ("Commencement Date"), with a twenty (20) year term, ("Commencement Date") and shall terminate on February 29, 2040.

5.    POSSESSION.  The parties agree that delivery of possession of the Premises to the Lessee occurred at the time of the commencement of the Term of this Lease Agreement.

6.    MUTUAL REPRESENTATIONS AND WARRANTIES.  The parties mutually represent, warrant and disclose to each other the following:

(a)    Municipality.  The Lessor is a municipal corporation organized and existing pursuant to the laws of the State of Florida.

(b)    Deed.  On March 11, 1947, there was executed and delivered to the Lessor by the United States of America a Deed conveying to the Lessor certain land situated near the territorial limits of the City of Fort Lauderdale, known as Prospect Field, which deed of conveyance was recorded in Deed Book 579, Page 130, of the Public Records of Broward County, Florida ("Deed").  The Premises above described constitute a portion of the property acquired by the Lessor under said Deed.  This Lease Agreement is subject to all the terms, conditions, restrictions and provisions of said Deed.

(c)    Disclosure.  The Lessee acknowledges that the Lessor has made full disclosure of all facts reflected by the aforesaid Deed.  Lessor makes no representations or warranties whatsoever as to: (i) the condition of the Premises; or (ii) whether the Premises, or any part thereof, is in compliance with applicable federal, state, and local laws, ordinances, rules and regulations, including without limitation, City ordinances, rules and regulations; or (iii) the permitted or available uses of the Premises under applicable federal, state, or local laws, ordinances, rules and regulations, including without limitation, those of City.  Lessor makes no representations or warranties whatsoever as to the legality, permissibility or availability of any use of the Premises that may be contemplated by the Lessee.  **Lessor makes no representations or warranties concerning habitability or fitness of the Premises for a particular purpose.  The Lessee specifically**

acknowledges that it has made, or has had an opportunity to conduct, a thorough and complete inspection and due diligent investigation of the Premises and the suitability thereof for Lessee's purposes, and is fully advised of its extent and condition. The Premises and all components thereof, are hereby demised in "**AS IS CONDITION**" and "**WITH ALL FAULTS**" in the Premises' present state and condition. Lessee represents, acknowledges, and agrees that it has had sufficient opportunity to inspect the Premises and all components thereof, and hereby accepts the Premises, and all components thereof, in "**AS IS CONDITION**" and "**WITH ALL FAULTS.**" Lessee **ASSUMES ALL RISK** of non-compliance of the Premises, or any part thereof, with any federal, state, or local laws, ordinances, rules and regulations, including without limitation, any City laws, ordinances, rules or regulations. Upon receipt of any notice of non-compliance with any such laws, ordinances, rules or regulations, Lessee agrees to make any and all repairs, alterations, and additions to the Premises and to take all corrective measures as may be necessary to bring the Premises into compliance with all laws, ordinances, rules and regulations. Lessee shall not be entitled to any adjustment of any rentals hereunder on account of the condition of the Premises; or any failure of any of the component parts to be in working order; or because of the necessity of Lessee to repair or take corrective actions with respect to any part thereof or because of the inability of obtaining or any delay in obtaining any required development approvals from any governmental agency having jurisdiction, including but not limited to City and its departments. Furthermore, Lessee hereby releases Lessor of any and all claims and liabilities whatsoever on account of the condition of the Premises or any failure of any of the component parts to be in working order or because of the necessity of Lessee to repair or take corrective actions with respect to any part of the Premises, or the necessity for obtaining any development approvals from any governmental agency, including the City and its departments. Notwithstanding anything herein to the contrary, the parties acknowledge and agree that: (1) this subparagraph (c) is not intended to address or apply to the discharge of any "Material" (as hereinafter defined in Paragraph 32) at the Premises, and (2) with respect to any such Material, the provisions of Paragraph 32 shall apply. This subparagraph specifically excludes environmental concerns, which are governed by the provisions of Paragraph 32 of the Lease Agreement.

(d)     Authority. All steps, acts and conditions required by the City Charter of the Lessor to be done as a condition precedent to the execution of this Lease Agreement have been done, and the Lessor has full authority to enter into this Lease Agreement.

(e)     Lessee's ability. The Lessee represents and warrants to the Lessor that it is a Political Subdivision of the State of Florida authorized to transact business within the State of Florida. The Lessee further represents and warrants that it has or will obtain adequate financial resources and has the business skill and ability to perform all obligations imposed by this Lease Agreement upon the Lessee

diligently, skillfully and successfully to operate the Premises for the purposes intended.

(f)    Subordination. This Lease Agreement and all provisions hereof are subject and subordinate to the terms and conditions of the instruments and documents under which Lessor acquired the subject property from the United States of America, including the Deed, and shall be given only such effect as will not conflict or be inconsistent with the terms and conditions contained in the Lease of said lands from Lessor, and any existing or subsequent amendments thereto. This Lease and all provisions hereof, are subject and subordinate to any ordinances, rules or regulations, which have been, or may hereafter be adopted by the Lessor pertaining to the Airport. This Lease and all provisions hereof is subject and subordinate to the provisions of any existing or future Agreement between Lessor and the United States of America relative to the operation or maintenance of the Airport, or the execution of which has been or may be required as a condition precedent to the expenditure of federal funds for development of the Airport, including without limitation the expenditure of federal funds for the development of the Airport under the provisions of the Federal Aviation Act of 1958, as amended from time to time. This Lease shall also be subject and subordinate to the provisions of all resolutions now existing and hereafter adopted by the Lessor in connection with any revenue bonds issued by the Lessor with respect to operations at the Airport, or any development of the Airport or any of its facilities, and to the provisions of all documents executed in connection with any such bonds, including without limitation, any pledge, transfer, hypothecation or assignment made at any time by Lessor to secure such bonds.

7.    GENERAL OBLIGATIONS OF THE PARTIES. The following constitute obligations and covenants of the parties, their successors and assigns:

(a)    Compliance with regulations of government agencies. The Lessee covenants and agrees that it will, at its own cost, make such improvements on the Premises and perform such acts, and do such things as shall be lawfully required by any government body or agency having jurisdiction over the Premises, in order to comply with sanitary requirements and other similar requirements designed to protect the public.

(b)    Indemnification against claims. The Lessee shall indemnify and hold the Lessor harmless from and against any and all claims, suits, actions, damages, causes of action, and costs arising during the term of this Lease Agreement (except causes of action which arise due to the negligent or intentional misconduct of Lessor, its agents or employees), for any bodily injury, loss of life or damage to property sustained in, about or upon the Premises, or the buildings and Improvements placed on them, or their appurtenances, and shall indemnify and hold Lessor harmless from and against all costs, attorneys fees, expenses and

liabilities incurred in and about any such claim, the investigation of them, or the defense of any action or proceeding brought on them, and from and against any orders, judgments or decrees which may be entered in them. Lessee shall further defend any action, complaint or proceeding brought against Lessor as the result of any matters above enumerated, all at no cost or expense to Lessor.

Lessee shall be responsible for any and all damage to the Airport caused by Lessee, its agents, employees, contractors, subcontractors, or invitees, including but not limited to, damage to terminal areas, ramp and Taxiway areas, engine run-up areas, Runways, hangar facilities and any and all areas where activities are performed or areas utilized by Lessee, or its agents, employees, contractors or subcontractors.

Lessee agrees to indemnify and hold Lessor harmless from any claim of lien by any contractor, sub-contractor, materialman or any other Person, firm or corporation whatsoever, and Lessee further agrees to hold the Lessor harmless and to indemnify the Lessor for all costs, including costs of defenses, attorneys' fees and other expenses, in connection with any claim of whatsoever kind, whenever the same may be presented, arising out of the construction of any Improvements or the making of any alterations whatsoever incidental to this Lease Agreement.

(c)     No liens created. Each party covenants and agrees that it has no power to incur any indebtedness giving a right to a lien of any kind or character upon the right, title and interest of the other party in and to the Premises covered by this Lease Agreement, and that no third person shall ever be entitled to any lien, directly or indirectly derived through or under the other party, or its agents or servants, or on account of any act or omission of any other party, except for the lien, if any, reserved upon the Lessee's leasehold interest in the Premises by a leasehold mortgage pursuant to Paragraph 41, below. All persons contracting with the Lessee, or furnishing materials or labor to the Lessee, or to its agents or servants, as well as all persons whomsoever, shall be bound by this provision of the Lease Agreement. Should any such lien be filed, the Lessee shall discharge the same within thirty (30) days after Lessee is notified of same, by paying the same or by filing a bond, or otherwise, as permitted by law. The Lessee shall not be deemed to be the agent of the Lessor so as to confer upon a laborer bestowing labor upon the Premises, or upon a materialman who furnishes material incorporated in the construction of Improvements upon the Premises, a mechanic's lien upon the Lessor's estate under the provisions of Chapter 713, Florida Statutes (2019), and any subsequent revisions or amendments of that law.

NOT AN OFFICIAL COPY - PUBLIC RECORDS - NOT AN OFFICIAL COPY

(d)    Operating costs.

(1)    The Lessee agrees promptly to pay when due all operating, maintenance and servicing charges and costs, including telephone, gas, electricity, water, water connection, sewer, sewer connections, stormwater management utility fees, and all other expenses incurred in the use and operation of the Premises.

(2)    The Lessee agrees to obtain at its expense all permits and licenses which may be required by any governmental unit.  Upon the Lessor's request, at reasonable intervals, the Lessee shall promptly furnish to the Lessor evidence satisfactory to the Lessor showing Lessee's compliance with its obligations under this Paragraph.

(e)    Insolvency of Lessee.  Should the Lessee, at any time during the term of this Lease Agreement, suffer or permit to be filed against it a composition or arrangement proceeding under state law, or make any assignment for the benefit of its creditors, or should a receiver be appointed for the Lessee's property because of the Lessee's insolvency and the appointment is not vacated within thirty (30) days thereafter, or should the Lessee's leasehold interest be levied on and the lien not discharged within thirty (30) days after levy has been made, or should the Lessee fail to promptly make the necessary returns and reports required of it by state and federal law, or should the Lessee fail promptly to comply with all governmental regulations, both state and federal, and should such failure in any manner jeopardize the rights of the Lessor, then, and in such event, and upon the happening of any of these events, the Lessor shall have the right, at its election, to consider the same a default on the part of the Lessee of the terms and provisions of this Lease Agreement, and, in the event of such default not being cured by the Lessee within a period of thirty (30) days from the date of the giving by the Lessor of written notice to the Lessee of the existence of such default, the Lessor shall have the option of declaring this Lease Agreement terminated, and the interest of the Lessee ended, or the Lessor may exercise any other options as prescribed by law or which appear in this Lease Agreement.  The pendency of arrangement proceedings to which the Lessee shall be a party shall not preclude the Lessor from exercising the options conferred upon it.  In the event the Lessee, or receiver of the Lessee's property, shall seek an injunction against the Lessor's exercise of the options conferred, such action on the part of the Lessee, or receiver, shall automatically terminate this Lease Agreement as of the date of the making of such application.  In the event a court shall enjoin the Lessor from exercising the options conferred in this Lease Agreement, such injunction shall automatically terminate this Lease .

(f)     Bankruptcy of Lessee. Should the Lessee, at any time during the term of this Lease Agreement, suffer or permit an involuntary or voluntary petition in bankruptcy to be filed against it, or institute a composition or an arrangement proceeding under Chapters 7, 11, or 13 of the Bankruptcy Code or as the same may be amended from time to time, the Lessee agrees to provide adequate protection and adequate assurance of future performance to the Lessor which will include, but not be limited to the following:

(1)     All monetary and non-monetary defaults existing prior to the institution of the filing of the bankruptcy petition shall be cured within ten (10) days of written demand made upon the Lessee by the Lessor which will include all costs and reasonable attorneys' fees expended to the date of the curing of the default;

(2)     An additional two (2) months of advance rental will be required as additional security of future performance which must be paid to the Lessor within ten (10) days of the filing of the petition in bankruptcy; and

(3)     All obligations of the Lessee must be performed in accordance with the terms of the Lease Agreement.

If an involuntary petition is filed, the foregoing provisions of subparagraphs (f)(1) and (f)(2) shall only apply if such petition is not discharged or dismissed within thirty (30) days from the date it is filed.

If at any time during the pendency of the bankruptcy proceeding the Lessee or its successor in interest fails to perform any of the monetary or non-monetary obligations required under the terms of this Lease Agreement, or fails to cure any pre-filing default, or make the additional security deposit required under the adequate protection and adequate assurance of future performance clause above, the LESSEE STIPULATES AND AGREES TO WAIVE ITS RIGHTS TO NOTICE AND HEARING AND TO ALLOW THE LESSOR TOTAL RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. 362 TO ENFORCE ITS RIGHTS UNDER THIS LEASE AND UNDER STATE LAW INCLUDING BUT NOT LIMITED TO ISSUANCE AND ENFORCEMENT OF A JUDGMENT OF EVICTION, WRIT OF ASSISTANCE AND WRIT OF POSSESSION.

(g)     Taxes. For each year of the term of this Lease Agreement, the Lessee agrees to pay when due all federal, state, county and local taxes and special assessments of whatsoever kind levied and assessed against the Premises, if any, and all Improvements built on them. On or before March 31st of each lease year of the term of this Lease Agreement, the Lessee agrees to deliver to the Lessor official tax receipts showing the payment by Lessee of all taxes and special assessments. The Lessee further agrees to pay when due all ad valorem property

taxes, sales and use taxes, special assessments and any and all other taxes or assessments imposed upon or being the liability of the Lessee arising, at any time, out of this Lease Agreement. Lessee shall also pay the rental tax prescribed by the statutory law of Florida. Any property taxes will be prorated, if applicable, to a period of time less than one (1) year.

The Lessee shall have the right to review or protest, or cause to be reviewed or protested, by legal proceedings, any such taxes, assessments, or other charges imposed upon or against the Premises, buildings, or other structures or Improvements on them and in case any such taxes, assessments or other charges shall, as a result of such proceedings or otherwise, be reduced, canceled, set aside or to any extent discharged, the Lessee shall pay the amount that shall be finally assessed or imposed against the Premises, buildings or other structures or Improvements which are finally determined to be due and payable on any such disputed or contested items. If necessary, or legally required, Lessee may exercise such review or protest right in the name of the Lessor, and Lessor agrees to cooperate with Lessee in its exercise of such right and will execute any documents needed by Lessee in connection with such right, provided that Lessee shall pay any costs incurred by Lessor as a result of such cooperation, and such document is not adverse to City. If requested in writing by Lessor, Lessee shall deposit any disputed sum, including any applicable penalty fee, with an escrow agent mutually selected by the parties, for the protest period. All expenses of such litigation, including court costs, shall be paid by Lessee free of any expense to Lessor. If, as a result of any legal proceeding pursuant to the provisions of this Paragraph, there is any reduction, cancellation, setting aside or discharge of any such tax or assessment or other charges of City, the applicable refund shall be payable to the Lessee and, if such refund is made to the Lessor, then the Lessor shall hold such refund as a trust fund and shall immediately pay over the same to the Lessee. The term "legal proceeding," as used above, shall be construed as including appropriate appeals from any judgments, decrees or orders and certiorari proceedings and appeals from orders entered in them.

(h)   Repairs and Maintenance.

(1)   Upkeep. The Lessee agrees at its expense to keep and maintain the Premises, including grounds, pavement, buildings, furnishings, fixtures and personal property in a good state of repair and first-class condition, whether such upkeep be ordinary or extraordinary, structural or otherwise. First class condition is defined as that condition prevailing in similar hangar and office complexes recently constructed. Should the Lessee fail to make any required corrections, the Lessor shall have the right to enter the Parcel, or Improvements thereto, correct the deficiency, and recover the cost of such activities from Lessee as rent due on the next rent payment date.

(2)    Repairs.  The Lessee agrees at its expense to make all repairs to the buildings or Improvements situated upon the Premises, including electrical, plumbing, sewer and sewer connections which solely serve the Premises, structural and all other repairs that may be required to be made, and the Lessee at its expense will keep all buildings, including interiors, exteriors, roofs, fixtures and equipment, in a good state of repair and in first class condition and at all times well-kept; provided, however, that any Improvements owned, controlled or operated by Lessor, such as roads, fences and utility lines, shall be maintained by Lessor. Lessor, its officers, employees, agents, representatives and contractors shall have the right to maintain existing and future utility, mechanical, electrical and other systems and to enter the Premises at all reasonable times to make such repairs, replacements or alterations as deemed appropriate by Lessor.  In the exercise of such rights of access, repair, alteration or new construction, Lessor shall not unreasonably interfere with the actual use and occupancy of the Premises by Lessee.

(3)    Repair of Damage.  If the Premises or Improvements thereto are partially destroyed or damaged by fire or other casualty, then Lessee shall repair and restore the Premises or Improvements thereto as soon as it is reasonably practicable.  Such repair or restoration shall commence not later than six (6) months after such damage, and be completed within six (6) months thereafter.  Such restoration shall be to substantially the same condition in which the Premises or Improvements thereto were before such damage.  In the event that Lessee has not demonstrated reasonable attempt to commence repairs within six (6) months from the date of said damage and thereafter diligently pursues completion of such repairs within six (6) months, this Lease may be immediately terminated by the Lessor.  Such termination shall be made effective by serving notice upon the Lessee, and effective on the date of receipt of such notice by the Lessee.

(4)    Surrender.  At the expiration or termination of this Lease Agreement, any or all buildings and other permanent improvements to Parcel 8G will, at the direction and sole discretion of Lessor, either remain intact on the Premises and become the property of the Lessor, or be removed by Lessee. The Lessee at its expense agrees to deliver the Premises to the Lessor upon the termination of this Lease Agreement in a good state of repair, and buildings so delivered shall be comparable to buildings of similar construction, age and condition, ordinary wear and tear or damage by fire or the elements excepted.  Should Lessor elect that Lessee remove any or all Improvements, the Lessee shall do so within forty-five (45) days after the termination of the Lease.  When removing Improvements, the Lessee shall restore the Premises to its previously existing condition, including filling

NOT AN OFFICIAL COPY

excavations, returning the surface to grade, and leaving the Premises safe and free from all debris and hazards. All improvements not removed as aforesaid shall, without compensation to or by Lessor, become Lessor's property free and clear of all liability and expenses. The Lessee shall at its expense take all actions required by federal, state, local and City laws, rules and regulations to remove or have removed from the Premises all hazardous substances or other Materials, however stored, and whether or not such hazardous substances or Materials have been discharged into the ground. All such hazardous substances and Materials shall be removed by the Lessee in a manner that complies with all applicable federal, state, local and City laws, rules and regulations and the provisions of Paragraph 32 shall be applicable.

(i) Quiet enjoyment. Lessor covenants, warrants and agrees that Lessee shall be entitled peacefully to enjoy, to occupy and to possess the Premises throughout the lease term without interference, hindrance or molestation.

(j) Receipts. The Lessee shall, upon written demand by the Lessor, obtain and deliver to the Lessor receipts, satisfactions and discharges showing the payment of any obligation required of Lessee by the Lease Agreement.

(k) Signs. All signs or any advertising erected, maintained or displayed at or on the Premises or upon any Improvements shall comply with the Sign Code of the City of Fort Lauderdale (Section 47-22, Unified Land Development Regulations) and all other applicable local, state and federal laws, rules, regulations and ordinances pertaining to signage. No billboards or off-premise signage, temporary signs or advertising displays, such as banners, balloons, flashing sign boards, and/or any similar visual devices shall be permitted at the Premises. Upon the expiration or earlier termination of this Lease, Lessee shall remove, obliterate or paint out, as directed by City, all signs and advertising on the Premises and, in connection therewith, shall restore the portion of the Premises affected by such signs or advertising to the same condition as the same existed prior to the placing thereon of such signs or advertising. In the event Lessee fails to remove, obliterate or paint out each and every sign or advertising and to restore the Premises, the City may, after written notice to Lessee with an opportunity to cure, perform the necessary work and the Lessee shall pay the costs thereof to the City upon demand.

(l) Obstruction lights. Lessee shall install, maintain and operate at its own expense, such obstruction lights on the Premises as the FAA may direct, or as Lessor may reasonably require, and shall energize such lights for such periods as may be directed or requested by Lessor or the Control Tower at the Airport.

(m)     Litigation venue. The parties waive the privilege of venue and agree that all litigation between them in the state courts shall take place in Broward County, Florida, and that all litigation in the federal courts shall take place in the Southern District in and for the State of Florida.

(n)     Recording of Lease. Lessee shall, at its own expense, record this Lease Agreement in the Public Records of Broward County, Florida. Lessee shall immediately forward a copy of the recorded Lease Agreement to the Lessor.

(o)     Observance of Rules and Regulations. Lessee covenants and agrees to observe and obey, and to require its sublessees, officers, employees, guests, invitees, and those doing business with it, to observe and obey such non-discriminatory ordinances, rules, regulations and standards of the City of Fort Lauderdale and the Airport, including any amendments thereto. The obligation of the Lessee to require this adherence by sublessees, guests, invitees and business visitors shall apply only while such persons are on or in occupancy of any portion of the Premises.

(p)     Conduct of Operations. Lessee and all sublessees shall conduct their operations under this Lease in an orderly and commercially reasonable manner, based on the nature of the operations, so as not to annoy, disturb, endanger or be offensive to others at the Airport.

(q)     Adherence to Noise Regulations. Lessee and all sublessees shall take all reasonable care to reduce to a minimum vibrations tending to damage any equipment, structure, building or portion of a building which is on the Premises or is a part thereof, or is located elsewhere on the Airport, and to keep the sound level of their operations as low as possible. The parties agree that aircraft operating within federal noise requirements shall not be deemed in violation of this provision.

(r)     No Nuisances. Lessee and all sublessees shall commit no nuisance, waste or injury on the Premises and shall not do or permit to be done anything, which may result in the creation or commission or maintenance of such nuisance, waste or injury on the Premises.

(s)     Utilities. Lessee and all sublessees shall not do or permit anything to be done, which may interfere with the effectiveness or accessibility to the utility systems, installed or located on or about the Premises.

(t)     Flammables. All flammable liquids kept or stored at the Premises must at all times be handled, stored and used in accordance with all applicable federal, state, City and local laws, ordinances, statutes, rules and regulations.

(u)     Derelict Aircraft.  Lessee and all sublessees shall not permit the temporary or permanent storage at the Premises of any Derelict Aircraft.  A Derelict Aircraft is (1) an aircraft that does not hold a current and valid airworthiness certificate issued by the FAA or other appropriate certificating authority, together with the necessary aircraft registration and maintenance records with a current endorsement by an appropriately rated certificate holder that the aircraft is in an airworthy condition; or (2) an aircraft that has been issued a condition notice by the FAA specifying that the aircraft has one or more conditions rendering it unairworthy; or (3) an aircraft which has had major components, accessories, flight controls, portions of the airframe or engines removed so as to render the aircraft unflyable.  With respect to Derelict Aircraft, the Airport Manager of City may make a written request to the Lessee to demonstrate that an open work order for repair or restoration is being actively pursued by Lessee or the sublessee.  If the Lessee fails to provide the Airport Manager with satisfactory evidence that an open work order is being actively pursued within fourteen (14) days of the request from the Airport Manager, then such Derelict Aircraft shall be removed from the Premises by the Lessee within ninety (90) days following the date of the Airport Manager's request.  Any Derelict Aircraft that is not removed from the Premises as provided in this subparagraph shall constitute a breach of this Lease Agreement.

(v)     Derelict Vehicles.  Lessee and all sublessees shall not permit the temporary or permanent storage at the Premises of any other derelict vehicle whatsoever. A derelict vehicle is a vehicle that does not display a current and valid state license tag.  Any derelict vehicle that is not removed from the Premises within thirty (30) days after notice from the City will constitute a material breach of this Agreement.

(w)     Emergency Evacuation and Hurricane Plan.  Within thirty (30) days of the date of this Agreement, Lessee shall prepare an emergency evacuation and hurricane plans consistent with any existing plans for the Airport.  These plans shall constitute detailed procedures of actions to be taken by Lessee and its sublessees, in the event the need for evacuation or a hurricane alert warning arises.  Notwithstanding the forgoing, the Premises will remain operational by Lessee, to the extent possible and in coordination with City's Airport Manger's emergency operational procedures, during emergency events (man-made or national disasters) and during recovery efforts.

(x)     Regulatory Approvals.  Lessee agrees to cooperate with City in connection with City's efforts to obtain Regulatory Approvals, including but not limited to Airport FAR Part 150 Program and any updates thereto, Airport Master Plan Updates, and any approvals required pursuant to Chapter 380 and Chapter 333, Florida Statutes.  From and after the date of execution of this Lease, Lessee covenants and agrees (i) to support the City's efforts to obtain the Regulatory Approvals; and (ii) to execute any document(s) or instrument(s) reasonably required by the City in order to assist City in obtaining the Regulatory Approvals,

provided that Lessee shall not be required to bear any expense in connection therewith and that Lessee shall not be deemed an agent of the City.

(y)    Operational Reports. Lessee agrees to submit to Lessor upon reasonable request by Lessor any report or reports or information regarding Lessee's operations at the Airport, including, but not limited to, passenger counts, flight operations, number of aircraft serviced, and matters of a similar nature. The Lessor agrees to receive from Lessee, upon request by Lessee, any reports the Lessee deems appropriate for the purpose of keeping the Lessor informed of any operational problems and of any suggested improvements at the Airport.

8.    RENT. Rent shall commence as set forth below. All rental payments shall be paid in advance in equal monthly installments, plus applicable taxes, on the first day of each month to which applicable according to the following schedule:

(a)    Base Rent. The Rent shall commence on the Rent Commencement Date of this Lease Agreement, March 1, 2020. All rental payments shall be paid in advance in equal monthly installments plus applicable taxes. The Rent shall be calculated at the rate of two thousand nine hundred and ninety-three dollars and 75/100 ($2,993.75) monthly, due on the first (1st) day of each month, and collectively referred to as the "Base Rent".

(b)    It is agreed between Lessor and Lessee that the Base Rent, for the remainder of the term of this Lease Agreement shall be subject to annual increases, such increase will be calculated in accordance with the following terms and conditions:

(1)    Base Rent increases. Lessor and Lessee agree that the Base Rent for the remainder of the term of this Lease Agreement shall be subject to an increase at annual intervals effective March 1st of each year. The first increase will become effective on March 1, 2021. Such adjustments shall be based upon the Cost of Living Index known as the Consumer Price Index (All Items, 1982-84 = 100), United States, All Urban Consumers, published by the Bureau of Labor Statistics of the United States Department of Labor. For computation purposes, the Numerator and Denominator are defined as follows:

Numerator - The Consumer Price Index for the third (3rd) month preceding each Adjustment Date.

Denominator - The Consumer Price Index for the third (3rd) month preceding the Adjusted Rent Commencement Date of the lease term.

The resulting fraction shall be applied to the base annual rental to arrive at the new annual rental. Should the Bureau mentioned above discontinue the publication of an Index approximating the Index contemplated above, then such Index as may be published by another United States governmental agency which most nearly approximates the Index referred to above shall govern and be substituted as the Index to be used, subject to the application of an appropriate conversion factor to be furnished by the governmental agency publishing such Index.

(2)     Base Rent shall be further adjusted on the tenth (10th) anniversary of the Rent Commencement Date of the Lease Agreement to reflect ten percent (10%) of the appraised value of the land or the current new annual rental established at the time of the adjustment, whichever is greater.

(3)     At no time shall the adjusted rent be less than the Base Rent.

(c)     Additional Rent for Improvements. In addition to the above sums, an appraisal will be performed in the tenth (10th) year of the lease term to establish Additional Rent for the building and parking lot improvements. The Additional Rent for building and parking lot improvements will be seventy-five percent (75%) of the appraised value of the improvements. Lessee shall pay Additional Rent to Lessor for the building and parking lot improvements on a monthly basis and this Additional Rent is due on the first (1st) day of each month following the appraisal.

(d)     Late Payment. The Lessor shall be entitled to collect interest at the rate of eighteen (18%) percent per annum from the date due until the date paid on any amounts that are past due beyond any applicable cure period. Lessor's right to require payment of such interest and the obligation of the Lessee to pay the same shall be in addition to and not in lieu of the right of Lessor to enforce other provisions in this Lease, including termination of the Lease, and to pursue other remedies as provided by law.

(e)     Dishonored Checks. In the event Lessee delivers a dishonored check or draft to Lessor in payment of any obligation arising under this Lease Agreement, the Lessee shall incur and pay any charges assessed to City as a result of the dishonored check or draft. In the event Lessee delivers a dishonored check or draft, the Airport Manager may require that future payments be made by cashier's check or other acceptable means by making such demand in writing to Lessee.

(f)     Place of Payment. All payments required to be made by Lessee under this Lease Agreement shall be made payable to the "City of Fort Lauderdale," and shall be delivered or mailed to the address below, or to an address as may be substituted therefore by the Lessor:

City of Fort Lauderdale – Airport
c/o Colliers International – LB Dept 678
P.O. Box 4857
Portland, OR 9708-4857

In order to have payment processed without delay, please include **LB Dept. 678** to the right of the Colliers name on the envelope

*To pay rent electronically by* **ACH** *please use the following instructions*

City of Fort Lauderdale
ABA # 021052053
Acct # 53947179
US Bank
Sacramento, CA 95814

9.      SECURITY DEPOSIT.

(a)      The Lessee shall post a security deposit with the City equal to three (3) monthly installments of rental ("Security Deposit"). The Security Deposit shall serve as security for the payment of all monies due to Lessor and shall also secure the performance of all obligations of Lessee to the Lessor. The Security Deposit shall be in the form of an Irrevocable Letter of Credit ("Letter of Credit") in form and substance satisfactory to Lessor or in cash. In the event of any failure by Lessee to pay when due any rentals or charges or upon any other failure to perform its obligations or other default under this Lease Agreement, then in addition to any other rights and remedies available to Lessor at law or in equity, Lessor shall be entitled to draw down the full amount of the Security Deposit and apply the same to all amounts owed. Upon notice of any such draw, Lessee shall immediately replace the Security Deposit with a new Letter of Credit or cash in the full amount of the Security Deposit required hereunder. The Lessor, upon fourteen (14) calendar days' notice to Lessee, may require an increase in the Security Deposit to reflect any increases in the monies payable hereunder. If the Security Deposit is in the form of a Letter of Credit, the Security Deposit shall be kept in full force and effect throughout the term of this Lease Agreement and for a period of six (6) months thereafter. Not less than one hundred twenty (120) calendar days prior to any expiration date of a Letter of Credit, Lessee shall submit evidence in a form satisfactory to Lessor that said security instrument has been renewed. A failure to renew a Letter of Credit, or to increase the amount of the Security Deposit if required pursuant to this Paragraph, shall be a default of this Lease Agreement entitling Lessor to all available remedies. The Security shall not be returned to Lessee until all obligations under this Lease Agreement are performed and satisfied.

(b)    Each Letter of Credit provided hereunder or under any other Paragraph or provision of this Lease Agreement shall be provided by a financial institution of recognized standing authorized to do business in the State of Florida. Throughout the term of the Letter of Credit, the financial institution that has issued the Letter of Credit must maintain a relationship with a financial institution having an office in Broward, Miami-Dade or Palm Beach County, Florida, at which the Letter of Credit may be presented for drawing down, and the financial institution issuing the Letter of Credit must have been in business with a record of successful continuous operation for at least five (5) years. Each Letter of Credit shall be in a form and substance satisfactory to Lessor. Lessee's obligation to post a Security Deposit shall apply to all heirs, successors, and assigns.

10.    INTEREST. All delinquent payments to the Lessor shall bear interest at the rate equivalent to the periodic composite of current annual interest rates on five (5) year United States Government agency issues in effect as of the date of delinquency, but not less than eighteen percent (18%) per annum. Such interest shall be calculated from the due date, exclusive of any grace period, to the date of payment, on a daily basis, and will be due and payable when billed.

11.    LIEN UPON REVENUES, ETC. In the event of the Lessee's breach of any material provisions of this Lease, the Lessor shall, subject to the provisions of Paragraph 41 of this Lease, have a lien upon all revenues, income, rents, earnings and profits from the Premises as additional security to the Lessor for the Lessee's faithful performance of each of the terms and provisions, and to secure payment of all sums owing to Lessor. Such liens shall be superior in dignity to the rights of the Lessee and any of its creditors or assignees or any trustee or receiver appointed for the Lessee's property, or any other person claiming under the Lessee. Upon the Lessor's termination of Lessee's rights under this Lease by reason of the Lessee's default, all such revenues, income, rents, earnings and profits derived or accruing from the Premises from the date of such termination by the Lessor shall constitute the property of the Lessor, and the same is declared to be a trust fund for the exclusive benefit of the Lessor and shall not constitute any asset of the Lessee or any trustee or receiver appointed for the Lessee's property. The provisions of this Paragraph shall be effective without the Lessor's re-entry upon the Premises or repossession of them, and without any judicial determination that the Lessee's interest under the Lease has been terminated. Despite any provision in this Paragraph that is or may appear to be to the contrary, Lessor acknowledges that the lien of a leasehold mortgagee upon Lessee's revenues, income, rents, earnings and profits as described above shall be recognized as superior to Lessor's lien.

12.    ABATEMENT OF RENT. If at any time Lessee shall become entitled to an abatement of rental by the provisions of this Lease Agreement, the abatement of such rental shall be made on an equitable basis giving effect to the amount and character of the space of which the Lessee is being deprived as compared with the entire Premises.

If Lessor shall, for safety or other reasons, prohibit the use of the public landing area at the Airport or of any substantial part of them for a period covering more than fifteen (15) consecutive days and the Lessee shall be prevented from conducting those operations at the Airport contemplated by this Lease Agreement, then, upon the occurrence of such event, Lessee shall be entitled to an abatement of rental during such period of prohibition and prevention. Lessee releases and discharges Lessor of and from all claims and rights which Lessee may have arising out of or consequent upon such closing and the subsequent interrupted use of such public landing area during the period of such prohibition.

13.    ACCESS TO PREMISES.  Lessor represents and warrants that Lessee shall have the right of ingress and egress to and from public thoroughfares and over Airport paved roads, such that at all times during the term of this Lease Agreement. Lessee, its successors and assigns and their respective guests and invitees shall have vehicular ingress and egress to and from the Premises from public thoroughfares. Notwithstanding the above, the City may, from time to time, substitute other suitable means of ingress and egress so long as an alternate adequate means of access is available. The City may at any time temporarily or permanently close, or consent to, or request the closing of any such roadway, Taxiway and any other such area at the Airport presently or hereafter used as such, so long as reasonably sufficient alternate means of ingress and egress is made available to the Premises.

14.    INSPECTION OF PREMISES.  The Lessor, its officers, employees, agents, representatives and contractors, and other governmental agencies having jurisdiction shall have the right to enter the Premises and the buildings and Improvements constructed on them at all reasonable hours for the purpose of inspecting the same, for observing the performance of the Lessee of its obligations under the Lease, or for any other purposes not inconsistent with the terms of this Lease Agreement, but consistent with reasonable security measures of the Lessee. Lessor agrees that such right will not be exercised arbitrarily or in a manner that would unnecessarily disturb occupants of the Premises, except in cases involving public safety or police emergency. This right of entry shall impose no duty on the City to take any such action and shall impart no liability on the City should it not take such action.

15.    EASEMENTS AND UTILITIES.

(a)    The Lessee shall grant permission or convey to the Lessor any right of use of any portion of the Premises that may be required for the installation of utilities or right-of-way for road or any other municipal or public purposes. It is understood that should any permission be required, it shall be in writing and the use permitted must be compatible with any existing or proposed Improvements of the Lessee. It is further agreed that if it becomes necessary to relocate or remove any Improvement for the sole benefit of Lessor, then the cost of such removal or relocation shall be at the Lessor's expense. Easements to be conveyed or retained

by Lessor shall include, but are not limited to, all utility easements on the Premises as may now or in the further be determined to be necessary to serve the needs of the Airport and all easements referred to in Exhibit "A". In the event there is a loss of beneficial use or impairment of beneficial use resulting from the granting of permission for use to Lessor, proper adjustment of the rent required shall be made at the time of the grant or conveyance given by Lessee.  No special assessment for such grants or improvements made on the Premises for the sole benefit of Lessor shall be made against Lessee.  Lessor covenants and agrees that it will promptly execute and deliver any and all instruments that may be required of the Lessor in connection with the granting of easements for installation of water, gas, electricity, telephone or other appropriate utility to the various utility companies affecting any part of the Premises, without expense to the Lessee, so long as this Lease Agreement or any sublease under this Lease Agreement is in effect.

(b)     Lessee shall pay for all electric, water, garbage and other utilities charges for the Premises.  Any metering devices installed by the Lessee for such utilities shall be installed at Lessee's cost and shall become property of the City upon installation. Extension of utility mains or services to meet the needs of the Lessee on the Premises shall be completed at Lessee's expense and shall become the property of City upon installation.

16.     PROHIBITED SERVICES AND USES.  The Premises shall be used for no purposes other than as specifically allowed by this Lease.  The Premises shall not be used in any manner that is incompatible with or which violates any provision of any FAA rules, regulations or advisory circulars, state laws or regulations, or City ordinances, applicable county ordinances, administrative code provisions or regulations, as each is amended from time to time, and including without limitation FAA Advisory Circular No. 150/5300-13, Chapter 333, Florida Statutes, and Chapter 7 of the City of Fort Lauderdale Code of Ordinances.  In addition, Lessee shall be expressly prohibited from providing the following services and conducting the following uses:

(a)     Terminal facilities for passenger operations, other than those covered by Federal Aviation Regulations (FAR) Parts 91, 125, 135.

(b)     Restaurant, coffee shop, lounge or cafeteria (except Lessee may operate a bistro for W Aviation's patrons and customers).

(c)     Sale of alcoholic beverages (except as expressly permitted herein and the operation of a duty-free shop). The Lessee may serve alcoholic beverages to aircraft passengers provided no charge is made for such beverages and such service is in accordance with all State and local laws, rules and regulations.

(d)     Sale of non-aviation products and any use not related to aviation, other than the sale of company specialty items such as shirts, hats and other specialty items.

(e)     Air shows.

(f)     Carrying, storing, receiving or distributing hazardous materials.

(g)     Adult entertainment.

(h)     Any use, which conflicts with the Foreign Trade Zone (FTZ) activities and regulations.

(i)     Any other use prohibited by law.

17.     ZONING.  The Lessee accepts the zoning of the Premises, which Lessor represents and warrants is General Aviation Airport ("GAA") as of the commencement of the term of this Lease Agreement, which zoning is compatible and consistent with the usages and purposes contemplated in this Agreement.  Lessee further accepts the existing zoning ordinances of the Unified Land Development Regulations of the City of Fort Lauderdale insofar as they are applicable to the Premises.

18.     RESTRAINTS UPON LESSEE.  Lessee understands and agrees that it is expressly subject to all applicable zoning restrictions and all rules, regulations and City ordinances pertaining to the Airport.

19.     COMPLIANCE WITH LAWS.  Lessee shall comply with all federal, state, local and City laws, ordinances, resolutions, statutes, and governmental rules, regulations and orders, including the Minimum Standards provided in Paragraph 33 below, as the same are amended from time to time.  A violation of any such laws, ordinances, resolutions, statutes, rules, regulations or orders shall constitute a material breach of this Lease, and in such event City shall be entitled to exercise all rights and remedies hereunder and at law and in equity.

20.     ACCELERATION; GRACE PERIOD; DEFAULT.

(a)     Time of the essence. The Lessee agrees promptly to perform, comply with and abide by this Lease Agreement, and agrees that time of payment and of performance are of the very nature and essence of this agreement.

(b)     Default in rent; grace period. Except as otherwise specifically provided in this Lease Agreement, the Lessee shall have a grace period of thirty (30) days within which to pay any and all sums of rent due, which sums shall be due and payable without notice or demand, which Lessee waives.  If any sums of money required to be paid by the Lessee to the Lessor shall, subject to Paragraph 41 of this Lease Agreement, remain unpaid after such latter period, then the Lessor shall have the following options and privileges:

(1)    Partial acceleration. The Lessor may declare one year's rental as presently due and payable. Such declaration shall not be construed as a splitting of a cause of action, nor shall it alter or affect the obligations of the Lessee to pay rent under the terms of this Lease Agreement for the period unaffected by the declaration.

(2)    Other remedies. In addition to partial acceleration as outlined above, the Lessor may exercise any or all other options available to it, including any legal or equitable remedies which it may have, which options may be exercised concurrently or separately with the exercise of the above option, including those remedies specified in subparagraph 21(c), below.

(c)    Default in Improvements. The following actions shall constitute default of the Improvements that Lessee is required to make in accordance with this Lease Agreement and not withstanding any other provisions herein, if any of the following actions occur, the Lessor may immediately terminate the Lease Agreement by sending written notice thereof within sixty (60) days' notice to cure ("Termination Date") to the Lessee and the termination shall be effective on the Terminate Date in the notice:

(1)    Phase 1. If Lessee fails to provide Lessor with evidence that is satisfactory to Lessor that Lessee performed all of the Phase 1 demolition in accordance with Exhibit "B" attached by May 31, 2020.

(2)    Phase 2. If Lessee fails to provide Lessor with evidence that is satisfactory to Lessor that Lessee performed all of the Phase 2 Improvements which consist of first floor interior remodeling and exterior improvements consisting of landscaping, painting, and restriping of the parking lot in accordance with Exhibit "B" attached hereto or if Lessee has failed to provide Lessor with evidence that is satisfactory to Lessor by January 31, 2021, that Lessee has expended a minimum of Six Hundred and Twenty-Five Thousand Dollars ($625,000.00) for Phase 2 Improvements in accordance with Exhibit "B" attached hereto.

(3)    Phase 3. If Lessee fails to provide Lessor with evidence that is satisfactory to Lessor that Lessee performed all of the Phase 3 Second Floor Remodeling Improvements in accordance with Exhibit "B" attached hereto or if Lessee has failed to provide Lessor with evidence that is satisfactory to Lessor by August 31, 2021, that Lessee has expended a minimum of Five Hundred and Five Thousand Dollars ($505,000.00) for Phase 3 Improvements in accordance with Exhibit "B" attached hereto.

(d)    Default in other provisions.  If Lessee shall default in the performance of any other term of this Lease Agreement (except the payment of rent), then the Lessor, or its agent, shall send to the Lessee a written notice of default, specifying the nature of the default, and Lessee shall, within thirty (30) days after the date of the notice, cure and remedy the default, and this Lease Agreement shall then continue as before.

(1)    If the Lessee shall fail to timely cure and remedy such default, the Lessor shall have the right to declare, by written notice to the Lessee, that the Lease Agreement is in default, and to use all remedies available to the Lessor under this Lease Agreement.

(2)    If default shall be made in any covenant, agreement, condition or undertaking contained in this Lease Agreement to be kept, observed and performed by Lessee, other than the payment of any rent, which default cannot with due diligence be cured within a period of thirty (30) days, and if written notice of the default shall have been given to Lessee, and if Lessee, prior to the expiration of thirty (30) days from and after the giving of such notice commences to eliminate the cause of such default and proceeds diligently, continuously and with reasonable dispatch to take all steps and do all work required to cure such default and does so cure such default, then Lessor shall not have the right to declare the Lease term ended by reason of such default; provided, however, that the curing of any default in such manner shall not be construed to limit or restrict the right of Lessor to declare the Lease term ended and enforce all of its rights and remedies under this Lease Agreement for any other default not so cured.

(e)    That upon any default and the failure to cure the same within the cure period provided herein, and at any time thereafter during the occurrence of such default, the Lessor may at its option immediately terminate the rights of Lessee hereunder by giving written notice thereof, which termination shall be effective upon the date specified in such notice or the Lessor may exercise any and all other remedies available hereunder, at law or in equity.

(f)    Habitual Default.  Notwithstanding any other provision of this Lease, in the event that Lessee has frequently, regularly and repetitively defaulted in the performance of or breached any of the terms, covenants and conditions required in this Lease to be kept or performed by the Lessee, and regardless of whether the Lessee has cured each individual condition of breach or default, the Lessee may be determined by the Airport Manager to be a "habitual violator." At the time such determination is made, the Airport Manager shall issue to the Lessee written notice advising of such determination and citing circumstances therefore.  Such notice shall also advise Lessee that there shall be no further notice or grace periods to correct any subsequent breaches or defaults and that any subsequent breaches

or defaults of whatever nature, taken with all previous breaches and defaults, shall be considered cumulative and collectively, shall constitute a condition of noncurable default and grounds for immediate termination of this Agreement. In the event of any such subsequent breach or default, the Lessor may terminate this Agreement upon giving of written notice of termination to Lessee, such termination to be effective upon delivery of the notice to the Lessee.

(g)     No acceptance by the City of rent, fees, charges or other payments in whole or in part for any periods after a default of any of the terms, covenants and conditions hereof to be performed, kept or observed by the Lessee shall be deemed a waiver of any right on the part of the City to terminate this Lease, or to exercise any other available remedies.

(h)     Upon expiration or earlier termination of this Agreement, Lessee shall remain liable for all obligations and liabilities that have accrued after the date of this Lease and prior to the date of expiration or termination.

21.     TERMINATION BY LESSEE. Lessee shall have the right to terminate this Agreement in its entirety by giving written notice to Lessor of such termination upon or after the happening of one or more of the following events:

(a)     If any court of competent jurisdiction shall issue an injunction, order or decree preventing or restraining the use by Lessee of all or a substantial part of the Premises, or preventing or restraining the use of the Airport for usual airport purposes in its entirety, or the use of any part which is used by the Lessee and which is necessary for Lessee's operations on the Airport, which remains in force and unvacated or unstayed for a period of at least ninety (90) consecutive days and results in the material interference with Lessee's normal business operations; or

(b)     If the Lessor shall default in fulfilling any of the terms, covenants or conditions to be fulfilled by it and shall fail to remedy such default within thirty (30) days following receipt by Lessor of written demand from Lessee to do so, or if by reason of the nature of such default the same cannot be remedied within thirty (30) days, then Lessee shall have the right to terminate this Agreement if Lessor shall have failed to commence to remedy such default within the thirty (30) days following such written demand, or having so commenced, shall fail to diligently continue; or

(c)     If all or a material portion of the Airport or the Airport facilities are destroyed, or if any agency or instrumentality of the United States Government or the State of Florida shall occupy the entire Airport or a substantial part of it, or if military mobilization or public emergency causes a curtailment of normal civilian traffic at

the Airport, and any of those events shall result in the material interference with Lessee's normal business operations for any consecutive ninety (90) day period.

22.    OWNERSHIP AT TERMINATION.

(a)    With the exception of condemnation as provided in Paragraph 43, all buildings, structures, Improvements and fixtures of every kind erected or placed on the Premises shall remain the property of the Lessee until the end of the term or earlier termination of this Lease Agreement for any other reason, at which time such buildings, structures, Improvements and fixtures of every kind shall be and become the property of the Lessor, at the Lessor's option, and shall be left in good condition and repair, ordinary wear and damage by the elements excepted.  A fixture is defined as an article which was a chattel, but which, by being physically annexed or affixed to the realty by the Lessee and incapable of being removed without structural or functional damage to the realty, becomes a part and parcel of it.

(b)    Non-fixture personally owned by the Lessee at the expiration of the term or earlier termination of this Lease Agreement, for any reason, shall continue to be owned by Lessee, and at the time of such expiration or earlier termination, Lessee at its option may remove all such personally owned non-fixture, provided the Lessee is not then in default of any covenant or condition of this Lease Agreement; otherwise, all such property shall remain on the Premises until the damages suffered by Lessor from any such default have been ascertained and compensated.  Any damage to the Premises caused by the removal by Lessee of any such personally owned non-fixture shall be repaired by Lessee immediately at its expense.

(c)    Any property installed or attached to the Premises by any of Lessee's subtenants shall be and remain such subtenant's property and may be removed by the subtenant upon the termination of sublease, provided that such subtenant repairs, restores and holds the Lessor harmless from all damage to the Premises including buildings, other structures and Improvements, caused by such removal. While this Lease Agreement is in effect, Lessee shall be entitled to depreciation on the buildings, other structures and Improvements and fixtures, which are now or shall subsequently be erected upon the Premises.

23.    CONTINUED    PERFORMANCE    AFTER    DEFAULT.    Continued performance by either party pursuant to the terms of this Lease Agreement after a default of any of the terms, covenants and conditions, shall not be deemed a waiver of any right to terminate this Lease Agreement for any subsequent default, and no waiver of any such default shall be construed to be or operate as a waiver of any subsequent default.

24.    RE-ENTRY AND REPOSSESSION.

(a)    If the Lessee shall fail to keep and perform any of the covenants, conditions and agreements provided in this Lease to be performed by Lessee, and such default shall not be remedied within the grace period provided elsewhere in this Lease, the Lessor shall have the right to treat such default as intentional, inexcusable and material, and the Lessor, by notice in writing transmitted to the Lessee, as provided in Paragraph 47, entitled "NOTICES", may at its option declare the Lessee's interest under this Lease ended and without further force and effect. Thereupon the Lessor is authorized to re-enter and repossess the Premises and the buildings, Improvements and personal property on them, either with or without legal process, and the Lessee does in such event waive any demand for possession of the Premises, and agrees to surrender and deliver up the Premises peaceably to Lessor. In the event of such action, the Lessee shall have no claim whatsoever against the Lessor by reason of Improvements made upon the Premises, rents paid, or from any other cause whatsoever.

(b)    The provisions of this Paragraph shall not be construed so as to divest the Lessor, in the event of such default, of any legal right or remedy which it may have by statutory or common law, enforceable at law or in equity. It is intended that the provisions of this Paragraph shall afford to the Lessor a cumulative remedy, in addition to such other remedy or remedies as the law affords a Lessor when the terms of a lease have been breached by a Lessee.

25.    REMOVAL OF LESSEE'S PROPERTY BY LESSOR. If, under the terms of this Lease Agreement, Lessee is entitled to remove its property from the Premises, but shall fail to do so on or before the termination or expiration of the term or on or before the termination or expiration of this Lease Agreement for any other cause specified in this Lease Agreement, then Lessor may remove such property and retain the same in its possession, and may sell the same at public auction, the proceeds of which shall be applied first to the expenses of such removal and storage and sale, and the balance paid to the Lessee upon the demand of Lessee, providing that the proceeds of such sale exceed the expenses of such removal, storage and sale.

26.    NONWAIVER. Failure of the Lessor to insist upon the strict performance of any of the covenants, conditions and agreements of this Lease in any one or more instances, shall not be construed as a waiver or relinquishment in the future of any such covenants, conditions and agreements. The Lessee covenants that no surrender or abandonment of the Premises or of the remainder of the term shall be valid unless accepted by the Lessor in writing. The Lessor shall be under no duty to relet the Premises in the event of an abandonment or surrender or attempted surrender or attempted abandonment of the Premises by the Lessee. Upon the Lessee's abandonment or surrender or attempted abandonment or attempted surrender of the Premises, the Lessor shall have the right to retake possession of the Premises or any part of them, and such

retaking of possession shall not constitute an acceptance of the Lessee's abandonment or surrender.

27. HOLD HARMLESS. Lessee shall at all times indemnify and hold Lessor, its agents, officers and employees harmless against any and all claims, losses, liabilities causes of action, demands, and expenditures of any kind, including attorneys' fees, court costs and expenses, arising out of Lessee's use of the Airport or occupancy of the Premises or caused by the acts, errors, omissions or negligence of Lessee, its employees, agents, servants, or officers, arising out of or in any way connected with the Premises or the subject matter of this Lease, including without limitation, any and all claims, demands or causes of action of any nature whatsoever resulting from injuries or damages sustained by any Person or property. The provisions of this Paragraph shall survive the expiration or earlier termination of this Lease. Nothing in this Lease Agreement shall be construed as a waiver of the protections, immunities and limitations afforded City or Lessee by Section 768.28, Florida Statutes.

28. INDEMNITY AGAINST COSTS AND CHARGES. In the event of a breach of any of the provisions of this Lease and to the extent permitted by law, the party not in breach shall be entitled to recover from the breaching party all costs, expenses, reasonable attorneys' fees and damages which may be incurred or sustained by reason of such breach. If allowable under Florida law, any sums due the Lessor under this Paragraph shall constitute a lien against the interest of the Lessee in the Premises and all its property situated on them to the same extent and on the same condition as delinquent rent would constitute a lien on the Premises and property.

29. INSURANCE. In order to insure the indemnification obligations of this Lease, the parties further agree to the following provisions pertaining to insurance:

As a condition precedent to the effectiveness of this Agreement, during the term of this Agreement and during any renewal or extension term of this Agreement, the Lessee, at the Lessee's sole expense, shall provide insurance of such types and with such terms and limits as noted below. Providing proof of and maintaining adequate insurance coverage are material obligations of the Lessee. The Lessee shall provide the Lessor a certificate of insurance evidencing such coverage. The Lessee's insurance coverage shall be primary insurance for all applicable policies. The limits of coverage under each policy maintained by the Lessee shall not be interpreted as limiting the Lessee's liability and obligations under this Agreement. All insurance policies shall be from insurers authorized to write insurance policies in the State of Florida and that possess an A.M. Best rating of A-, VII or better. All insurance policies are subject to approval by the Lessor's Risk Manager.

The coverages, limits, and endorsements required herein protect the interests of the Lessor, and these coverages, limits, and endorsements may not be relied upon by the Lessee for assessing the extent or determining appropriate types and limits of coverage

to protect the Lessee against any loss exposure, whether as a result of this Agreement or otherwise. The requirements contained herein, as well as the Lessor's review or acknowledgement, are not intended to and shall not in any manner limit or qualify the liabilities and obligations assumed by the Lessee under this Agreement.

The following insurance policies and coverages are required:

Property Coverage
Coverage must be afforded in an amount not less than 100% of the replacement value of the property with a deductible of no more than $25,000 each claim. Coverage form shall include, but not be limited to:
- All Risk Coverage including Flood and Windstorm with no coinsurance clause
- Any separate Flood and/or Windstorm deductibles are subject to approval by the Lessor

This policy shall insure the interests of the Lessor and Lessee in the property against all risk of physical loss and damage, and name the Lessor as a loss payee.

All rights of subrogation shall be waived against Lessor under the property coverage policy.

The Lessee shall, at the Lessee's own expense, take all reasonable precautions to protect the Premises from damage or destruction.

Builder's Risk Coverage
For improvements under construction, coverage must be afforded in an amount not less than 100% of the total project cost, including soft costs, with a deductible of no more than $25,000 each claim. Coverage form shall include, but not be limited to:
- All Risk Coverage including Flood and Windstorm with no coinsurance clause
- Guaranteed policy extension provision
- Waiver of Occupancy Clause Endorsement, which will enable the Lessor to occupy the facility under construction/renovation during the activity
- Storage and transport of materials, equipment, supplies of any kind whatsoever to be used on or incidental to the project
- Equipment Breakdown for cold testing of all mechanized, pressurized, or electrical equipment

This policy shall insure the interests of the Lessor, Lessee, and subcontractors in the property against all risk of physical loss and damage, and name the Lessor as a loss payee. This insurance shall remain in effect until the work is completed and the property has been accepted by the Lessor.

Collection of Insurance. In the event of destruction of or damage to over fifty percent (50%) of any of the Premises or the buildings, other structures and Improvements covered

by insurance and Lessee's election to rebuild the Premises or the buildings, other structures and Improvements pursuant to the Lessee's option provided in this Lease, the funds payable pursuant to such insurance policies shall be payable to, and deposited in, a commercial national bank as trustee, located in Fort Lauderdale, Florida, selected by the Lessor, as a trust fund, and the funds shall be used for the purpose of reconstruction or repair, as the case may be, of any of the buildings, other structures or Improvements so damaged or destroyed. Such reconstruction and repair work shall be done in strict conformity with the ordinances and charter of the Lessor. Should the cost of reconstruction or repair exceed the amount of funds available from the proceeds of such insurance policy, then in such event, such funds shall be used as far as the same will permit in paying the cost of the reconstruction or repair. In the event that the cost of such reconstruction or repair work shall be less than the proceeds derived from such insurance policies, the surplus shall be payable to Lessee.

Commercial General Liability
Coverage must be afforded under a Commercial General Liability policy with limits not less than:

- $1,000,000 each occurrence and $2,000,000 aggregate for Bodily Injury, Property Damage, and Personal and Advertising Injury
- $1,000,000 each occurrence and $2,000,000 aggregate for Products and Completed Operations

If Lessor requires other fixed base operator tenants at Airport to increase their policy limits for the insurance described in this subparagraph, then Lessee agrees to increase its insurance limits accordingly.

Policy must include coverage for Contractual Liability and Independent Contractors.

The Lessor and the Lessor's officers, employees, and volunteers are to be covered as additional insureds with a CG 20 26 04 13 Additional Insured – Designated Person or Organization Endorsement or similar endorsement providing equal or broader Additional Insured Coverage with respect to liability arising out of activities performed by or on behalf of the Lessee. The coverage shall contain no special limitation on the scope of protection afforded to the Lessor or the Lessor's officers, employees, and volunteers.

Contractors Pollution Liability Coverage
For sudden and gradual occurrences and in an amount not less than $5,000,000 per claim arising out of this Agreement, including but not limited to, all hazardous materials identified under the Agreement.

Asbestos Liability Coverage
For sudden and gradual occurrences and in an amount not less than $1,000,000 per claim arising out of work performed under this Agreement.

**Disposal Coverage**
The Lessee shall designate the disposal site and furnish a Certificate of Insurance from the disposal facility for Environmental Impairment Liability Insurance, covering liability for sudden and accidental occurrences in an amount not less than $1,000,000 per claim and shall include liability for non-sudden occurrences in an amount not less than $1,000,000 per claim.

**Hazardous Waste Transportation Coverage**
The Lessee shall designate the hauler and furnish a Certificate of Insurance from the hauler for Automobile Liability insurance with Endorsement MCS90 for liability arising out of the transportation of hazardous materials in an amount not less than $1,000,000 per claim limit and provide a valid EPA identification number.

**Business Automobile Liability**
Coverage must be afforded for all Owned, Hired, Scheduled, and Non-Owned vehicles for Bodily Injury and Property Damage in an amount not less than $1,000,000 combined single limit each accident.

If the Lessee does not own vehicles, the Lessee shall maintain coverage for Hired and Non-Owned Auto Liability, which may be satisfied by way of endorsement to the Commercial General Liability policy or separate Business Auto Liability policy.

**Workers' Compensation and Employer's Liability**
Coverage must be afforded per Chapter 440, Florida Statutes. Any person or entity performing work for or on behalf of the Lessor must provide Workers' Compensation insurance. Exceptions and exemptions will be allowed by the Lessor's Risk Manager, if they are in accordance with Florida Statute.

The Lessee waives, and the Lessee shall ensure that the Lessee's insurance carrier waives, all subrogation rights against the Lessor and the Lessor's officers, employees, and volunteers for all losses or damages. The Lessor requires the policy to be endorsed with WC 00 03 13 Waiver of our Right to Recover from Others or equivalent.

The Lessee must be in compliance with all applicable State and federal workers' compensation laws, including the U.S. Longshore Harbor Workers' Act and the Jones Act, if applicable.

**Insurance Certificate Requirements**
   a. The Lessee shall provide the Lessor with valid Certificates of Insurance (binders are unacceptable) no later than thirty (30) days prior to the start of work contemplated in this Agreement.
   b. The Lessee shall provide to the Lessor a Certificate of Insurance having a thirty (30) day notice of cancellation; ten (10) days' notice if cancellation is for nonpayment of premium.

c. In the event that the insurer is unable to accommodate the cancellation notice requirement, it shall be the responsibility of the Lessee to provide the proper notice. Such notification will be in writing by registered mail, return receipt requested, and addressed to the certificate holder.

d. In the event the Agreement term goes beyond the expiration date of the insurance policy, the Lessee shall provide the Lessor with an updated Certificate of Insurance no later than ten (10) days prior to the expiration of the insurance currently in effect. The Lessor reserves the right to suspend the Agreement until this requirement is met.

e. The Certificate of Insurance shall indicate whether coverage is provided under a claims-made or occurrence form. If any coverage is provided on a claims-made form, the Certificate of Insurance must show a retroactive date, which shall be the effective date of the initial contract or prior.

f. The Lessor shall be named as an Additional Insured on all liability policies, with the exception of Workers' Compensation.

g. The Lessor shall be granted a Waiver of Subrogation on the Lessee's Workers' Compensation insurance policy.

h. The title of the Agreement and/or other identifying reference must be listed on the Certificate of Insurance.

The Certificate Holder should read as follows:
City of Fort Lauderdale
100 N. Andrews Avenue
Fort Lauderdale, FL 33301

The Lessee has the sole responsibility for the payment of all insurance premiums and shall be fully and solely responsible for any costs or expenses as a result of a coverage deductible, co-insurance penalty, or self-insured retention; including any loss not covered because of the operation of such deductible, co-insurance penalty, self-insured retention, or coverage exclusion or limitation. Any costs for adding the Lessor as an Additional Insured shall be at the Lessee's expense.

If the Lessee's primary insurance policy/policies do not meet the minimum requirements, as set forth in this Agreement, the Lessee may provide evidence of an Umbrella/Excess insurance policy to comply with this requirement.

The Lessee's insurance coverage shall be primary insurance as applied to the Lessor and the Lessor's officers, employees, and volunteers. Any insurance or self-insurance maintained by the Lessor covering the Lessor, the Lessor's officers, employees, or volunteers shall be non-contributory.

Any exclusion or provision in the insurance maintained by the Lessee that excludes coverage for work contemplated in this Agreement shall be unacceptable and shall be considered breach of contract.

All required insurance policies must be maintained until the contract work has been accepted by the Lessor, or until this Agreement is terminated, whichever is later. Any lapse in coverage shall be considered breach of contract. In addition, Lessee must provide to the Lessor confirmation of coverage renewal via an updated certificate should any policies expire prior to the expiration of this Agreement. The Lessor reserves the right to review, at any time, coverage forms and limits of Lessee's insurance policies.

The Lessee shall provide notice of any and all claims, accidents, and any other occurrences associated with this Agreement to the Lessee's insurance company or companies and the Lessor's Risk Management office, as soon as practical.

It is the Lessee's responsibility to ensure that any and all of the Lessee's independent contractors and subcontractors comply with these insurance requirements. All coverages for independent contractors and subcontractors shall be subject to all of the applicable requirements stated herein. Any and all deficiencies are the responsibility of the Lessee.

30.     STANDARD PROTECTION CLAUSES.

(a)     It shall be a condition of this Lease, that the Lessor reserves the right unto itself, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the Premises, together with the right to cause in the airspace such noise as may be inherent in the operation of aircraft, now known or hereafter used, for the navigation of or flight in the airspace, and for use of the airspace for landing on, taking off from or operating on the Airport.

(b)     The Lessee expressly agrees for itself, its successors and assigns, to restrict the height of structures, objects of natural growth and other obstructions on the Premises, to such a height so as to comply with Federal Aviation Regulations, Part 77.

(c)     The Lessee expressly agrees for itself, its successors and assigns, to prevent any use of the Premises that would interfere with or adversely affect the operation or maintenance of the Airport, or otherwise constitute an Airport hazard.

31.     SPECIFIC COMPLIANCE WITH ENVIRONMENTAL LAWS.

(a)     The Lessee shall comply in all particulars with all pertinent rules, regulations, laws and ordinances duly and legally promulgated by any governmental authority, specifically including without limitation those addressing the following for protection of the environment:

(1)     Proper use, storage, treatment and disposal of Materials, including contracting with a licensed hazardous waste transporter or treatment and disposal facility to assure proper transport and disposal of hazardous waste and other regulated Materials.

(2)     Proper, use, disposal and treatment of stormwater runoff, including the construction and installation of adequate pre-treatment devices or mechanisms on the Premises, if applicable.

(3)     Adequate inspection, licensing, insurance and registration of existing and future storage tanks, storage systems and ancillary facilities to meet all City, local, state and federal standards, including the installation and operation of adequate monitoring devices and leak detection systems.

(4)     Adequate facilities on the Premises for management and, as necessary, pretreatment of industrial waste, industrial wastewater, and regulated materials and the proper disposal thereof.

(5)     Compliance with reporting requirements of Title III of the Superfund Amendment, Chapter 27 of the Broward County Code of Ordinances, Chapters 13 and 28 of the Fort Lauderdale Code of Ordinances and any other environmental regulations, as applicable and as such laws may be enacted and amended from time to time.

(b)     The release of any Materials on the Premises, or as a result of Lessee's operations at the Airport, that is in an amount constituting a violation of any federal, state, City of local law, rule or regulation or in violation of any order or directive of any federal, state, or local court or governmental authority, by Lessee, or any of its sublessees or the officers, employees, subcontractors, invitees, or agents of Lessee or its sublessees, whether committed prior to or subsequent to the date of execution of this Agreement, shall be, at the Lessee's expense, and upon demand of City or any of its agencies or any local, state, or federal regulatory agency, immediately contained or removed to meet the requirements of applicable environmental laws, rules and regulations.   If Lessee does not take action immediately to have such Materials contained, removed and abated, the City or any of its agencies may upon reasonable notice to Lessee(which notice shall be written unless an emergency condition exists) undertake the removal of the Materials; however, any such action by the City or any of its agencies shall not relieve the Lessee of its obligations under this or any other provision of this Agreement or as imposed by law.  No action taken by either the Lessee or the City to contain or remove Materials, or to abate a discharge, whether such action is taken voluntarily or not, shall be construed as an admission of liability as to the source of or the person who caused the pollution or its discharge.

(c)     Lessee shall provide the City with notice of releases of Materials occurring at the Premises or on account of Lessee's operations at the Airport.  Lessee shall maintain a log of all such notices to the City, and shall also maintain all records required by federal, state, City and local laws, rules and regulations and also such records as are reasonably necessary to adequately assess environmental compliance in accordance with applicable laws, rules and regulations.

(d)     As required by law, Lessee shall provide the federal, state, City and local regulatory agencies with notice of spills, releases, leaks or discharges of Materials on the Premises or on the Airport property which exceeds an amount required to be reported to any local, City, state or federal regulatory agency under applicable environmental laws, rules and regulations.  Lessee shall further provide the City with written notice of not less than one (1) business day following commencement of the same, of the curative measures, remediation efforts and monitoring activities to be effected on the Premises.  Lessee shall have a current contingency plan in effect relating to such releases which provide minimum standards and procedures for storage of regulated materials and other Materials, prevention and containment of spills and releases, and transfer and disposal of regulated materials and other Materials. The contingency plan shall describe design features, response actions, and procedures to be followed in case of releases or other accidents involving hazardous materials, bio-hazardous materials, petroleum products or other Materials.

(e)     The City, upon reasonable written notice to Lessee, shall have the right to inspect all documents relating to the environmental condition of the Premises, including without limitation, the release of Materials at the Premises, or any curative, remediation, or monitoring efforts, and any documents required to be maintained under applicable environmental laws, rules, regulations or any development order issued to the City and pertaining to the Airport pursuant to Chapter 380, Florida Statutes, including but not limited to, manifests evidencing proper transportation and disposal of Materials, environmental site assessments, and sampling and test results.

(f)     Lessee agrees to permit inspection of the Premises by appropriate federal, state, county, City, and local agency personnel in accordance with applicable environmental laws, rules and regulations and as required by any development order issued to the City pertaining to the Airport, pursuant to Chapter 380, Florida Statutes.

(g)     If the City arranges for the removal of any Materials on the Premises that were caused by Lessee, or any of its sublessees or the officers, employees, contractors, subcontractors, invitees, or agents of Lessee or its sublessees, the costs of such removal incurred by the City shall be paid by Lessee to the City within

ten (10) calendar days of City's written demand, with interest at the rate of eighteen (18%) percent per annum thereafter accruing.

(h)      Notwithstanding anything else to the contrary in this Paragraph, Lessee shall not be liable for the discharge of any Materials caused by anyone other than the Lessee, or any of its sublessees or the officers, employees, contractors, subcontractors, invitees, or agents of Lessee or any of its sublessees. Nothing herein shall relieve Lessee of its general duty to cooperate with the City in ascertaining the source and containing, removing, and abating any Materials at the Premises. The City and its employees, contractors, and agents, at times in accordance with applicable laws, rules and regulations, shall have the right to enter the Premises for the purposes of the foregoing activities or conducting such environmental assessments (testing and sampling), inspections, audits as warranted.

(i)      Lessee hereby agrees that upon any assignment of this Lease by Lessee, and at anytime during the last year of the Term of this Lease, the City shall have the right to require Lessee to conduct a Termination of Lease Assessment and Facility Exit Inspection of the Premises, at Lessee's expense. If documentation warrants, the City shall have the right to require the Lessee to conduct a further assessment of the Premises at the Lessee's expense, which may include, but shall not be limited to, soil and water samples.

(j)      Should any Termination of Lease Assessment or Facility Exit Inspection of the Premises indicate that further actions must be conducted in order to comply with applicable laws, ordinances, rules or regulations, or any directive of any federal, state or local court or governmental authority, then the City shall have the right to have such further actions conducted at the Lessee's expense. Nothing herein shall be construed to limit City's right of entry onto the Premises pursuant to other provisions of this Paragraph or of this Agreement, or pursuant to its regulatory powers. Lessee shall have the right to split any soil or water samples obtained by City.

(k)      Lessee shall reimburse to the City the cost of such assessments and inspections within ten (10) calendar days following written demand therefore, with interest at the rate of eighteen (18%) percent per annum thereafter accruing.

(l)      In the event City shall arrange for the removal of Materials on the Premises that are not the responsibility of the Lessee to correct, and if any such clean-up activities by City shall prevent Lessee from using the Premises for the purposes intended, the rent shall be abated in accordance with Paragraph 12, hereof, from the date that the use of the Premises for its intended purposes is precluded and until the Premises again become available for the Lessee's use. City shall use reasonable efforts to not disrupt Lessee's business; however, in no event shall

Lessee be entitled to any amount on account of lost profits, lost rentals, or other claims of damage, resulting of City's clean-up activities.

(m)   The provisions of this Paragraph shall survive the expiration or earlier termination of this Agreement.

(n)   The Premises shall not be used for any improper or immoral purposes or in any manner that constitutes a nuisance, either public or private.

(o)   Lessee shall provide City, if requested by the Airport Manager, with a list of all hazardous, bio-hazardous, or other Materials stored, used, generated or disposed of on the Premises during Lessee's occupation of the Premises under this Lease and under any prior leases throughout the term of the Lease.

(p)   Lessee acknowledges and agrees that the City makes no representations or warranties whatsoever as to whether any pollutant, or hydrocarbon contamination, hazardous materials, or other contaminants or regulated materials (referred to herein collectively as "Materials") exist on or in the Premises or Improvements in violation of any federal, state, City of local law, rules, regulation or in violation of any order or directive of any federal, state or local court or entity with jurisdiction of such matter.  It shall be the responsibility of Lessee to make sufficient inspection of the Premises and the Improvements to satisfy itself as to the presence or absence of any such Materials.

(q)   Lessee shall ensure that any rare, protected, threatened, and/or endangered species as listed by the Federal, State, or local regulatory agencies are protected from harm or removed by obtaining all applicable permits through the proper agencies and shall follow all proper procedures for their removal.

32.   MINIMUM STANDARDS.  In addition to the covenants and agreements contained in this Agreement, this Lease is further subject to the provisions of those certain Minimum Standards pertaining to airport tenants as adopted by City of Fort Lauderdale Resolution No. 05-29, as such Minimum Standards are amended from time to time.

33.   STORMWATER MANAGEMENT PROGRAM.  Lessee acknowledges that the City of Fort Lauderdale has adopted a stormwater management program (Article IV of Chapter 28 of the Code of Ordinances of the City of Fort Lauderdale) that imposes a stormwater management utility fee upon every lot and parcel within the City of Fort Lauderdale for services and facilities provided by the stormwater management program. Lessee specifically agrees that any such fee imposed on the Premises shall be paid timely and in whole solely by Lessee.

34.   POLICE POWERS. City cannot, and hereby specifically does not, waive or relinquish any of its regulatory approval or enforcement rights and obligations as it may relate to regulations governing the Premises, any Improvements thereon, or any operations at the Premises.   Nothing in this Lease shall be deemed to create an affirmative duty of City to abrogate its sovereign right to exercise its police powers and governmental powers by approving or disapproving or taking any other action in accordance with its zoning and land use codes, administrative codes, ordinances, rules and regulations, federal laws and regulations, state laws and regulations, and grant agreements. In addition, nothing herein shall be considered "zoning by contract."

Certain provisions of this Lease may require the City and/or its boards, departments or agencies, acting in their governmental capacity, to consider certain changes in the City's Comprehensive Land Use Master Plan and/or Unified Land Development Regulations or take other governmental actions. All such considerations and actions shall be undertaken in accordance with established requirements of state statute, and the City of Fort Lauderdale Charter and City of Fort Lauderdale ordinances, in the exercise of the City's jurisdiction under its police power. Nothing in this Agreement is intended to limit or restrict the powers and responsibilities of the City in acting on such applications by virtue of the fact that the City may have consent to such applications as a property owner.

35.   AIRPORT SECURITY PROGRAM.

(a)   Lessee agrees to observe all security requirements and other requirements of the Federal Aviation Regulations and any and all requirements of the Department of Homeland Security and the Transportation Security Administration applicable to Lessee.   The Lessee agrees to comply with the Airport Security Program and the Air Operations Area (AOA) Vehicle Access Program, as may be amended from time to time, as approved by the Federal Aviation Administration, and to comply with such other rules and regulations as may be reasonably required by the City, and to take such steps as may be necessary or directed by the City to insure that sublessees, employees, invitees and guests observe these requirements.   If required by the Airport Manager, Lessee shall conduct background checks of its employees in accordance with applicable federal regulations. Lessee further agrees to be responsible for the care and maintenance of the Airport Security barriers and devices as a permanent improvement to the Premises. All costs and expenses associated with the cost of the security fence, barriers, access control and monitoring systems, including but not limited to, gates, signs or locks (keying and re-keying), which are installed now or in the future at the Premises shall be borne by the Lessee. If, as a result of the acts or omissions of Lessee, its sublessees, employees, invitees or guests, the City incurs any fines or penalties imposed by the Federal Aviation Administration or any expense in enforcing the regulations of the Federal Aviation Administration, Department of Homeland Security and the Transportation Security Administration or the rules and regulations of the City, and any expense in enforcing the Airport Security Program,

then Lessee agrees to pay and reimburse to City all such costs and expenses, including all costs of administrative proceedings, court costs and attorney's fees, and all other costs and expenses incurred by City in enforcing this provision. Lessee agrees that it has the responsibility to prevent unauthorized access to the aircraft Movement Area through its Premises and will take all necessary actions to prevent such unauthorized access through its leasehold. Lessee further agrees to rectify any security deficiency or other deficiency as may be determined as such by the City or the Federal Aviation Administration. In the event Lessee fails to remedy any such deficiency, the City may do so at the cost and expense of Lessee. The City reserves the right to take whatever action is necessary to rectify any security deficiency or other deficiency. The provisions hereof shall survive the expiration or earlier termination of this Lease.

(b)     Lessee shall comply with all Federal, State, and Local regulations pertaining to safety and security on the Airport. Lessee shall be held liable for any vehicles and or pedestrians that gain unauthorized access to the Movement Area through the Premises. It shall be the responsibility of Lessee to properly secure its property to prevent unauthorized access to the Air Operations Area (AOA) and the Movement Area.   Lessee shall provide wiring, conduits, and space in telecommunications closets as necessary within the Premises for the operation of any security devices that the Airport deems necessary. Lessee shall also be responsible for providing power from an electrical panel with circuit breaker protection, for any security device, including but not limited to, access controls, gates, and cameras. Energy to operate any security system will be provided by Lessee without cost to the Airport.

36.     MATTERS RESERVED BY THE LESSOR.

(a)     Lessor reserves the right to take any action it considers necessary to protect the aerial approaches of the Airport against obstruction, together with the right to prevent Lessee from erecting or permitting to be erected any building or other structure on the Airport, which, in the opinion of the Lessor would limit the usefulness of the Airport or constitute a hazard to aircraft utilizing the Airport.

(b)     Lessor reserves the authority to ensure that facilities of the Airport are made available to the public on fair and reasonable terms without unjust discrimination. This Lease shall be subordinate to the authority of the Lessor to establish sufficient control over the operations of Lessee at the Airport to guarantee that patrons will be treated fairly.

(c)     Lessor reserves the right to further develop and improve the Airport, including but not limited to, all landing areas and Taxiways of the Airport, as Lessor sees fit, regardless of the desires or views of Lessee, and without interference or hindrance, subject to Paragraph 14 of this Lease Agreement.

(d)     Except to the extent required for the performance of the obligations of Lessee, nothing contained in this Agreement shall grant to Lessee any rights whatsoever in the airspace above the Premises other than those rights which are subject to Federal Aviation Administration orders, regulations or advisory circulars currently or subsequently effective.  Lessor reserves the right to take any action whatsoever that it considers necessary to protect the aerial approaches of the Airport against obstruction, including but not limited to, the demolition or removal of structures upon the Premises, together with the right to prevent Lessee from erecting or permitting to be erected any building or other structure at the Airport which, in the opinion of the Lessor, would limit the usefulness of or interfere with the operations at the Airport, or constitute a hazard to aircraft.

37.     <u>CONSTRUCTION CONTRACTS BOND, AND CONTRACT PROVISIONS.</u>

(a)     Lessee agrees that prior to commencing any work or construction on the Premises, the Lessee shall require the contractor building the Improvements to maintain at all times a valid construction bond and a valid labor and material bond, which shall be in an amount not less than the amount covering the full amount of the work performed. Each bond must guarantee to the City the completion of the work being performed by the contractor as well as full payment of all suppliers, materialmen, laborers or subcontractors employed in completing the improvement.

(b)     Lessee agrees to include the following provisions in any contracts it enters into with contractors in connection with the construction and completion of any Improvements to the Premises:

(1)     In consideration of the sum of twenty-five (25.00) Dollars and other good and valuable consideration, the Contractor shall indemnify and hold the City of Fort Lauderdale, its agents, officers and employees harmless from and against or on account of any injuries or damages, received or sustained by any person, persons or entity arising out of or in any way connected with the operations or work to be performed on the subject property, including during any warranty period, by or in consequence of any negligence (excluding sole negligence of City), by use of any improper materials, by any intentional act, by any misconduct or recklessness, or by or on account of any other act or omission of said Contractor or its subcontractors, materialmen, or agents of any tier or their respective employees.

(2)     Contractor agrees to indemnity and hold the City of Fort Lauderdale harmless, including during any warranty period, against any claims or liability arising out of or in any way connected with the violation of any state, federal, City or local laws, ordinances, statutes, rules or regulations by

Contractor, its subcontractors, agents, servants, or employees. Contractor agrees to indemnify and hold the City of Fort Lauderdale harmless from all such claims and fees, and from any and all suits and actions of every nature and description that may be brought against the City on account of any claims, fees, royalties or costs for any invention or patent, and from any and all suits and actions that may be brought against City including during any warranty period for infringement of any and all patents or patent rights claim by any person, firm or corporation.

(3)     Contractor further agrees to indemnify and hold the City of Fort Lauderdale, its agents, officers and employees harmless, from and against or on account of any injuries or damages, received or sustained by any person, persons, or entity arising out of or in any way connected with patent construction defects.

(4)     These indemnifications shall survive the term of this Contract. In the event that any action or proceeding is brought against the City by reason of any such claim or demand, Contractor, upon written notice from City shall resist and defend such action or proceeding by legal counsel satisfactory to City.

(c)     Lessee agrees to include the following insurance provisions in any contracts it enters into with contractors in connection with the construction and completion of any Improvements to the Premises, and Lessee further agrees to provide City, prior to commencement of any Improvements, certificates of insurance evidencing the contractor's compliance with this Paragraph:

(1)     Without limiting any of the other obligations or liabilities of Contractor, Contractor shall provide, pay for, and maintain in force until all of its work to be performed under this Contract has been completed and accepted (or for such duration as is otherwise specified hereinafter), the insurance coverages set forth herein. All policies shall be endorsed to provide City with at least thirty (30) days prior written notice of any modification, cancellation, restriction or termination to the policy.

    a. Workers' Compensation Insurance in compliance with the Workers' Compensation Law of the State of Florida and all applicable federal law.

    b. Employers' Liability with policy limits of One Hundred Thousand Dollars ($100,000) per accident.

    c. Comprehensive General Liability with minimum limits of One Million Dollars ($1,000,000.00) per occurrence, combined single limit for

Bodily Injury Liability and Property Damage Liability. The City of Fort Lauderdale shall be named as an additional insured.

d. Business Automobile Liability with minimum limits of One Million Dollars ($1,000,000.00) per occurrence, combined single limit for Bodily Injury Liability and Property Damage Liability, and which covers owned, leased, hired and other non-owned vehicles.

38.    BUILDING REQUIREMENT AND CONCEPTUAL SITE PLAN REVIEW.

(a)    The Lessee is required to construct and maintain Improvements on the Premises as summarized in **Exhibit "B"**, attached hereto and incorporated herein by reference. Lessee shall begin the process to construct with no less than a submission of a building permit application to the City of Fort Lauderdale, no later than six (6) months following the Commencement Date of this Lease Agreement. Lessee may construct additional improvements or modifications at a later date, adhering to the requirements of the Lessor's codes and regulations, Federal, County, State and any other governing jurisdiction in effect at the time. However, in all cases, construction must be completed within sixty (60) months after approval by Lessor.

(b)    A conceptual site plan for any and all Improvements that may be developed by Lessee on the Premises shall first be reviewed and approved by Lessor's Aviation Advisory Board. Prior to any construction upon the Premises, including any alterations, changes or additions, the Lessee's complete building plans shall be reviewed and approved by Lessor's Airport Manager. All such approvals shall not be unreasonably withheld; provided, however, that any such conceptual site plan approval shall be specifically subject to Lessee showing that adequate on-site stormwater drainage is provided. No approval provided for herein shall be construed as relieving Lessee of any requirement contained in any applicable City, County, State or Federal law or regulation. Lessee shall be responsible at its sole cost and expense, to apply for and secure all necessary local, County, State, and Federal permits for the construction of Improvements on the Premises. This shall include, but not be limited to, applications for re-zoning and vacation of rights-of-way.

(c)    Improvements made by the Lessee, and any and all construction of Improvements shall be performed in such a manner as to provide that the Improvements shall:

(1)    Be structurally sound and safe for human occupancy, and free from any hazards and be constructed in compliance with all applicable codes.

(2)     Provide sufficient clearance for Taxiways, Runways and aprons, and shall not intrude into any aeronautical surfaces or exceed any height limitations and shall not interfere with operations or arriving and departing aircraft at the Airport and shall not conflict with any items of the FAA-approved Airport Layout Plan for the Airport.

(3)     Comply with the provisions of the Deed under which Lessor acquired title to the airport from the United States of America, and the provisions of any grant agreements between the Lessor and the United States Government or the State of Florida that are applicable to the Premises.

(4)     Comply with the terms and provisions of this Lease.

(5)     Lessor reserves the right to require that all development within the Airport is consistent with the overall Airport system architecture and the Airport Master Plan, as well as being consistent with reasonable standards of safety and quality.

(d)     It is understood and agreed that in the course of any construction undertaken by Lessee during the term of this Lease, Lessee shall be responsible for all costs associated with any removal, replacement, relocation and protection of all utilities, whether such utilities are located at the Premises or on adjacent property, including but not limited to water, sewer, telephone, electric, airfield lighting system, and Federal Aviation Administration navigational aid system.

(e)     All Improvements and equipment constructed or installed by Lessee, its agents or contractors, including the plans and specifications relating to the same, shall comply with all applicable state, federal City and local ordinances, statutes, building codes, fire codes, regulations and rules. The approval by Fort Lauderdale Executive Airport staff or officers of any plans, specifications or designs shall not constitute a representation or warranty as to such compliance, and the responsibility therefore shall at all times remain with Lessee.

(f)     All Improvements and equipment constructed, installed, operated or maintained on the Leased Premises shall at all times comply with applicable federal, state or local ordinances, statutes, rules or regulations pertaining to environmental protection and regulation.

(g)     Any work impacting any portion of the Airport other than the Premises shall be performed within schedules approved by the Airport Manager.

(h)     Lessee shall coordinate all Improvements to and construction on the Premises with the FAA, including the filing of the required forms and the provision of any documentation the FAA may request or require.

(i)      All Improvements hereafter made to the Premises shall comply with the provisions of the Americans with Disabilities Act of 1990, as the same may be amended from time to time.

(j)      Lessee acknowledges the Premises, including the land, belong to the City. Therefore, Lessee shall not dispose of any fill, dirt, and sand at any time, except that such relocation of fill, dirt and sand shall be done in accordance with a plan approved by the Airport Manager.

39.    RIGHTS OF LESSEE TO MORTGAGE LESSEE'S INTEREST UNDER THIS LEASE AND RIGHTS OF LEASEHOLD MORTGAGEE.

(a)      The Lessee shall have the right to mortgage Lessee's interest under this Lease Agreement to a Federal or State Savings and Loan Association, Bank or Trust Company, Insurance Company, Pension Fund or Trust or similar lending institution authorized to make leasehold mortgage loans in the State of Florida without obtaining the prior consent of the Lessor, subject, however, to the other terms and conditions of this Lease Agreement.

(b)      If the Lessee shall mortgage its leasehold interest and if the holder of the mortgage or pledge shall forward to the Lessor a duplicate original of the mortgage in form proper for recordation, or a copy of the mortgage certified as a true copy by the Office of Official Records of Broward County, Florida together with a written notice setting forth the name and address of the leasehold mortgagee, then, until the time that the leasehold mortgage shall be satisfied of record, the following provisions of this Paragraph shall apply.

(c)      When giving notice to the Lessee with respect to any default under the provisions of this Lease Agreement, the Lessor will also serve a copy of such notice upon the leasehold mortgagee which copy shall be sent by Lessor by certified mail, return receipt requested, to such mortgagee. No such notice to the Lessee shall be deemed to have been given unless a copy of such notice has been mailed to such leasehold mortgagee, which notice must specify the nature of each such default.

(d)      The leasehold mortgagee, upon mailing by Lessor of the notice referred to in subparagraph (c) of this Paragraph, shall have, in addition to any period of grace extended to the Lessee under the terms and conditions of this Lease Agreement, a period of sixty (60) days within which to cure the default or cause the same to be cured or to commence to cure such default with diligence and continuity; provided, however, that as to any default of the Lessee for failure to pay rent, the leasehold mortgagee shall be given written notice of such default by certified mail by Lessor,

and the leasehold mortgagee shall have fifteen (15) additional days from the date the notice of default was mailed within which to cure such default.

(e)    Upon the happening of any default and receipt of notice of default from the Lessor, the Lessee will notify the leasehold mortgagee promptly of such occurrence and shall state in the notice what action has been or will be taken by the Lessee to cure the default.

(f)    In case the Lessee shall default under any of the provisions of this Lease Agreement, the leasehold mortgagee shall have the right to cure such default whether the same consists of the failure to pay rent or the failure to perform any other matter or thing which the Lessee is required to do or perform, and the Lessor shall accept such performance on the part of the leasehold mortgagee as though the same had been done or performed by the Lessee.

(g)    In the case of any default by the Lessee, other than in the payment of money under this Lease Agreement, the Lessor, so long as no default in respect of the payment of minimum rental and additional rental shall exist, will take no action to effect a termination of the term of this Lease Agreement by the service of a notice provided for in Paragraph 47 below by reason of any such default, without first giving to the leasehold mortgagee a reasonable time, not to exceed forty-five (45) days from the mailing of notice by Lessor, within which either (i) to obtain possession of the Premises (including possession by a receiver) and cure such default in the case of a default which is susceptible of being cured when the leasehold mortgagee has obtained possession; or (ii) to institute foreclosure proceedings and complete such foreclosure or otherwise acquire the Lessee's interest under this Lease Agreement with diligence and continuity and thereafter to commence and diligently proceed to cure such default; provided, however, that the leasehold mortgagee shall not be required to continue such possession or continue such foreclosure proceedings if the default which would have been the reason for serving such a notice shall be cured, and provided further, that nothing in this Paragraph shall preclude the Lessor from exercising any rights or remedies under this Lease Agreement with respect to any other default by the Lessee during any period of such forbearance.

(h)    In the event of the termination of this Lease Agreement or of any succeeding lease made pursuant to the provisions of this Paragraph prior to its stated expiration date, the Lessor will enter into a new lease of the Premises with the leasehold mortgagee or, at the request of such leasehold mortgagee, to a corporation or other entity approved to conduct business in the State of Florida, formed by or on behalf of such leasehold mortgagee or by or on behalf of the holder of the note secured by the leasehold mortgage held by such leasehold mortgagee, for the remainder of the term, effective on the date of such termination, at the rent and additional rent and upon the covenants, agreements, terms, provisions and

limitations contained in this Lease Agreement, provided that such leasehold mortgagee makes written request and executes, acknowledges and delivers to the Lessor such new lease within thirty (30) days from the date of such termination and such written request and such new lease are accompanied by payment to the Lessor of all amounts then due to the Lessor, including reasonable attorneys' fees, court costs and disbursements incurred by the Lessor in connection with any such default and termination as well as in connection with the execution and delivery of such new lease, less the net income collected by the Lessor subsequent to the date of termination of this Lease Agreement and prior to the execution and delivery of the new lease, any excess of such net income over the aforesaid sums and expenses to be applied in payment of the rent thereafter becoming due under such new lease. Any new lease referred to in this Paragraph shall not require any execution, acknowledgment or delivery by the Lessor in order to become effective as against the Lessor and the Lessor shall be deemed to have executed, acknowledged and delivered any such new lease immediately upon receipt by the Lessor of such new lease accompanied by (i) payment to the Lessor of all amounts then due to the Lessor of which the leasehold mortgagee shall theretofore have received written notice; and (ii) an agreement by the leasehold mortgagee to pay all other amounts then due to the Lessor of which the leasehold mortgagee shall not theretofore have received written notice. In addition, immediately upon receipt by the Lessor of such new lease, as provided in this subparagraph, the Lessor shall be deemed to have executed, acknowledged and delivered to the leasehold mortgagee an assignment of all subleases covering the Premises which theretofore may have been assigned and transferred to the Lessor and all subleases under which subtenants shall be required to attorn to the Lessor pursuant to the terms and conditions of such subleases or this Lease Agreement. Such assignment by the Lessor shall be deemed to be without recourse as against the Lessor. Within ten (10) days after a written request therefore by the leasehold mortgagee, such assignment or assignments shall be reduced to writing in recordable form and executed, acknowledged and delivered by the Lessor to the leasehold mortgagee.

(i)      The leasehold mortgagee may become the legal owner and holder of this Lease Agreement by foreclosure of its mortgage or as a result of the assignment of this Lease Agreement in lieu of foreclosure, whereupon such leasehold mortgagee shall immediately become and remain liable under this Lease Agreement as provided in subparagraph (j) below, except that such leasehold mortgagee may assign this Lease Agreement without the Lessor's consent to any assignee at any time whether prior or subsequent to the construction or completion of buildings, or other structures and Improvements erected or to be erected upon the Premises, provided that prior notice is given to Lessor in accordance with this Lease.

(j)      In the event that a leasehold mortgagee shall become the owner or holder of the Lessee's interest by foreclosure of its mortgage or by assignment of this in Lease Agreement lieu of foreclosure or otherwise, the term "Lessee," as used in this Lease Agreement, means only the owner or holder of the Lessee's interest for the time being so that, in the event of a sale, assignment or other disposition of the Lessee's interest in this Lease Agreement by the mortgagee, the mortgagee shall be entirely freed and relieved of all covenants and obligations of the Lessee under this Lease Agreement and it shall be deemed and construed, without further agreement between the Lessor and the mortgagee or between the Lessor, the mortgagee and the mortgagee's purchaser or assignee at any such sale or upon assignment of Lessee's interest, that the purchaser or assignee of Lessee's interest has assumed and agreed to carry out any and all covenants and obligations of Lessee.

(k)      Within ten (10) days after written request by Lessee or by Lessee's leasehold mortgagee, or in the event that upon any sale, assignment or mortgaging of Lessee's interest in this Lease Agreement by Lessee or Lessee's leasehold mortgagee, an offset statement shall be required from the Lessor, the Lessor agrees to deliver in recordable form a certificate to any proposed leasehold mortgagee, purchaser, assignee or to Lessee, certifying (if such be the case) (i) the amount of rental and additional rental due under the Lease Agreement, if any, and the date to which rentals have been paid; (ii) that this Lease Agreement is in full force and effect; (iii) that the Lessor has no knowledge of any default under this Lease Agreement, or if any default exists, specifying the nature of the default; and (iv) that there are no defenses or offsets which may be asserted by the Lessor against the Lessee in respect of obligations pursuant to this Lease Agreement.

(l)      Reference in this Lease Agreement to acquisition of the Lessee's interests in this Lease Agreement by the leasehold mortgagee shall be deemed to refer, where circumstances require, to acquisition of the Lessee's interest in this Lease Agreement by any purchaser at a sale on foreclosure of the leasehold mortgage and provisions applicable to the leasehold mortgagee in such instance or instances shall also be applicable to any such purchaser.

(m)      So long as the Lessee's interest in this Lease Agreement shall be mortgaged to a leasehold mortgagee, the parties agree for the benefit of such leasehold mortgagee that the Lessor shall not sell, grant or convey to the Lessee all or any portion of the Lessor's fee simple title to the Premises without the prior written consent of such mortgagee. In the event of any such sale, grant or conveyance by the Lessor to the Lessee, the Lessor and the Lessee agree that no such sale, grant or conveyance shall create a merger of this Lease Agreement into a fee simple title to the Premises. This subparagraph (m) shall not be construed to prevent a sale, grant or conveyance of the Lessor's fee simple title by the Lessor

to any person, firm or corporation other than the Lessee, its successors, legal representatives and assigns.

(n)    Reference in this Lease Agreement to a leasehold mortgagee shall be deemed to refer where circumstances require, to any assignee (subject to the provisions of subparagraph (i), above) of a leasehold mortgagee; provided that such assignee shall forward to the Lessor a duplicate original of the assignment of the leasehold mortgage in form proper for record or a copy of such assignment, certified as a true copy by the Office of Official Records of Broward County, together with a written notice setting forth the name and address of the assignee.

(o)    Any leasehold mortgage shall be specifically subject and subordinate to the Lessor's rights under this Lease Agreement. The sentence immediately preceding shall not be deemed or construed (by implication or otherwise) to impose or establish upon the Lessee's interest in this Lease Agreement or upon the lien of any leasehold mortgage the superiority of any lien or encumbrance, including, without limitation, the lien of any fee mortgage, judgment or tax created directly or indirectly by, through or against the Lessor or the Lessor's interest in this Lease Agreement. Despite any provision which is or may appear to be to the contrary in this Lease Agreement, under no circumstances whatsoever shall the fee simple title interest of the Lessor in the Premises, or any portion of them, be subordinated, except for a mortgage on Lessee's leasehold interest.

40.    OTHER REMEDIES. In addition to the options granted above, the Lessor may exercise any or all other options available to it, which options may be exercised concurrently or separately with the exercise of the above options.

41.    CONDEMNATION.

(a)    In the event of a taking of all of the Premises or so much of them so as to render the Premises unfit for purposes intended by the Lessee for any public or quasi-public purpose, under any statute or by right of eminent domain, the Lessee's liability to pay rental and additional rental or otherwise to perform the terms and conditions of this Lease Agreement shall cease, but the Lessee shall be entitled to any claim against the condemnor that the Lessee may be entitled to because of (i) loss of buildings, other structures and Improvements erected upon the Premises by the Lessee; and (ii) the loss of the then unexpired portion of the fixed term of this Lease Agreement. Lessor shall be entitled to the balance of the condemnation award, if any.

(b)    In the event of a partial taking by condemnation or eminent domain as described in subparagraph (a) above, so that the part not so taken shall be sufficient for the continued operation of the Premises for the purposes intended by the Lessee, then this Lease Agreement shall continue in full force and effect, and

the rental shall be reduced in accordance with subparagraph (c) below, and the Lessee shall be entitled to any claim against the condemnor that the Lessee may be entitled to because of the loss of buildings, other structures or Improvements erected upon the Premises by the Lessee. The Lessee shall use the proceeds received by the Lessee pursuant to this subparagraph (b) for purposes of restoring those portions of any buildings, other structures and Improvements upon the remainder of the Premises to as near their former condition as circumstances will permit.

(c)     In the event of a partial taking by condemnation or eminent domain, as provided in subparagraph (b) above, the rental payable shall be reduced by that proportion which the square footage of the land so taken bears to the original square footage of the entire Premises.

42.     ASSIGNMENT AND SUBLEASING.

(a)     Except as provided herein, the Lessee shall not assign, sublease, sublet, transfer, convey or pledge this Lease Agreement or any of its obligations, in whole or in part, in any manner whatsoever, to any other natural or corporate Person, or any entity whatsoever, without the express consent of the Lessor, authorized by appropriate municipal action taken at a regular public meeting of the City Commission of the City of Fort Lauderdale; provided, however, that such consent will not be required for any subtenancy in which less than fifty-one percent (51%) of usable floor area of any one building will be subleased by one subtenant, nor to any sublease of any aircraft hangar space. Any such consent to an assignment, sublease, transfer, conveyance or pledge by the Lessor shall be subject to all of the terms and provisions of this Lease Agreement and shall not release the Lessee from its obligations under this Lease Agreement, unless otherwise stated. The obtaining of any consent shall not affect the rentals payable to Lessor. Lessor agrees that consent will not be unreasonably withheld. However, Lessor may withhold consent in the event that a default has occurred hereunder, which default remains uncured.

(1)     Should Lessee take any action to assign or sublease this Lease without the prior written consent of the City, then any such assignment or other action shall be null and void and of no force and effect. In addition to all other legally available remedies, the City shall, upon written notice to Lessee and an opportunity to cure, be entitled to immediately terminate this Agreement.

43.     SUCCESSORS IN INTEREST. The covenants and agreements contained in this Lease Agreement shall be binding on and inure to the benefit of the respective successors and assigns of the parties. Wherever used, the singular shall include the plural, and the use of any gender shall be applicable to all genders.

44. AMENDMENTS.

(a)     No modification, amendment, or alteration in the terms and conditions contained herein shall be effective unless contained in a written document prepared and approved with the same formality herewith.

(b)     Should the United States government, or its agencies require changes to this Agreement, including without limitation, any nondiscrimination provisions, as a condition precedent to the granting of funds for the improvement of the Airport, or otherwise, the Lessee agrees to consent to such amendments, modifications, revisions, supplements or deletions of any terms, conditions, or requirements of this Agreement (collectively, an "amendment") as may reasonably be required. Notwithstanding the foregoing, in the event any such amendment would in Lessee's good faith judgment unreasonably interfere with the business operations of Lessee or its sublessees, then Lessee may refuse to consent to such amendment, provided that Lessee must give immediate notice to the City of any such refusal to consent and such notice must state with specificity the reasons for any such refusal. City shall have the right to immediately terminate this Agreement upon the failure of Lessee to consent to any such amendment.

45.     NOTICES. All notices required by law and by this Lease Agreement to be given by one party to the other shall be in writing, and the same shall be served as follows:

(a)     By certified mail, return receipt requested, to the following addresses:

LESSOR:          City of Fort Lauderdale
                 c/o City Manager
                 100 North Andrews Avenue
                 Fort Lauderdale, Florida 33301

With a copy to:  Fort Lauderdale Executive Airport
                 c/o Airport Manager
                 6000 NW 21 Ave
                 Fort Lauderdale, Florida 33309

With a copy to:  City of Fort Lauderdale
                 c/o City Clerk
                 100 North Andrews Avenue
                 Fort Lauderdale, Florida 33301

With a copy to:  City of Fort Lauderdale
                 c/o City Attorney
                 100 North Andrews Avenue

NOT AN OFFICIAL COPY, PUBLIC ACCESS - NOT AN OFFICIAL COPY

Fort Lauderdale, Florida 33301

LESSEE:       Terminal Ventures, LLC
2700 N. Military Trail, Suite 130
Boca Raton, FL 33431

or to such other addresses as the parties may by writing to the other designate. Notice shall be deemed to be delivered as of the date it is received or refused.

(b)    The notice to any leasehold mortgagee, and any other person, as provided in Paragraph 41, above, will only be provided if such mortgagee or person has complied with the provisions of that Paragraph.

46.    NON-EXCLUSIVE RIGHTS.  Notwithstanding anything herein contained that may be, or appear to be, to the contrary, it is expressly understood and agreed that the rights granted under this Lease Agreement are non-exclusive and the Lessor reserves the right to grant similar privileges to other Lessees on other parts of the Airport.

47.    SUBROGATION.  The Lessor shall have the option, after fifteen (15) days prior written notice to Lessee and without waiving or impairing any of Lessor's rights, to pay any sum or perform any act required of the Lessee, and the amount of any such payment and the value of any such performance, together with interest on them, shall be secured by this Lease, and shall be promptly due and payable to the Lessor.

48.    NON-DISCRIMINATION.

(a)    The Lessee for itself, its heirs, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land, that in the event facilities are constructed, maintained, or otherwise operated on the Premises for a purpose for which a United States Department of Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, the Lessee shall maintain and operate such facilities and services in compliance with all other requirements imposed pursuant to Title 49, Code of Federal Regulations, Part 21, Nondiscrimination in Federally Assisted Programs of the Department of Transportation, as it may be amended from time to time.

(b)    The Lessee for himself, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land, that (1) no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities; (2) that in the construction of any Improvements on, over, or under the Premises and the furnishing of services thereon, no person on the grounds of race, color, or

NOT AN OFFICIAL COPY · PUBLIC ACCESS · NOT AN OFFICIAL COPY

national origin shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination; and (3) that the Lessee shall use the Premises in compliance with all other requirements of Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally assisted programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said regulations may be amended.

(c)      In the event of a breach of any of the above nondiscrimination covenants, Lessor shall have the right to terminate the lease and re-enter and as if said lease had never been made or issued.  The provision shall not be effective until the procedures of Title 49, Code of Federal Regulations, Part 21, are followed and completed, including exercise or expiration of appeal rights.

(d)      The Lessor is granted the right to take such action, anything to the contrary in this Lease Agreement notwithstanding, as the United States may direct to enforce this nondiscrimination covenant.

49.    NON-LIABILITY OF INDIVIDUALS.  No commissioner, officer, agent or employee of the City shall be charged personally or held contractually liable under any term or provision of this Agreement or of any supplement, amendment, or modification to this Agreement or because of any breach thereof, or because of its or their execution or attempted execution.

50.    ALL PRIOR AGREEMENTS SUPERSEDED.  This document incorporates and includes all prior negotiations, correspondence, conversations, agreements or understandings applicable to the matters contained herein and the parties agree that there are no commitments, agreements or understandings concerning the subject matter of this Agreement that are not contained in this document.  Accordingly, it is agreed that no deviation from the terms hereof shall be predicated upon any prior representations or agreement whether oral or written.

It is further agreed that no modification, amendment, or alteration in the terms or conditions contained herein shall be effective unless contained in a written document executed with the same formality and of equal dignity herewith.

51.    FINAL REPOSITORY.  The parties mutually represent and warrant to each other that this Lease Agreement, consisting of Paragraphs 1 through 60, inclusive, and Exhibit "A " constitute the final Lease Agreement of the parties on its subject matter and may not be changed, modified, discharged or extended except by written instrument duly executed by the parties.  The parties agree that no previous representations or warranties shall be binding upon either party nor has the execution of this Lease been induced on the part of any party except as expressed in writing in this Agreement.

52.   SEVERABILITY. If any section, subsection, sentence, clause, provision, or part of this Agreement shall be held invalid for any reason, the remainder of this Agreement and the provisions thereof shall continue to be effective.

53.   THIRD PARTY BENEFICIARIES. Neither Lessee nor Lessor intends to directly or substantially benefit a third party by this Agreement. Therefore, the parties agree that there are no third party beneficiaries to this Agreement and that no third party shall be entitled to assert a claim against either of them based upon this Agreement.

54.   JOINT PREPARATION. This Agreement shall not, solely as a matter of judicial construction, be construed more severely against one of the parties than the other. The parties hereto acknowledge that they have thoroughly read this Agreement, including all exhibit(s) thereto, and have sought and received whatever competent advice and counsel that was necessary for them to form a full and complete understanding of all rights and obligations herein.

55.   RADON GAS. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

56.   AUTHORITY OF INDIVIDUALS. The individuals executing this agreement on behalf of Lessee personally warrant that they have the full authority to execute this Agreement on behalf of Lessee for whom they are acting herein.

57.   INTERPRETATION. The language of this Agreement has been agreed to by both parties to express their mutual intent and no rule of strict construction shall be applied against either party hereto. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All personal pronouns used in this Agreement shall include the other gender, and the singular shall include the plural, and vice versa, unless the context otherwise requires. Terms such as "herein," "hereof," "hereunder," and "hereinafter" refer to this Agreement as a whole and not to any particular sentence, paragraph, or section where they appear, unless the context otherwise requires.

58.   INCORPORATION OF RECITALS. The parties acknowledge and agree the recitals first set forth in this Agreement are true and correct and the same are incorporated herein as if fully set forth at length and form the basis for the terms and conditions as stated above.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS OF THE FOREGOING, the parties have set their hands and seals the day and year first written above.

**LESSOR**

WITNESSES:

CITY OF FORT LAUDERDALE

By _____
CHRISTOPHER J. LAGERBLOOM,
ICMA-CM, City Manager

Donna Varisco
Print Name

Katerina Skovudridski,
Print Name

(CORPORATE SEAL)

ATTEST: _____
JEFFREY A. MODARELLI, City Clerk

Approved as to form:

_____
SHARI C. WALLEN
Assistant City Attorney

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY



NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

WITNESSES:

_____
Julie M Hidalgo
[Witness print name]

_____
Angela Warshetel
[Witness print name]

**LESSEE**

TERMINAL VENTURES, LLC

By_____
MARK B. GOLDSTEIN, MANAGER

[COMPANY SEAL]

STATE OF FLORIDA:
COUNTY OF _Palm Beach_ :

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this _13_ day of _FEBRUARY_ , 20_20_, by Mark B. Goldstein as a Manager of TERMINAL VENTURES, LLC, a Florida Limited Liability Company.

(SEAL)

JULIE M. HIDALGO
MY COMMISSION # GG 078399
EXPIRES: May 15, 2021
Bonded Thru Budget Notary Services

_____
Signature of Notary Public – State of Florida

_____
Print, Type, or Stamp Commissioned Name of Notary Public

Personally Known _✓_ OR Produced Identification _____
Type of Identification Produced _____

PUBLIC ACCESS – NOT AN OFFICIAL COPY
NOT AN OFFICIAL COPY

## EXHIBIT A

### LEGAL DESCRIPTION
### AND
### MAILING ADDRESS

**Mailing Address:**

2400 West Cypress Creek Road
Fort Lauderdale, Florida 33309

### LEGAL DESCRIPTION AND SKETCH

**Parcel 8G (a/k/a) a portion of Tract 1 of F-X-E PLAT (located at 2400 W Cypress Creek Road (a/k/a NW 62nd Street), Fort Lauderdale, FL**

The site is legally described as follows:

A portion of Tract 1, F-X-E Plat, according to the Plat thereof, as recorded in Plat Book 119, Page 4, of the Public Records of Broward County, Florida more particularly located and described as follows:

Commencing at the center of Section 8, Township 49 South, Range 42 East, as shown on said F-X-E Plat; thence 233.24 feet North 88 32'38" East, on the North line of the Southeast Quarter (SE 1/4) of said Section 8; thence 95.00 feet South 01 27'22" East to a point 40 feet Southerly as measured at right angles from the South right of way line of NW 62nd Street and the Point of Beginning; thence continue 4.82 feet South 01 27'22" East, to a point of curvature of a curve to the right, having a radius of 454.24 feet and a central angle of 29 32'38"; thence 234.22 feet on the arc of said curve to a point of reverse curvature of a curve to the left, having a radius of 248.91 feet and a central angle of 34 18'51"; thence 149.07 feet on the arc of said curve; thence 195.00 feet North 83 46'23" East; thence 357.25 feet North 06 13'37" West to intersect a line parallel with and 40 feet Southerly, as measured at right angles, from the South right of way line of NW 62nd Street; thence 74.05 feet South 88 32'38" West of said parallel line to the Point of Beginning.

Together with right of way for road to provide ingress and egress to and from a public thoroughfare known as Northwest 62nd Street and right of way for underground utilities structure or appurtenances, said right of way being located and described as follows:
Commencing at the Northwest corner of the Southeast Quarter (SE 1/4) of said Section 8; thence North 88 32'38" East, a distance of 158.24 feet; thence South 01 27'22" East, a distance of 55.00 feet to intersection the South line of Northwest 62nd Street and the

Point of Beginning of the right of way described hereby, being 150 feet in width and 75 feet either side of a centerline described as follows: From the Point of Beginning of said right of way 44.82 feet South 01 27'22" East, to a point of curvature of a curve to the right, having a radius of 379.24 feet and central angle of 29 32'38"; thence 195.55 feet on the arc of said curve to a point of reverse curvature of a curve to the left, having a radius of 323.91 feet and central angle of 34 18'51"; thence 193.99 feet on the arc of said curve to intersect an extension of the South line of the before described Parcel 8-G at a point 75 feet Westerly thereof from the Southwest corner thereof.



NOT AN OFFICIAL COPY – PARCEL 8G SKETCH AND DESCRIPTION – NOT AN OFFICIAL COPY

PROJECT # P11404
PARCEL 8G
SKETCH AND DESCRIPTION
FORT LAUDERDALE EXECUTIVE AIRPORT
CITY OF FORT LAUDERDALE

CITY OF FORT LAUDERDALE
PUBLIC WORKS DEPARTMENT
ENGINEERING & ARCHITECTURE

EXHIBIT "B"
IMPROVEMENTS FOR PARCEL 8G

The Lessee shall perform the following improvements on Parcel 8G at the Fort Lauderdale Executive Airport in accordance with the improvement requirements and schedule below:

| Lessee Must Perform the Following Improvements | Minimum Amount That Must Be Expended on Improvements | Phase | Improvements Must Be Completed on or Before the Following Dates |
|---|---|---|---|
| Demolition of the Interior of the Building | | 1 | May 31, 2020 |
| Interior Remodeling of the First Floor, exterior improvements consisting of landscaping, painting, and restriping of the parking lot | $625,000.00 | 2 | December 31, 2020 |
| Interior Remodeling of the Second Floor | $505,000.00 | 3 | July 31, 2021 |

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY



**COMMISSION AGENDA ITEM**
**DOCUMENT ROUTING FORM**



Today's Date: 2/21/2020

DOCUMENT TITLE: TERMINAL VENTURES, LLC – LEASE AGREEMENT FOR PARCEL 8G AT FXE

COMM. MTG. DATE: 1/21/2020 CAM #: 20-0056 ITEM #: CR-1 CAM attached: ☒YES ☐NO

Routing Origin: CAO Router Name/Ext: J. Larregui/5106 Action Summary attached: ☒YES ☐NO

CIP FUNDED: ☐ YES ☒ NO | Capital Investment / Community Improvement Projects defined as having a life of at least 10 years and a cost of at least $50,000 and shall mean improvements to real property (land, buildings, or fixtures) that add value and/or extend useful life, including major repairs such as roof replacement, etc. Term "Real Property" include: land, real estate, realty, or real.

1) Dept: FXE/CMO Router Name/Ext: A. Basto/5334 # of originals routed: 3 Date to CAO: 2/20/2020

2) City Attorney's Office: Documents to be signed/routed? ☒YES ☐NO    # of originals attached: 3

Is attached Granicus document Final? ☒YES ☐NO    Approved as to Form: ☒YES ☐NO

Date to CCO: 2/21/2020    Shari C. Wallen     _scwbc_
                          Attorney's Name       Initials

3) City Clerk's Office: # of originals: 3  Routed to: MJ Matthews/CMO/x5364  Date: 2/21/2020

4) City Manager's Office: CMO LOG #: Feb·79  Document received from: CCO    (2/21/2020)

Assigned to: CHRIS LAGERBLOOM ☒ ROBERT HERNANDEZ ☐ ASHLEY BOXER ☐ TARLESHA SMITH☐
CHRIS LAGERBLOOM as CRA Executive Director ☐

☐ APPROVED FOR C. LAGERBLOOM'S SIGNATURE ☐ N/A FOR C. LAGERBLOOM TO SIGN

PER DCM: R. HERNANDEZ _____ (Initial/Date) PER ACM: A. Boxer _____ (Initial/Date)
                                                     PER ACM: T. Smith _____ (Initial/Date)

☐ PENDING APPROVAL (See comments below)
Comments/Questions: _____

Forward 3 originals to ☐ Mayor ☒ CCO   Date: 2/24/20

5) Mayor/CRA Chairman: Please sign as indicated. Forward ___ originals to CCO for attestation/City seal (as applicable)    Date: _____

6) City Clerk: Forward 3 originals to CAO for FINAL APPROVAL  Date: _____

7) CAO forwards 3 originals to CCO  Date: _____

8) City Clerk: Scan original and forwards 3 originals to: A. Basto/FXE/Ext. 5334

Attach 1 certified Reso # 20-10  ☒YES ☐NO    Original Route form to J. Larregui/CAO

# Exhibit "2"

## FIRST AMENDMENT TO LEASE AGREEMENT FOR PARCEL NO. 8G
## AT THE FORT LAUDERDALE EXECUTIVE AIRPORT

THIS IS THE FIRST AMENDMENT TO THE LEASE AGREEMENT, made and entered into on this 1st day of May, 2020, by and between:

**CITY OF FORT LAUDERDALE**, a municipal corporation of the State of Florida, 100 North Andrews Avenue, Fort Lauderdale, FL 33301 (hereinafter, "LESSOR" or "CITY"),

and

**TERMINAL VENTURES , LLC**, a Florida Limited Liability Company, whose principal address is 2700 N. Military Trail, Suite 130, Boca Raton, Florida 33431 (hereinafter, "LESSEE")

WHEREAS, LESSOR and LESSEE are parties to the Lease dated February 24, 2020, (herein the "Lease"), which provides for the terms of the lease of Parcel No. 8G located at the Fort Lauderdale Executive Airport, situated in the City of Fort Lauderdale, Broward County, Florida and legally described in the Lease; and

WHEREAS, the worldwide COVID-19 pandemic has caused significant disruptions to domestic and international air travel; and

WHEREAS, the LESSOR is the owner and operator of the Fort Lauderdale Executive Airport (the "Airport") and is the "airport sponsor" of the Airport under federal law; and

WHEREAS, LESSEE has experienced financial dislocation and varying levels of hardship as a result of the COVID-19 pandemic; and

WHEREAS, 49 United States Code (U.S.C.) § 47107(a)(13) requires airport sponsors to be as self-sustaining as possible under the circumstances at that airport (*See also* FAA's Grant Assurance 24, *Fee and Rental Structure*); and

WHEREAS, the FAA's *Policy and Procedures Concerning the Use of Airport Revenue*, 64 Fed. Reg. 7696, February 16, 1999, requires airport sponsors, including the City, when entering into agreements, to undertake reasonable efforts to be self-sustaining in accordance with 49 U.S.C. § 47107(a)(13); and

Exhibit "2"

WHEREAS, the FAA issued guidance dated April 4, 2020 entitled "Information for Airport Sponsors Considering COVID-19 Restrictions or Accommodations" and stated therein, consistent with the above, that a core goal of airports should be "to keep the airport solvent to ensure that the airport can remain open"; and

WHEREAS, as a result of the COVID-19 pandemic, the United States Department of State instituted travel advisories and restrictions on international travel; and

WHEREAS, on March 9, 2020, Governor DeSantis issued Executive Order 20-52 declaring a State of Emergency in the State of Florida as a result of COVID-19; and

WHEREAS, on March 13, 2020, President Trump issued a proclamation declaring that COVID-19 constitutes a national emergency; and

WHEREAS, on March 21, 2020, Broward County issued an order directing the closure of all nonessential businesses; and

WHEREAS, on April 1, 2020, Governor DeSantis issued Executive Order 20-91 directing that all persons in Florida limit their movements and interactions outside of their homes, only to those necessary to obtain or provide essential services or conduct essential activities; and

WHEREAS, the temporary closure of businesses and restrictions on travel have negatively impacted the economy and resulted in a reduction of income and unemployment; and

WHEREAS, after careful analysis and consideration, the LESSOR has determined that this First Amendment is the best way to accommodate the LESSEE and to achieve the goals of maintaining the Airport's financial self-sustainability as well as complying with its obligations under Section 47107(a)(13) of U.S.C. Chapter 49, the Revenue Use Policy, Grant Assurance 24 and the FAA Guidance; and

WHEREAS, amending the leases to defer rent payments is consistent with Federal Aviation Administration (FAA) guidelines and provides the Airport with an opportunity to assist with the continuity of business for all its Tenants; and

WHEREAS, as of April 30, 2020, LESSEE is current on its rent payments to the City, and LESSEE has opted to enter into this First Amendment.

NOW THEREFORE, in consideration of the mutual promises, the parties agree to the terms and conditions as follows:

1. LESSOR and LESSEE agree to enter into this First Amendment to the Lease Agreement to defer monthly rent payments for May 2020 and June 2020 under the Lease Agreement.

2.   LESSOR and LESSEE agree that all rent payments due for May 2020 and June 2020 are deferred until and including June 30, 2020 (the "Deferment Period").

3.   This deferment is conditioned upon LESSEE being current with all rent payments and continuing to operate at the Airport through the lease term.

4.   Beginning on July 1, 2020, LESSEE must resume making full monthly rent payments in accordance with the terms of the Lease. Further, LESSEE must pay an additional monthly amount of $1,062.78, each month on July 1, 2020, August 1, 2020, September 1, 2020, October 1, 2020, November 1, 2020, and December 1, 2020. This additional monthly amount includes the deferred monthly rent.

5.   LESSEE shall immediately be in default under the Lease if LESSEE fails to comply with any of the terms of this First Amendment. LESSEE shall be subject to an interest rate of 18% per annum from the original due date of any unpaid amount under this First Amendment.

6.   Nothing herein is intended to be, or shall be construed to be, an extension of credit to LESSEE. This First Amendment does not in any manner alter the LESSEE's obligations for the payment of rent or any other fees under the Lease Agreement. This First Amendment is exclusively intended to be an accommodation to change the schedule for payment of monthly rent as stated in the recitals herein.

7.   All fees and rent due and unpaid before and after the Deferment Period shall be paid as required in the Lease Agreement.

8.   Except as specifically modified by this First Amendment, the Lease Agreement remains in full force and effect and is hereby ratified by the LESSOR and LESSEE.

9.   This First Amendment shall be governed by the laws of the State of Florida and any suits and actions arising out of this First Amendment shall be instituted in Broward County, Florida. This First Amendment is subject and subordinate to any agreement between the CITY and the United States of America relating to the provision of grant funding for airport development.

10.   If any one or more of the covenants set forth in this First Amendment should be determined by a court of competent jurisdiction to be contrary to applicable law, such covenant shall be deemed and construed to be severable from the remaining covenants herein contained and shall in no way affect the validity of the remaining provisions of this Amendment.

11.     All prior understandings of the Parties relating to the subject matter of this First Amendment are set forth herein and no prior understandings or accommodations shall be given effect or shall be valid.

12.     This First Amendment may be executed in several counterparts, each of which shall be deemed to be an original; but such counterparts shall constitute one and the same instrument.

13.     This First Amendment shall be recorded by LESSEE, in the Broward County Public Records at the LESSEE's sole expense, within ten (10) days of the complete execution of this First Amendment. LESSEE shall provide the Airport Manager with a copy of the recorded First Amendment within ten (10) days after it is recorded.

AGREED AND CONSENTED TO

**LESSOR**

WITNESSES:                                    CITY OF FORT LAUDERDALE

_____                      By_____
                                                CHRISTOPHER J. LAGERBLOOM,
_____                        ICMA-CM, City Manager
[Witness print name]


_____

[Witness print name]                          ATTEST:


(CORPORATE SEAL)
                                              _____
                                              JEFFREY A. MODARELLI, City Clerk


                                              Approved as to form:


                                              _____
                                              SHARI C. WALLEN
                                              Assistant City Attorney

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

## LESSEE

WITNESSES:

_Leonfield_ .
LEONEL LEON
[Witness print name]

_____
[Witness print name]

[COMPANY SEAL]

TERMINAL VENTURES LLC, a Florida
Limited Liability Company

By_____
Print Name: _____ IGNACIO MARTINEZ
Title:_____ MANAGER

STATE OF __FLORIDA__        :
COUNTY OF __BROWARD__       :

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this __13__ day of __July__, 20__20__ by __IGNACIO MARTINEZ__ as __MANAGER__ of TERMINAL VENTURES, LLC a Florida Limited Liability Company.

(SEAL)

**Inez Huerta**
COMMISSION # GG279114
EXPIRES: Nov. 26, 2022
Bonded Thru Aaron Notary

Signature of Notary Public – State of __Florida__

INEZ HUERTA
_____
Print, Type, or Stamp Commissioned Name of
Notary Public

Personally Known ✓ OR Produced Identification _____
Type of Identification Produced _____

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

# Exhibit "3"

## SECOND AMENDMENT TO LEASE AGREEMENT
### (PARCEL 8G)

THIS IS A SECOND AMENDMENT TO THE LEASE AGREEMENT, entered into on this 20th day of April, 2021, by and between:

THE CITY OF FORT LAUDERDALE, a municipal corporation of Florida, referred to as "LESSOR" or "CITY", whose principal address is 100 North Andrews Avenue, Fort Lauderdale, FL 33301

And

TERMINAL VENTURES, LLC, a Florida limited liability company whose principal address is 2700 N. Military Trail, Suite 130, Boca Raton, FL 33431 (hereinafter, "LESSEE")

WHEREAS, LESSOR and LESSEE are parties to the Lease Agreement dated February 24, 2020, (herein the "Lease"), which provides for the terms of the lease of Parcel No. 8G located at the Fort Lauderdale Executive Airport, situated in the City of Fort Lauderdale, Broward County, Florida and legally described in the Lease Agreement; and

WHEREAS, on May 1, 2020, LESSOR and LESSEE entered into a First Amendment to Lease Agreement for Parcel No. 8G to defer monthly rental payments for May 2020 and June 2020 under the Lease Agreement until June 20, 2020 due to the COVID-19 pandemic; and

WHEREAS, LESSOR and LESSEE wish to enter into a Second Amendment to the Lease Agreement to extend the time period for the LESSEE to complete the improvements required for phases 2 and 3 for Parcel No. 8G due to financial constraints caused by the COVID-19 pandemic that have affected the LESSEE.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Lease, and other good and valuable consideration, the receipt and adequacy of which are acknowledged, LESSOR and LESSEE agree as follows:

1. The above recitals are true and correct and are incorporated herein.

2. Paragraph 20.(c)(2) is deleted and replaced with the following:

     (2)    Phase 2. If LESSEE fails to provide LESSOR with

Exhibit "3"



evidence that is satisfactory to LESSOR that LESSEE performed all of the Phase 2 Improvements which consist of first floor interior remodeling and exterior improvements consisting of landscaping, painting, and restriping of the parking lot in accordance with Exhibit "B" attached hereto or if LESSEE has failed to provide LESSOR with evidence that is satisfactory to LESSOR by January 31, 2022, that LESSEE has expended as a minimum of Six Hundred and Twenty-Five Thousand Dollars ($625,000.00) for Phase 2 Improvements in accordance with Amended Exhibit "B" attached hereto.

3. Paragraph 21.(c)(3) is deleted and replaced with the following:

(3) Phase 3. If LESSEE fails to provide LESSOR with evidence that is satisfactory to LESSOR that LESSEE performed all of the Phase 3 Second Floor Remodeling Improvements in accordance with Exhibit "B" attached hereto or if LESSEE has failed to provide LESSOR with evidence that is satisfactory to LESSOR by August 31, 2022, that LESSEE has expended a minimum of Five Hundred and Five Thousand Dollars ($505,000.00) for Phase 3 Improvements in accordance with Amended Exhibit "B" attached hereto.

4. Exhibit "B" of the Lease Agreement is deleted and replaced with the following:

### AMENDED EXHIBIT "B"
### IMPROVEMENTS FOR PARCEL 8G

The Lessee shall perform the following improvements on Parcel 8G at the Fort Lauderdale Executive Airport in accordance with the improvement requirements and schedule below:

| Lessee Must Perform the Following Improvements | Minimum Amount That Must Be Expended on Improvements | Phase | Improvements Must Be Completed on or Before the Following Dates |
|---|---|---|---|
| Demolition of the Interior of the Building | | 1 | May 31, 2020 |
| Interior Remodeling of the First Floor, exterior improvements consisting of landscaping, painting, and restriping of the parking lot. | $625.000.00 | 2 | December 31, 2021 |



| Interior Remodeling of the Second Floor | $505,000.00 | 3 | July 31, 2022 |
|---|---|---|---|

5.      Except as specifically amended herein, all the terms and provisions of the Lease Agreement, and the First Amendment to Lease Agreement are hereby ratified and affirmed to be in full force and effect as of the date hereof.  To the extent of any conflict between the Lease Agreement, First Amendment to Lease Agreement, and Second Amendment to Lease Agreement, the terms and provisions of this Second Amendment to Lease Agreement shall govern and control and any conflicting terms and provisions of the Lease Agreement, and First Amendment to Lease Agreement, shall be deemed amended to the extent necessary not to conflict with the provisions hereof.  Capitalized terms used herein shall have the same meaning as used in the Lease Agreement and First Amendment to Lease Agreement.

6.      This Second Amendment to Lease Agreement may be executed in one or more counterpart copies, all of which together shall constitute and be deemed an original, but all of which together shall constitute one and the same instrument binding on all parties.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]



CAM # 21-0368
Exhibit 1
Page 3 of 6

IN WITNESS OF THE FOREGOING, the parties have set their hands and seals the day and year first written above.

**LESSOR**

WITNESSES:

CITY OF FORT LAUDERDALE

By: _____
Christopher J. Lagerbloom, ICMA-CM
City Manager

_____
Aimee Llauro
Print Name

_____
Donna Vanisco
Print Name

ATTEST:

_____
Jeffrey A. Modarelli, City Clerk

(CORPORATE SEAL)

Approved as to form:
Alain Boileau, City Attorney

By: _____
Shari C. Wallen
Assistant City Attorney

CAM # 21-0368
Exhibit 1
Page 4 of 6

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

WITNESSES:

_____

_____
[Witness print name]

_____

Julie M. Hidalgo
[Witness print name]

LESSEE

TERMINAL VENTURES, LLC, a Florida
Limited Liability Company

By: _____
Ignacio Martinez, Manager

STATE OF Florida
COUNTY OF Broward

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 14 day of May, 2021, by Ignacio Martinez as Manager of TERMINAL VENTURES, LLC, a Florida limited liability company.

(SEAL)

Notary Public State of Florida
Angela Warshefski
My Commission GG 977042
Expires 04/20/2024

_____
Signature of Notary Public – State of Florida

_____
Print, Type, or Stamp Commissioned Name of
Notary Public

Personally Known ✓ OR Produced Identification ____
Type of Identification Produced _____

Page 5 of 6



**COMMISSION AGENDA ITEM**
**DOCUMENT ROUTING FORM**

2L 5/21/21

**Today's Date:** 5/19/2021

**DOCUMENT TITLE:** TERMINAL VENTURES, LLC – SECOND AMENDMENT TO LEASE AGREEMENT FOR PARCEL 8G AT FXE

**COMM. MTG. DATE:** 4/20/2021 **CAM #:** 21-0368 **ITEM #:** CR-2 **CAM attached:** ☒YES ☐NO

**Routing Origin:** CAO **Router Name/Ext:** J. Larregui/5106 **Action Summary attached:** ☒YES ☐NO

**CIP FUNDED:** ☐ YES ☒ NO

> Capital Investment / Community Improvement Projects defined as having a life of at least 10 years and a cost of at least $50,000 and shall mean improvements to real property (land, buildings, or fixtures) that add value and/or extend useful life, including major repairs such as roof replacement, etc. Term "Real Property" include: land, real estate, realty, or real.

---

1) **Dept:** FXE **Router Name/Ext:** L. Blanco/5334 **# of originals routed:** 2 **Date to CAO:** 5/19/2021

---

2) **City Attorney's Office:** Documents to be signed/routed? ☒YES ☐NO **# of originals attached:** 2

Is attached Granicus document Final? ☒YES ☐NO          Approved as to Form: ☒YES ☐NO

**Date to CCO:** 5/19/21          Shari C. Wallen          SCW/JL
                                  Attorney's Name          Initials

---

3) **City Clerk's Office: # of originals:** 2 **Routed to:** Donna V./Aimee L./CMO **Date:** 5-19-2021

---

4) **City Manager's Office: CMO LOG #:** Mccy48 **Document received from:** 5-20-21
**Assigned to:**    CHRIS LAGERBLOOM ☐    TARLESHA SMITH ☐    GREG CHAVARRIA ☐
                    CHRIS LAGERBLOOM as CRA Executive Director ☐

☐ APPROVED FOR C. LAGERBLOOM'S SIGNATURE ☐ N/A FOR C. LAGERBLOOM TO SIGN

**PER ACM: T. Smith** _____ (Initial/Date)    **PER ACM: G. Chavarria** _____ (Initial/Date)
☐ **PENDING APPROVAL** (See comments below)
Comments/Questions: _____

Forward 2 originals to ☐ Mayor ☑CCO **Date:** 5-21-21

---

5) **Mayor/CRA Chairman:** Please sign as indicated. Forward ___ originals to CCO for attestation/City seal (as applicable)    **Date:** _____

---

6) **City Clerk:** Forward 2 originals to CAO for **FINAL APPROVAL** **Date:** _____

7) **CAO** forwards 2 originals to CCO **Date:** _____ (PLEASE SCAN IN COLOR)

8) **City Clerk:** Scan original and forwards 2 originals to: **L. Blanco/FXE/Ext. 5334**

Attach ___ certified Reso # _____    ☐YES ☒NO    **Original Route form to J. Larregui/CAO**

Rev. 9/10/2020

# Exhibit "4"





# CITY OF
# FORT LAUDERDALE

VIA CERTIFIED MAIL; RETURN RECEIPT REQUESTED and
VIA EMAIL: mbg@bizavlaw.com; lleon@waviation.net;

April 15, 2022

Mr. Ignacio Martinez
Terminal Ventures, LLC
2700 North Military Trail, Suite 130
Boca Raton, FL 33431

RE: **CORRECTED NOTICE OF LEASE DEFAULT** – Lease Agreement, as amended, for Parcel
8G at the Fort Lauderdale Executive Airport between the City of Fort Lauderdale
and Terminal Ventures, LLC

Dear Mr. Martinez:

This letter constitutes formal written NOTICE OF LEASE DEFAULT.

You are hereby notified that you are in default of the Lease Agreement for Parcel 8G
with the City of Fort Lauderdale, as amended by the First Amendment to Lease
Agreement and Second Amendment to Lease Agreement ("Lease Agreement, as
amended"). Specifically, you have failed to comply with Paragraph 20(c)(2) of the
Lease Agreement, as amended, which requires that Phase II improvements be
completed by December 31, 2021.

Demand is hereby made that you cure the default and comply with Paragraph 20(c)(2)
of the Lease Agreement, as amended, within sixty (60) days of the date of this notice. If
you fail to cure the default within sixty (60) days of the date of this notice, the Lease
Agreement, as amended, shall be deemed terminated effective June 14, 2022
("termination date") and you must vacate the premises upon the termination date. If
the default is not cured and you fail to vacate the premises, the City will take further
action to protect its rights and interests available under the law.

Sincerely,

Rufus A. James
Airport Director

cc:    Christopher Lagerbloom, City Manager
       Greg Chavarria, Assistant City Manager
       Shari Wallen, Assistant City Attorney
       Miguel Laca, Financial Administrator

Exhibit "4"

**FORT LAUDERDALE EXECUTIVE AIRPORT**
6000 NW 21ST AVENUE, FORT LAUDERDALE, FLORIDA 33309
TELEPHONE (954) 828-4955, FAX (954) 938-4974
WWW.FORTLAUDERDALE.GOV

Equal Opportunity Employer

Printed On Recycled Paper.